Hon. Jesse M. Furman
United States District Judge
Southern District of New York

Via Email to: prose@nysd.uscourts.gov

Re: Checkmate.com, Inc. v. Arjun Vasan, Case No. 25-CV-3181 (JMF)

Dear Judge Furman:

I am the pro se defendant in the above-captioned matter, having removed this case from New York Supreme Court on April 12, 2025, via the Court's pro se email filing system. I did not receive confirmation or docketing until April 17, at which point I also learned for the first time that Your Honor had been assigned to the case. I am aware of the 2 business day deadline for the Notice of Initial Pretrial Conference and will meet that.

Given the procedural urgency and the timing of my notice of docketing, I respectfully request that the Court consider this letter on an expedited basis.

Pursuant to Federal Rule of Civil Procedure 81(c)(2), I believe that a responsive pleading or motion is due within 7 days of removal — which in this case would be April 21, 2025 (since 7 days fell on the weekend). However, because I had no knowledge that the removal had been accepted or that the case was active until April 17, I had no meaningful opportunity to comply with the Court's Individual Rules — including the requirement of a pre-motion letter filed at least three business days before a motion, and the 48-hour minimum for requesting an extension, which I learned of today.

I respectfully submit this letter in a good-faith attempt to comply with Your Honor's pre-motion requirements and to preserve my rights under Rule 12. The motion I intend to file would seek dismissal, transfer, or to quash service on the following grounds:
1. Lack of personal jurisdiction (Rule 12(b)(2)) and improper service (Rule 12(b)(5)), including Plaintiff's use of a summons with an incorrect Texas address;
2. Improper venue and forum non conveniens (Rule 12(b)(3) and 28 U.S.C. § 1404(a));
3. Violation of the first-filed rule due to my earlier-initiated and still-pending action against Plaintiff in the Central District of California (Case No. 2:25-cv-00765-MEMF-JPR);
4. Failure to comply with the dispute resolution provisions of the parties' Merger Agreement.

This case was filed more than two weeks after I filed the California action. I am representing myself, while Plaintiff is represented by six attorneys from K&L Gates LLP. The procedural imbalance is significant, and I am doing my best to meet the Court's standards.

Given the late notice of docketing, the time needed to finalize a comprehensive motion, and my pro se status, I respectfully request leave to file my full motion no later than April 29, 2025. I appreciate the Court's consideration and am prepared to file the finalized version promptly once leave is granted

Pursuant to Your Honor's Individual Rule 1(D), I also provide the following regarding my extension request:
1. Original deadline: April 21, 2025 (7 days from Notice of Removal, under Rule 81(c)(2))
2. Previous requests: This is my first extension request
3. Grant/denial history: No previous requests have been ruled on
4. Reason for request: I did not become aware that the case was docketed, or that Your Honor was assigned, until April 17 — leaving insufficient time to meet the 3-day letter rule or file a complete motion by April 21
5. Adversary's position: I have not yet received a response from Plaintiff's counsel as to whether they consent
6. Next scheduled deadline: Responsive pleading deadline of April 21, 2025. No conference has been set.

For the Court's convenience, I have attached a working draft of the motion I intend to file. While it is still in the process of being finalized and formatted, the attached version outlines the core arguments I plan to raise. I hope this is helpful in evaluating this request for leave and extension.

Attachment: Draft_Motion_to_Dismiss_Vasan.pdf

Respectfully,
Arjun Vasan
Pro Se Defendant
arjun.vasan@gmail.com
562-900-6541
April 20, 2025

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

CHECKMATE.COM, INC., a Delaware corporation,


  -against-


ARJUN VASAN, an Individual

-----------------------------------------------------------X


NOTICE OF SPECIAL APPEARANCE; AND
MOTION TO QUASH, DISMISS, OR TRANSFER FOR:
(1) IMPROPER SERVICE OF PROCESS;
(2) IMPROPER VENUE; AND
(3) FAILURE TO JOIN NECESSARY PARTIES


## **NOTICE OF SPECIAL APPEARANCE**

PLEASE TAKE NOTICE that Defendant Arjun Vasan, appearing specially and solely for the purpose of contesting jurisdiction, and expressly not submitting to the jurisdiction of this Court, hereby moves this Court for an order dismissing the Complaint filed by Plaintiff Checkmate.com, Inc. ("Checkmate") in its entirety on the grounds that: (1) this Court lacks personal jurisdiction over Defendant; (2) service of process was improper; and (3) under the doctrine of forum non conveniens, including application of the first-filed rule, this action should be dismissed in favor of the prior-filed, parallel federal action in the United States District Court for the Central District of California, bearing Case No. 2:25-cv-00765-MEMF-JPR. Nothing in this motion should be construed as a general appearance or as addressing the substance of Plaintiff's claims beyond what is necessary to establish the procedural defects in Plaintiff's case.

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 3

II. FACTUAL BACKGROUND .................................................................................................. 4

III. LEGAL ARGUMENT ............................................................................................................ 6

    A. This Court Lacks Personal Jurisdiction Over Defendant ..................................................... 6

        1. This Court Lacks Jurisdiction Because Plaintiff Failed to Properly Serve Defendant Under Rule 4(e)(1) ................................................................................................................. 6

        2. Jurisdiction Cannot Be Established Under CPLR §§ 301 or 302, Nor Under the Due Process Clause ...................................................................................................................... 8

    B. The "First-Filed" Rule Mandates Dismissal ....................................................................... 9

    C. This Court Should Dismiss Under Forum Non Conveniens ............................................... 10

        1. Plaintiff's Choice of Forum Deserves Reduced Deference Given the Circumstances...... 10

        2. The Central District of California Is an Adequate Alternative Forum ............................ 11

        3. The Private Interest Factors Strongly Favor California ................................................... 12

        4. The Public Interest Factors Decisively Favor California.................................................. 13

        5. The Balance of Factors "Tips Strongly" in Favor of Dismissal....................................... 14

    D. The Merger Agreement's Forum Selection Clause Is Inapplicable..................................... 15

        1. Forum Selection Clauses Do Not Create Jurisdiction...................................................... 15

        2. The Merger Agreement's Forum Selection Clause is not Applicable Here ..................... 16

        3. Plaintiff Elects to Void the Clause under California Labor Code § 925 .......................... 18

    E. Plaintiff Failed to Satisfy Conditions Precedent to Litigation............................................. 19

        1. Failure to Satisfy a Condition Precedent to Bring This Lawsuit ..................................... 19

        2. Plaintiff Is Equitably Estopped from Evading the Merger Agreement's Dispute Resolution Procedure .......................................................................................................... 21

IV. CONCLUSION..................................................................................................................... 23

# I. PRELIMINARY STATEMENT

This Court should dismiss Plaintiff's Complaint in its entirety for five independent reasons, each sufficient on its own to warrant dismissal.

First, this Court lacks personal jurisdiction over Defendant due to fatally defective service of process. Plaintiff attempted service using a summons that erroneously identified Defendant as residing in Sugar Land, Texas—the address of an unrelated individual with the same name—despite Plaintiff having Defendant's correct California address on file. Neither the March 5 "nail and mail" attempt nor the March 13 substitute service attempt satisfied New York's requirements for proper service.

Second, the "first-filed rule" mandates dismissal in favor of Defendant's earlier-filed federal action in California. Defendant filed his California Action on January 28, 2025, more than two weeks before Plaintiff filed this retaliatory lawsuit. Defendant properly served the California Action on March 5, 2025, which was completed well before Plaintiff's defective service attempts could be deemed effective under New York law.

Third, California is unquestionably the proper forum for this dispute. Defendant is a California resident who has lived and worked exclusively in California throughout the relevant period. All significant events occurred in California—from VoiceBite's founding in Cupertino to negotiations conducted entirely in California, to Defendant's termination while on medical leave in a California facility. Key witnesses, evidence, and applicable employment laws are California-based, creating an overwhelming connection to California.

Fourth, Plaintiff cannot selectively enforce provisions of the Merger Agreement while disregarding others. Having initially served a Notice of Claim on the designated Holder Representative as required by the agreement's dispute resolution procedure, Plaintiff is now improperly attempting to circumvent that procedure by filing this individual action. Moreover, the forum selection clause Plaintiff relies upon does not apply to the ancillary agreements at issue, which either lack forum selection provisions or were executed between different parties.

Fifth, California law provides additional grounds for dismissal. California Labor Code § 925 prohibits employers from requiring California employees to litigate employment disputes

outside California, rendering any forum selection clause voidable at Defendant's election. The employment relationship and compensation claims central to this dispute are governed by California law pursuant to the express terms of Defendant's Offer Letter.

For all these reasons, and as further detailed below, Plaintiff's Complaint should be dismissed in its entirety, or in the alternative, transferred to the United States District Court for the Central District of California, where Defendant's earlier-filed action is already proceeding.

## II. FACTUAL BACKGROUND

1. Defendant Arjun Vasan is a resident of Cerritos, California. Defendant has primarily resided and worked in California during all relevant times pertaining to this dispute.

2. On or around August 1, 2023, Defendant co-founded VoiceBite Corporation in Cupertino, California, where he lived at the time. Of the founding team, four were lifelong Californians—like Defendant—and the fifth was from Toronto, Canada.

3. In early January 2024, negotiations began for a merger with Plaintiff Checkmate. VoiceBite had no customers, revenue or outside investors. Essentially, the founding team was negotiating for collective employment with Plaintiff.

4. Negotiations occurred solely from California, with the lead Negotiator for Plaintiff—Michael Bell—being a resident of Manhattan Beach, California. Bell visited the founders in Cupertino on January 31st, and the founders visited Bell at his Manhattan Beach residence on March 16, 2024.

5. The merger closed on April 30, 2024, with employment for Defendant and his teammates starting May 1, 2024. Defendant by that time had relocated to his family home in Cerritos, where he spent most of his employment with Plaintiff.

6. On November 14, 2024, Plaintiff terminated Defendant from his position while on medical leave and recovering in a Costa Mesa, CA facility

7. Defendant subsequently sent several communications requesting and then demanding payment of compensation earned per the parties' agreements.

8. On December 7, 2024, Plaintiff sent a "Notice of Claim" to Defendant falsely claiming he had resigned, and alleging misconduct it claimed "disentitled" him from payment of earned and unpaid compensation—an overt violation of California wage theft laws.

9. On December 20, 2024, Defendant formally responded, rejecting the allegations and threatening legal action if the payments were not made.

10. On January 28, 2025, Defendant filed a Complaint against Plaintiff in the United States District Court for the Central District of California (Case No. 2:25-cv-00765-MEMF-JPR) (the "California Action"). The California Action alleges various claims against Plaintiff, including wrongful termination, retaliation, fraudulent inducement, breach of contract, violation of the Family and Medical Leave Act, and related claims.

11. On January 29, 2025, Plaintiff sent a "Notice of Claim" to the VoiceBite shareholders (who include Defendant), alleging fraud and asserting forfeiture of compensation earned and owed as per the terms of their employment agreement, and of all equity pursuant to the Merger Agreement. This Notice appeared to adhere to the Merger Agreement's Dispute Resolution Procedure, as it was sent to the shareholder's designated representative and sought several liability amongst the shareholders—who engaged a counsel and anticipated negotiation based on Plaintiff's behavior and overtures.

12. Under the reasonable belief that negotiations were forthcoming, Defendant delayed serving the California Action. Meanwhile Plaintiff filed this retaliatory lawsuit in New York State Court on February 14, 2025, against Defendant *individually* and outside the express provisions of the Merger Agreement's Dispute Resolution framework.

13. Defendant served the California Action on Plaintiff's Delaware registered agent via personal service on March 5, 2025, and filed proof of service on March 6, 2025.

14. Plaintiff attempted to serve Defendant on March 5, 2025, via "nail and mail" service at Defendant's correct California residence. However, its summons erroneously identified Defendant as residing in Sugar Land, Texas. This improper service was followed by a filing of an affidavit of service on March 7, 2025, that failed to show proper due diligence.

15. A simple web search identifies the "Arjun Vasan" residing in Sugar Land, Texas to be an entirely unrelated student at the University of Texas, with no connection to this case.

16. Plaintiff had on file, and had used in communications, both Defendant's correct California address as well as his brother's Midland, Texas address where Defendant had stayed for two months during his employment.

17. Plaintiff made a second attempt at service on March 13, 2025, via substitute service to Defendant's father at Defendant's California residence. Again, the summons erroneously identified Defendant as residing in Sugar Land, Texas.

18. Under New York law, service via "nail and mail" or substitute service is not deemed complete until 10 days after filing proof of service. Therefore, the earliest date Defendant could be considered served would be March 17, 2025—well after Defendant's California Action was filed and served.

19. Defendant has had no physical presence in New York in several years and had only visited sporadically before. Defendant has never conducted business in New York in his individual capacity.

20. Defendant has no property in New York and has not purposefully directed activities toward New York that would give rise to the claims alleged in the Complaint.

### III. LEGAL ARGUMENT

**A. This Court Lacks Personal Jurisdiction Over Defendant**

<u>1. This Court Lacks Jurisdiction Because Plaintiff Failed to Properly Serve Defendant Under Rule 4(e)(1)</u>

Plaintiff failed to properly serve Defendant as required under the Federal Rules of Civil Procedure. Under Rule 4(e), service on an individual may be made pursuant to the law of the state where the district court is located — here, New York. Plaintiff attempted service under New York CPLR § 308, but both attempts were fatally defective.

First, both service attempts — the purported "nail and mail" service on March 5, 2025, and the substitute service on March 13, 2025 — relied on a summons that erroneously listed

Defendant's address as Sugar Land, Texas, despite Plaintiff having actual knowledge of Defendant's correct residence in Cerritos, California. This fundamental error in the summons renders both service attempts invalid.

Second, "nail and mail" service under CPLR § 308(4) requires due diligence in attempting personal service under CPLR § 308(1) and (2) beforehand. Plaintiff's proof of service, filed March 7, 2025, does not include sufficient documentation to establish such due diligence. Indeed, Plaintiff's subsequent service attempt on March 13, 2025, further suggests that proper diligence was not undertaken prior to the operative attempt. See *Bossuk v. Steinberg*, 58 N.Y.2d 916, 919 (1983) (requiring a "genuine inquiry" to locate defendant's current residence); *Spencer v. City of New York*, 30 A.D.3d 290, 291 (1st Dep't 2006) (failure to attempt personal service with due diligence renders substitute service invalid). Plaintiff's failure to conduct proper due diligence—especially in light of its erroneous use of an unrelated Texas address and lack of affidavit detail—renders service fatally defective under New York law.

Third, Plaintiff's use of a Texas address — which clearly refers to a different individual with no connection to this case — appears to be a deliberate misrepresentation to the Court and undermines the legitimacy of the service process. As Defendant notes in a Request for Judicial Notice recently filed in the California Action, the address was of an unrelated and unfortunate student at the University of Texas who shares Plaintiff's fairly uncommon name—an error easily deduced with a 2-minute web search exercise—showing if not deliberate misrepresentation, reckless disregard and lack of elementary due diligence.

Moreover, even if the Court were to excuse the initial misidentification as a technical error, Plaintiff has *never corrected the Summons* or even retracted the claim that Defendant lives at this address. Instead, it has repeatedly attached this very Summons to numerous filings in the California Action *while* seeking to portray Defendant as a Texas resident.

These are not minor technical defects — they are jurisdictional and substantive. Under long-established New York precedent, "notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court." *Feinstein v. Bergner*, 48 N.Y.2d 234, 241 (1979). The same principle applies in federal court when state

service rules are invoked under Rule 4(e)(1). Because service was not properly effected, this Court lacks personal jurisdiction over Defendant.

<u>2. Jurisdiction Cannot Be Established Under CPLR §§ 301 or 302, Nor Under the Due Process Clause</u>

This Court lacks personal jurisdiction over Defendant under both New York law and the Due Process Clause of the Fourteenth Amendment[1]. Plaintiff bears the burden of establishing jurisdiction but has failed to do so under either general or specific jurisdiction.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the law of the state in which the court sits — here, New York. Therefore, New York's Civil Practice Law and Rules ("CPLR") §§ 301 (general jurisdiction) and 302 (specific jurisdiction) govern.

Defendant is not domiciled in New York, has not been physically present in New York in several years, does not conduct business in New York, and has not engaged in any activities that would subject him to general jurisdiction under CPLR § 301. There is no "continuous and systematic" contact with New York that would permit this Court to exercise general jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014).

Specific jurisdiction under CPLR § 302 is also lacking. Defendant has not transacted business in New York in his individual capacity, has not committed any tortious act within New York, and has not performed — or breached — any contract in New York. The events giving rise to this dispute occurred primarily in California. The contracts at issue were negotiated, executed, and performed in California, and Plaintiff was terminated from employment while in California.

Even if CPLR § 302 were arguably satisfied (which it is not), the exercise of jurisdiction would still violate due process. Defendant's contacts with New York are minimal and attenuated, and exercising jurisdiction would "offend traditional notions of fair play and substantial justice."

---

[1] Defendant has appeared specially and solely for the purpose of contesting jurisdiction, as explicitly stated in the Notice of Special Appearance. Under New York law, such a special appearance preserves a defendant s right to challenge personal jurisdiction without submitting to it. See *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50, 56 (1990) ( A limited appearance to challenge jurisdiction does not constitute a general appearance."); CPLR § 320(b). Accordingly, Defendant s procedural rights are fully preserved and this motion does not waive any jurisdictional defenses.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Accordingly, this Court lacks personal jurisdiction over Defendant, and the Complaint should be dismissed under Rule 12(b)(2).

## B. The "First-Filed" Rule Mandates Dismissal

The first-filed rule gives priority to the court where litigation was first initiated. See *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) (recognizing "the well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority").

The chronology of events leaves no doubt that the California Action has priority:

(a) **January 28, 2025**: Defendant filed the California Action

(b) **February 14, 2025**: Plaintiff filed this New York Action

(c) **March 5, 2025**: Defendant served the California Action on Plaintiff

(d) **March 6, 2025**: Defendant files proof-of-service in the California Action

(e) **March 7, 2025**: Plaintiff files affidavit of an attempted "nail and mail" service in the New York Action (with defective summons)

(f) **March 13, 2025**: Plaintiff attempted substitute service on Defendant (with defective summons)

(g) **March 17, 2025**: Earliest Plaintiff's service deemed complete under New York law

The California Action should take precedence as it was filed more than two weeks before this action with service properly completed 10 days prior to service of this New York Action. Moreover, even if both services were proper (which Defendant disputes regarding Plaintiff's service), the California Action would have priority because it was filed first. See *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) (noting that "the first-filed rule looks to the chronology of the filings of the complaint").

**C. This Court Should Dismiss Under Forum Non Conveniens**

The doctrine of forum non conveniens "permits a court to dismiss an action, even when venue is proper, on the theory that the case could be better tried elsewhere for the convenience of the litigants and the court." *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 151 (2d Cir. 1980) (en banc). As the Second Circuit has consistently held, "the doctrine is essentially 'a supervening venue provision' that reflects a flexible response to the rigid venue requirements set by statute." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (quoting A*merican Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).

In applying the forum non conveniens analysis, the Supreme Court has instructed courts to evaluate: (1) the degree of deference properly accorded to the plaintiff's choice of forum; (2) the availability of an adequate alternative forum; and (3) the balance of public and private interest factors. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). In the present case, every factor still overwhelmingly favors dismissal in favor of the California forum.

1. Plaintiff's Choice of Forum Deserves Reduced Deference Given the Circumstances

While Plaintiff Checkmate.com, Inc. is technically headquartered in New York, this fact alone does not end the inquiry. As the Second Circuit has recognized, "the degree of deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri*, 274 F.3d at 71. Even when a plaintiff chooses its home forum, that choice receives less deference when "the circumstances indicate that the choice of forum was motivated by forum-shopping reasons." *Id.* at 72. Several facts diminish the deference owed to Plaintiff's choice in this case:

First, despite being nominally headquartered in New York, Plaintiff operates as a distributed company with employees throughout the United States and globally, with no true principal place of business. Courts have recognized that when a company's operations are dispersed, its claim to a particular forum is weakened. See *WIWA v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000) (analyzing the significance of a company's distributed operations in forum analysis).

Second, the operative facts of this dispute occurred almost entirely in California. The Second Circuit has held that "the more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Iragorri*, 274 F.3d at 71-72. Conversely, where the plaintiff's chosen forum has minimal connection to the facts of the case, less deference is warranted. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003) (affording less deference where "the operative facts upon which the litigation is brought bear little connection to the chosen forum").

Third, and most tellingly, the chronology of this case strongly suggests improper forum-shopping. Plaintiff filed this action only after Defendant had already initiated proceedings in California. This timing strongly suggests that Plaintiff's forum selection was motivated not by convenience, but by strategic considerations aimed at preempting the California forum. Such "forum-shopping" has been consistently rejected by courts as deserving minimal deference. *Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005).

## 2. The Central District of California Is an Adequate Alternative Forum

The second requirement—an adequate alternative forum—is readily satisfied. The Supreme Court has established that this requirement is ordinarily satisfied when "the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 254 n.22 (quoting *Gilbert*, 330 U.S. at 506-07). Here, Defendant has already submitted to the jurisdiction of the Central District of California by filing his action there. Moreover, Plaintiff is indisputably subject to personal jurisdiction in California, as it conducted substantial business operations there and employed California residents.

Courts have consistently found that federal courts in other districts constitute adequate alternative forums. See, e.g., *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998) (finding District of Columbia an adequate alternative forum); *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980) (affirming forum non conveniens dismissal in favor of a California forum).

### 3. The Private Interest Factors Strongly Favor California

The private interest factors identified by the Supreme Court include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; (4) practical problems of trying the case expeditiously and inexpensively; and (5) all other practical problems that make trial easy, expeditious, and inexpensive. *Gilbert*, 330 U.S. at 508; *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002). These factors overwhelmingly favor California:

**Access to Sources of Proof**: The vast majority of evidence is located in California. Defendant resides in California, VoiceBite was founded in California, and all relevant employment activities occurred in California. As the Second Circuit recognized in *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978), "the location of documents and records is to be considered but is not alone determinative" in the analysis. Here, not only documents but physical evidence and witnesses are predominantly located in California.

**Witness Availability**: Nearly all material witnesses reside in California, including:

(a) Defendant Vasan, a California resident

(b) Michael Bell, Plaintiff's lead negotiator, a resident of Manhattan Beach, California

(c) The other VoiceBite founders, four of whom are California residents

(d) Medical personnel who treated Defendant during his leave in Costa Mesa, California

(e) Critically, an individual prominently named in Plaintiff's Complaint—**Vasan Varadarajan**—is Defendant's father and resides with Defendant in Cerritos, California. As such, he is well outside the subpoena power of New York courts under Fed. R. Civ. P. 45(c), which further reinforces the impracticality of litigating this dispute in New York. Any attempt to compel his testimony in New York would fail, requiring either live testimony in California or costly, inefficient deposition alternatives.

As the Supreme Court noted in Gilbert, the inability to compel unwilling witnesses to attend trial is a significant factor favoring dismissal. 330 U.S. at 511. Under Federal Rule of Civil Procedure 45(c), this Court cannot compel attendance of witnesses who reside more than

100 miles from the courthouse, making most potential witnesses beyond this Court's subpoena power.

**Witness Convenience and Expense**: Even for willing witnesses, the costs and burden of cross-country travel to New York would be substantial. The Second Circuit has emphasized that "the convenience of the witnesses is probably the single most important factor in the transfer analysis." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 517 (2d Cir. 1989) (internal quotation marks omitted).

**Practical Problems**: The first-filed California Action will proceed regardless of this Court's ruling, creating the potential for duplicative discovery, inconsistent rulings, and waste of judicial resources. The Supreme Court has recognized that "the pendency of a similar action in another forum is a factor to be considered" in the forum non conveniens analysis. *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

4. The Public Interest Factors Decisively Favor California

The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; (3) interest in having the trial in a forum familiar with the governing law; (4) avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6; *Iragorri*, 274 F.3d at 74. Again, these factors strongly favor California:

**Local Interest**: California has a compelling interest in adjudicating disputes involving its residents and businesses operating within its borders. As the Supreme Court emphasized in Gilbert, "there is a local interest in having localized controversies decided at home." 330 U.S. at 509. Here, all the relevant conduct—from VoiceBite's founding to the merger negotiations to Defendant's termination—occurred in California. While Plaintiff may be headquartered in New York, the dispute itself is fundamentally a California controversy.

**Governing Law**: California law clearly governs the employment relationship. Defendant's Offer Letter explicitly states that it "shall be governed by the laws of the State of California." Courts have consistently recognized that "the 'public interest' includes the interest in

having the trial in a forum that is familiar with the law that must govern the action." *Scottish Air Int'l, Inc. v. British Caledonian Grp.*, PLC, 81 F.3d 1224, 1234 (2d Cir. 1996).

**Labor Law Protections**: California has specific statutory protections for employees that would be at risk of being circumvented if litigation proceeded in New York. California Labor Code § 925 specifically prohibits employers from requiring California employees to litigate claims outside California as a condition of employment. The California legislature's express policy choice to protect California workers should be respected. See *America Movil, S.A.B. de C.V. v. 7-Eleven, Inc.*, 642 F. App'x 17, 21 (2d Cir. 2016) (recognizing importance of respecting state policy choices in forum non conveniens analysis).

**Conflict of Laws**: Keeping this action in New York would necessitate complex conflict-of-laws analyses that would be avoided in California. This Court would need to determine whether New York or California law applies to various aspects of the dispute. As the Supreme Court observed in *Piper Aircraft*, "the need to apply foreign law" can "point[] toward dismissal." 454 U.S. at 260.

**Burden on Local Resources**: It would be unfair to burden New York citizens with jury duty when this case has minimal substantive connection to New York. As the Supreme Court noted in *Gilbert*, there is no reason to "impose the duty of jury service upon the people of a community which has no relation to the litigation." 330 U.S. at 508-09. While Plaintiff may be nominally headquartered in New York, the operative facts occurred in California.

### 5. The Balance of Factors "Tips Strongly" in Favor of Dismissal

The Supreme Court has held that dismissal is warranted when "the balance of factors tips strongly in favor of trial in the foreign forum." *Piper Aircraft,* 454 U.S. at 255. Here, both the private and public interest factors overwhelmingly favor litigation in California: Defendant resides in California and performed his employment duties exclusively in California. The employment relationship, which is central to many of the claims and defenses in this dispute, was expressly governed by California law pursuant to Defendant's Offer Letter.

Key witnesses and evidence are predominantly located in California, including all founding team members and Plaintiff's own lead negotiator.

The California Action is proceeding in federal court and includes federal claims under the Family and Medical Leave Act, providing a comprehensive forum for resolving all related issues.

California has a strong statutory and public policy interest in adjudicating disputes involving its residents and enforcing its employment laws designed to protect California workers.

The Second Circuit has consistently recognized that when the balance of factors so strongly favors an alternative forum, dismissal on forum non conveniens grounds is appropriate, even where venue is technically proper. *Iragorri, 274 F.3d at 75; Base Metal Trading Ltd. v. Russian Aluminum*, 253 F.3d 681, 684 (2d Cir. 2001) (affirming dismissal where "trial in the United States would be inconvenient for the parties and witnesses").

As the Supreme Court emphasized in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007), when forum non conveniens considerations weigh heavily in favor of dismissal, a court "may dismiss the case without first determining whether it has jurisdiction." The facts and precedent in this case provide ample justification for this Court to dismiss in favor of the more appropriate California forum.

## D. The Merger Agreement's Forum Selection Clause Is Inapplicable

### 1. Forum Selection Clauses Do Not Create Jurisdiction

Plaintiff may attempt to rely on a forum-selection clause in the Merger Agreement to establish personal jurisdiction over Defendant. However, forum-selection clauses do not, by themselves, confer personal jurisdiction where it otherwise does not exist.

In federal court, personal jurisdiction must still comply with both states long-arm statutes and constitutional due process. See *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). Even where a forum-selection clause exists, courts evaluate whether the defendant has "minimum contacts" with the forum such that jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). As the Southern District of New York has held A forum selection clause cannot by itself

create jurisdiction in a forum where a defendant has no meaningful contacts. See *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010).

Here, Defendant has no personal, business, or contractual presence in New York. He has not conducted business in New York in his individual capacity, has not executed any of the relevant agreements in New York, and has not purposefully directed conduct toward New York. The existence of a forum clause in a separate corporate agreement — even if applicable — does not substitute for constitutionally required contacts.

Accordingly, the forum-selection clause cited by Plaintiff cannot cure the jurisdictional deficiencies in this case.

### 2. The Merger Agreement's Forum Selection Clause is not Applicable Here

Even if forum-selection clauses could confer jurisdiction (they cannot), the specific clause in the Merger Agreement is inapplicable here for several independent reasons:

**Separate Agreements Without Forum Selection**: The Complaint is based on ancillary agreements — including the "IP Letter" and "Assignment Agreement" — that either lack forum-selection clauses entirely or do not designate New York as the forum. The IP Letter contains a unilateral reference to the Merger Agreement, but the Merger Agreement does not incorporate the IP Letter. Such one-way references are insufficient to establish proper contractual integration. As the Second Circuit held in *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 721-22 (2d Cir. 2013), "for the terms of one document to be incorporated by reference into another document, the 'reference must be clear and unequivocal.'" Similarly, in *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008), the court emphasized that "incorporating language must explicitly, or at least precisely, identify the written material being incorporated."

**Different Parties to Agreement**: The Assignment Agreement was executed between Defendant and VoiceBite Corporation, not between Defendant and Plaintiff Checkmate. This reflects a distinct legal relationship. Plaintiff cannot bootstrap forum-selection from contracts to which it was not a party. The Second Circuit affirmed in *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53 (2d Cir. 2004), that "a non-signatory to a contract containing a forum selection

clause may enforce that clause only where the non-signatory is 'closely related' to a signatory," a standard that requires "a sufficiently close relationship" and foreseeability of litigation. See also *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012) (requiring a "close relationship" between the dispute and the agreement containing the forum selection clause).

**Differing Contractual Capacities**: The IP Letter was executed between Plaintiff and Defendant as an individual, whereas the Merger Agreement was between Defendant and VoiceBite. As the Supreme Court established in *United States v. Bestfoods*, 524 U.S. 51, 68 (1998), there is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation... is not liable for the acts of its subsidiaries." This principle extends to distinguishing contracts made in different legal capacities. The New York Court of Appeals similarly maintained in *Fink v. Golenbock*, 238 A.D.2d 37, 40 (1st Dep't 1997) that "the law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability."

**Procedural Waiver**: Plaintiff has failed to follow the Merger Agreement's dispute resolution procedures, which require that claims involving shareholders be pursued through the designated Holder Representative. Plaintiff's decision to file this action directly, outside of that framework, constitutes a waiver of its ability to selectively enforce the forum clause. Courts have consistently held that parties cannot selectively enforce contractual provisions while ignoring others. See *Israel v. Chabra*, 537 F.3d 86, 95 (2d Cir. 2008) (rejecting "selective enforcement" of contractual terms). In *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 97 (1st Cir. 2015), the court noted that "a party cannot cherry-pick the provisions of a contract that it deems favorable while disregarding those that it deems unfavorable."

**Inconsistent Positions**: Plaintiff is selectively relying on the Merger Agreement, invoking the forum clause while disregarding its mandatory jury trial waiver and simultaneously pursuing claims under ancillary agreements it treats as integrated. This inconsistency further undermines any claim of contractual certainty or fairness. Courts have rejected such inconsistent positions under the doctrine of judicial estoppel. See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (prohibiting parties from "deliberately changing positions according to the exigencies

of the moment"). The Second Circuit has applied this principle in contractual disputes, noting in *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) that parties may not "play fast and loose with the courts" by adopting inconsistent interpretations of the same agreement.

California Labor Code Override

### 3. Plaintiff Elects to Void the Clause under California Labor Code § 925

As applied to employment-related claims, any forum-selection clause is voidable under California Labor Code § 925, which prohibits employers from requiring California employees to litigate outside California as a condition of employment. Defendant's Offer Letter explicitly states that it "shall be governed by the laws of the State of California." Because Plaintiff seeks declaratory relief to "disentitle" Defendant from compensation earned through employment, the forum clause is voidable at Defendant's election. California courts have strictly enforced this protection, as seen in *Verdugo v. Alliantgroup, L.P.,* 237 Cal. App. 4th 141, 147 (2015), which held that "California public policy favors the protection of employee rights" and in *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 240 (2015), which emphasized that California has a "strong public policy protecting the rights of California workers."

First-to-File and Claims Already at Issue

The Complaint expressly seeks relief concerning compensation earned through employment, not merger consideration. These claims are already at issue in the earlier-filed action in the Central District of California, which arises under California employment law. The forum clause has no application to such claims and cannot override California's statutory protections or the first-to-file doctrine. Federal courts consistently uphold the first-to-file rule, which "gives priority to the first case filed." *Orthmann v. Apple Inc.*, 765 F.3d 1185, 1188 (9th Cir. 2014). In *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999), the court noted that this rule "is grounded in principles of comity and sound judicial administration" and prevents "the waste of duplication, the burden on litigants of being required to fight legal battles on two fronts, and the chance that the two courts would reach different results."

**E. Plaintiff Failed to Satisfy Conditions Precedent to Litigation**

    1. Failure to Satisfy a Condition Precedent to Bring This Lawsuit

    The Merger Agreement contains a specific Dispute Resolution framework governing how disputes arising from the agreement must be handled. Specifically, the Merger Agreement establishes a Holder Representative with exclusive authority to represent the Pre-Closing Holders (the VoiceBite shareholders) in disputes:

> "The Holder Representative will have full power, authority and discretion... to represent the Pre-Closing Holders and their respective successors and assigns with respect to all matters arising under this Agreement, including, after the Closing, to negotiate and enter into amendments to this Agreement for and on behalf of the Pre-Closing Holders and make all decisions required or allowed to be made by the Holder Representative pursuant to the provisions hereof and thereof (including the right to defend, settle, compromise or take any other action with respect to any matter for which Indemnified Parties seek indemnification under Section 8)…" - **Section 9.1, Merger Agreement**

    While Plaintiff initially appeared to follow this framework by serving a Notice of Claim to the Holder Representative on January 29, 2025, it promptly contradicted its own position by filing this retaliatory lawsuit against Defendant individually on February 14, 2025 — bypassing the contractually established dispute resolution process.

    Section 9.1 grants the Holder Representative not just the authority but the exclusive duty to "defend, settle, compromise or take any other action" with respect to disputes under the agreement. This process is not optional — it is a condition precedent to any litigation involving Pre-Closing Holders.

    Under New York law, such conditions must be strictly enforced. In *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995), the Court of Appeals held that "express conditions must be literally performed; substantial performance will not suffice." The court reaffirmed this standard in *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009), where it described a condition precedent as "an act or event, other than a lapse of time,

which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."

This principle has been consistently reinforced in New York courts. In *IDT Corp. v. Tyco Group*, S.A.R.L., 13 N.Y.3d 209, 214 (2009), the Court of Appeals emphasized that "a court may not excise express conditions precedent... or impose additional requirements not contained in the agreement." Similarly, in *Legum v. Russo*, 133 A.D.3d 638, 639 (2d Dep't 2015), the court held that "when a contract contains a condition precedent, the performance of which is within the control of the plaintiff, no recovery or remedy can be had until that event occurs."

In other words: unless and until the Plaintiff proceeds through the Holder Representative, no right to bring this claim individually has vested. As the Supreme Court stated in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), courts are not at liberty to disregard a contractually mandated dispute resolution procedure, even if they believe the claim is weak or the process inefficient. Once agreed to, the contract governs.

This principle was also foundational in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967), where the Court held that disputes regarding the enforceability of a contract's provisions — including procedural mechanisms — must be resolved in accordance with the process chosen by the parties, unless there is a direct challenge to the clause itself. The Second Circuit has consistently upheld this principle in cases like *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004), emphasizing the importance of honoring contractual dispute resolution mechanisms.

Plaintiff's actions — serving a joint shareholder Notice, then promptly filing an individual lawsuit — reveal not a misunderstanding, but a tactical attempt to avoid the very structure it initially invoked. As such, this lawsuit is procedurally barred.

Plaintiff now faces a core contradiction:

If it argues that the dispute arises under the Merger Agreement (to invoke the forum selection clause in § 9.7(b)), it must also comply with the dispute resolution process in § 9.1.

If it argues that the claims fall outside that framework, it forfeits any right to rely on the forum selection clause for jurisdiction.

This is precisely the type of selective enforcement that courts reject. In *Israel v. Chabra*, 537 F.3d 86, 95 (2d Cir. 2008), the Second Circuit affirmed that parties cannot "benefit from selective enforcement" of contract terms while ignoring other binding provisions. The court further elaborated in *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital*, *Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) that "a party may not cherry-pick the provisions of a contract that it will adhere to."

Finally, as a matter of fact, Defendant affirms that among the VoiceBite shareholders, there was full transparency regarding the issues at hand. After consulting shared corporate counsel, the founding team concluded there were no material disclosures outstanding. All decisions were made collectively, and Plaintiff's decision to isolate one shareholder and bypass the agreed process is improper, inequitable, and legally ineffective.

### 2. Plaintiff Is Equitably Estopped from Evading the Merger Agreement's Dispute Resolution Procedure

Plaintiff is equitably estopped from circumventing the Merger Agreement's mandatory dispute resolution framework after having already invoked it. By serving a Notice of Claim on the Holder Representative on January 29, 2025, Plaintiff represented its intent to proceed under Section 9.1 of the Merger Agreement. Defendant and the other VoiceBite shareholders reasonably relied on this conduct, refraining from immediately escalating litigation and preparing to engage Plaintiff through shared counsel, as contemplated by the Agreement.

Plaintiff's abrupt reversal—filing a direct lawsuit against Defendant in his individual capacity on February 14, 2025—contradicted that representation and caused material prejudice. Equity bars Plaintiff from initiating the very procedural framework designed to ensure collective resolution, only to then abandon it when expedient.

Under New York law, equitable estoppel prevents a party from asserting rights that would work injustice on another who, justifiably relying on the opposing party's actions, has been misled into a detrimental change of position. The New York Court of Appeals has established in *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 184 (1982), that the doctrine applies when "the conduct of the party to be estopped must have

induced the party seeking estoppel to justifiably rely on that conduct to his or her detriment." This principle was reinforced in *River Dock & Pile, LLC v. Ins. Co. of N. Am.*, 219 A.D.3d 104, 115 (2d Dep't 2023), holding that equitable estoppel "prevents one from denying his or her own expressed or implied admission which has in good faith been relied upon by another to his or her detriment."

Moreover, in *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001), the Second Circuit emphasized that equitable estoppel is particularly appropriate when "a party has engaged in a course of conduct that makes it inequitable for that party to take a position that contradicts that conduct." The doctrine has been similarly applied in In re *World Trade Center Lower Manhattan Disaster Site Litig.,* 846 F.3d 58, 75 (2d Cir. 2017), where the court found estoppel appropriate when a party takes inconsistent positions to gain tactical advantage.

Moreover, Plaintiff now advances a novel and dangerous legal theory that collapses the distinction between individual and corporate liability. It seeks to hold one individual responsible for alleged breaches that arose from corporate representations and collective decision-making—setting a precedent that blurs clear lines between shareholders, employees, and corporate entities.

Specifically, Plaintiff is not only withholding compensation earned by Defendant but is also seeking to justify the forfeiture of over $1.5 million in bonuses across the entire founding team. The theory, as asserted, is that if one founder engaged in misconduct, then VoiceBite—as an entity—engaged in misconduct, and thus, the entire team must forfeit their compensation.

This theory collapses the distinction between individual and entity liability—misattributing group conduct to individuals without individualized findings or procedural safeguards. The representations and warranties at issue were negotiated and executed collectively by the founding team, with shared counsel and full transparency. By isolating Defendant—the only team member Plaintiff terminated and the one currently without income—Plaintiff fragments a unified defense, not to pursue justice, but to exploit a strategic imbalance in power.

Courts have consistently rejected such attempts to bypass corporate forms without proper justification. In *Walkovszky v. Carlton*, 18 N.Y.2d 414, 419 (1966), the Court of Appeals established that "the corporate form may not be disregarded merely because the corporate assets

are insufficient to satisfy the claims of creditors." Similarly, in *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140-41 (1993), the court emphasized that piercing the corporate veil requires "a showing that the individual defendants exercised complete domination of the corporation and... such domination was used to commit a fraud or wrong."

This litigation strategy has several immediate and troubling consequences:

(a) It undermines the team's collective defense, leveraging economic disparity and isolation to increase Plaintiff's odds of prevailing without regard to merit.

(b) It creates a moral hazard, incentivizing acquirers to terminate and target the most outspoken employee in order to weaken opposition and avoid contractual obligations.

(c) Plaintiff has openly asserted that success against one founder will serve as grounds to deny bonuses to the rest, regardless of their individual conduct.

Courts should not countenance such selective enforcement or power-leveraged litigation. Equity, contractual integrity, and the structure of the Merger Agreement—drafted by Plaintiff— all demand that this lawsuit—and the theory on which it relies—be rejected.

## IV. CONCLUSION

For the foregoing reasons, Defendant Arjun Vasan respectfully requests that this Court:

A.  Dismiss the Complaint in its entirety with prejudice pursuant to:

- Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction;
- Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process;
- Federal Rule of Civil Procedure 12(b)(3) for improper venue;
- Federal Rule of Civil Procedure 19 for failure to join necessary parties; and
- The doctrines of forum non conveniens and the first-filed rule;

B.  Alternatively, dismiss the Complaint without prejudice due to improper service of process, thereby requiring Plaintiff to properly serve Defendant if it wishes to proceed;

C.  Alternatively, quash service of process pursuant to Rule 12(b)(5) based on the defective summons and improper service attempts, without prejudice to Plaintiff's right to attempt proper service if jurisdictionally permitted;

D. Alternatively, if the Court declines to dismiss the action entirely or quash service, transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a), where it can be consolidated with the earlier-filed Case No. 2:25-cv-00765-MEMF-JPR;

E. Alternatively, if the Court declines to transfer the entire action, stay these proceedings pending resolution of the first-filed California Action;

F. Award Defendant his costs and expenses incurred in defending this improperly filed action; and

G. Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,


Arjun Vasan, Defendant Pro Se 12615 193rd Street Cerritos, CA 90703 562-900-6541
arjun.vasan@gmail.com