**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHECKMATE.COM, INC., <br><br>                        Plaintiff, <br><br>         v. <br><br> ARJUN VASAN, <br><br>                        Defendant. | Case No.: 1:25-cv-03181-JMF <br><br> **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br><br> Removed on April 12, 2025 |

Plaintiff Checkmate.com Inc. ("Checkmate" or "Plaintiff"), by and through its attorneys at K&L Gates LLP, brings this Amended Complaint against Arjun Vasan ("Vasan" or "Defendant") and alleges the following:

## NATURE OF THE ACTION

1.     "***No matter what***."  These three words, written by Defendant Arjun Vasan in January 2025, exemplify Defendant's scam giving rise to this action.  Defendant apparently believed he could ride a wave of investor interest in artificial intelligence ("AI") to peddle a set of what would turn out to be recycled, cobbled-together software code for much, much more than it was worth.  For Defendant, the best part about the scheme was that if his extensive duplicity was ever discovered, it wouldn't matter: he would get himself paid "***no matter what***," ride off into the sunset with millions of dollars in ill-gotten gains and leave his victims holding the bag.

2.     Plaintiff became Vasan's unsuspecting victim in April 2024, when Vasan sought to convince Checkmate to pay millions of dollars to acquire VoiceBite Corporation ("VoiceBite") – the corporate vehicle for his scam – while falsely claiming that he (and thus VoiceBite) had

*exclusive* ownership and authorship of what was represented to be its world-class voice ordering AI technology. Among Vasan's many misrepresentations, Vasan represented that VoiceBite was powered by its exclusive software code, which was built from the ground up.

3.      The truth was far different.  VoiceBite's technology had not been developed or owned exclusively by Vasan.  It had been recycled – again and again – through multiple individuals and employers, each with actual and potential claims to the technology contained therein and the assets Checkmate **thought** it had acquired.

4.      Plaintiff was unsuspecting, but Vasan was not.  He knew what he was doing.  Vasan has admitted, in substance and effect, that he knew VoiceBite's technology was riddled with repurposed code, unauthored by VoiceBite, and debated with his co-founders whether to disclose his concealment in fear he would be discovered and exposed by Checkmate. However, in order to secure the million-dollar bag and a potential executive role at Checkmate, Vasan proceeded with his master plan to defraud Checkmate. Vasan made multiple intentional misrepresentations and fraudulent statements to Checkmate knowing that VoiceBite's ownership of its intellectual property was critical to Checkmate's interest in acquiring same for the purpose of expanding its technology and supplementing its presence in the voice ordering space within the restaurant industry.

5.      As with many garden-variety scams, Vasan's "*no matter what*" expectations would ultimately begin to unravel.  Checkmate made multiple requests for access to the code, with which Vasan failed to comply.  Knowing that he would soon be discovered, throughout the summer and fall of 2024, Vasan engaged in increasingly unprofessional conduct and inappropriate behavior with his co-workers. All the while, Vasan refused to provide Plaintiffs' engineers and developers with access to the code that he knew was far from what he had represented.

6.      Checkmate began to uncover the true extent of Vasan's duplicity in fall 2024 and immediately took steps to protect itself under the terms of the parties' transactions and otherwise, making it clear that it was Vasan – and not Plaintiffs – that was required to compensate Plaintiffs for the losses caused by his gross misconduct.  Vasan steadfastly denied any accountability for his fraudulent conduct, vacillating between a series of increasingly absurd excuses to cover up his conduct and excuse his own liability. But Vasan knew he wasn't telling the truth: he has recently admitted that he intentionally concealed his misrepresentations concerning VoiceBite's technology to Checkmate in part because he allegedly feared an adverse response from Checkmate – the company paying millions of dollars for supposedly proprietary AI technology.

7.      Vasan clearly thought he had a sweetheart deal.  Indeed, Checkmate has learned that he has since attempted to pawn off some of ***the same code*** to yet another third party in violation of his non-compete agreement.  The law, of course, is otherwise: no person is entitled to indemnity against their own fraud and no contract can possibly be interpreted to allow somebody to profit from their own intentional and entirely fraudulent wrongdoing.  Vasan's inability to recognize these basic truths and compensate Checkmate for the significant harm he has caused has left Checkmate with no choice but to initiate the present action to obtain compensation for that harm.

## PARTIES

8.      Plaintiff Checkmate.com Inc. is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 1113 York Avenue, New York, NY 10065.

9.      Defendant Arjun Vasan, co-founder of VoiceBite, is an individual.  Upon information and belief, Mr. Vasan has, from time to time, resided with his parents in the State of California and claims to reside with his parents there today.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because it involves parties who are all citizens of different states or foreign entities and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over this proceeding because the parties contractually consented to the Court's exclusive jurisdiction under Section 9.7 of the Agreement and Plan of Merger which provides that "[a]ny legal action or other Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement will be brought or otherwise commenced exclusively in any state or federal court located in the County of New York, State of New York."

12.     Similarly, venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b) because Vasan waived any objections to venue in this Court under Section 9.7 of the Agreement and Plan of Merger which provides that each party "expressly and irrevocably consents and submits to the jurisdiction of each state and federal court located in the County of New York, State of New York (and each appellate court located in the State of New York), in connection with any Legal Proceeding."

## FACTUAL BACKGROUND

### I.     CHECKMATE ACQUIRES VOICEBITE FOR ITS PROPRIETARY CODE

13.     Checkmate is a solutions-powered company with enterprise technology and expert 24/7 support that blends its technology and hands-on support to tackle challenges facing restaurants, such as first-party ordering, third-party integrations, menu management, accounting reconciliation, loyalty programs, and more.

14.    Looking to expand its technology and supplement its presence in the voice ordering space of the restaurant industry, Checkmate sought to acquire VoiceBite. VoiceBite, co-founded by Arjun Vasan, is a customer service-based company which leverages AI to automate the voice ordering process for restaurants.  The voice AI space is very early stage but considered to have the potential to be a very large market opportunity, and Checkmate viewed the acquisition of VoiceBite as a way to assume an early leadership position in this nascent business. Defendant Vasan has previous experience in the voice AI space, as he had founded an earlier startup company called CyborgOps, which was previously acquired in 2022 by Presto Automation.

15.    With the goal of expanding its voice ordering AI capabilities, Checkmate agreed to acquire VoiceBite, along with its intellectual property, in early 2024 by way of the Merger Agreement and related transactional documents including, but not limited to, Assignment of IP and Other Assets and Non-Competition Agreement (the "Transaction").

16.    From the outset, Vasan represented himself – and thus VoiceBite – as the owner of proprietary code for VoiceBite's voice ordering AI application, a key asset material to Checkmate's decision to pursue the acquisition because it would provide Checkmate with the ability to be a very early mover into the nascent but potentially enormous AI-assisted restaurant ordering space.

17.    Vasan, however, knew VoiceBite's technology was not the cutting-edge technology he represented. Contemplating whether to reveal the truth of this matter to Checkmate – Vasan decided against doing so.  He recently claimed to have discussed with his co-founders whether to disclose to Checkmate certain false representations he had made concerning the code. He decided against doing so – concluding that the risk of this fraud being exposed was worth the potential for millions of dollars and an executive role at Checkmate.

18.     Aligning with his plan to defraud Checkmate, Vasan was evasive about allowing Checkmate to review what he claimed to be VoiceBite's proprietary code. Vasan's evasiveness required Checkmate to obtain from him express representations and warranties regarding the ownership and authorship of VoiceBite's intellectual property.  These included, among others:

- Vasan was "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system") and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of Vasan;

- Vasan had provided to VoiceBite "all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction" related to VoiceBite's technology;

- That VoiceBite owned or had valid and enforceable right to use, all intellectual property used or proposed to be used in connection with its business;

- That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person;"

- That "no source code for any VoiceBite Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee" of VoiceBite;

- That Vasan had not "omitted to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading;" and

- That Vasan "is not aware of any information necessary to enable a prospective purchaser of VoiceBite" to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein."

19.     All of these representations were false.  Vasan knew they were false when he was making them.  He also knew that Checkmate was relying on these representations and that these

representations were fundamental in Checkmate's decision to proceed with the acquisition of VoiceBite – a deal that closed on April 30, 2024.

## II.    CONCERNED THAT HIS SCHEME WILL UNRAVEL, VASAN REFUSES TO HAND OVER VOICEBITE'S CODE AND DEMONSTRATES INCREASING INSTABILITY

20.    The closing of the VoiceBite transaction led to Vasan's (ultimately ill-fated) employment as an executive with Checkmate.  Cracks in Vasan's scheme would soon emerge.

21.     As an initial matter, and critically here, Vasan refused to provide Checkmate with the very code at the **heart** of the VoiceBite acquisition.  Delay after delay was followed with excuse after excuse – months dragged on without Plaintiffs having access to the code that VoiceBite purportedly owned.

22.    Throughout, admittedly aware of the misrepresentations he had made, Vasan became increasingly nervous.  His communications with team members and the public became increasingly erratic and unprofessional.  In the fall of 2024, Vasan variously alternated between threatening litigation against his colleagues ("You will be hearing from my attorney then") and bizarrely implying a lack of team morale if he were to leave Checkmate ("In fact the reason I wont quit is *I dont want to crush these people's morale. Without me, they are toast and you can ask them. They wont believe anymore* [*sic* throughout]" and "the morale of rhe [*sic*] voice ai team would be totallt [*sic*] crushed without me. You are incredibly stupid not to see that anyway").

23.    Knowing he was about to be uncovered, in direct contravention of his non-compete agreement, Vasan began looking to work at a competing company.  On or around November 7 and 8, 2024, Vasan contacted a competitor of Checkmate and mentioned the possibility of leaving Checkmate and bringing two Checkmate engineers along with him in a potential hire by the competitor.  Vasan also shared recordings derived from "Cyborg" technology with the competitor.

In these emails, Vasan explicitly refers to Cyborg as "my earlier company" and alludes to pawning off the **very same code** he sold to Checkmate.

### III.     <u>PLAINTIFF'S DISCOVERY OF VASAN'S FRAUDULENT REPRESENTATIONS</u>

24.     The reason for Vasan's erratic and unprofessional behavior as he endeavored to continue his scam would become clear. Checkmate's review of the code revealed that copyright in the VoiceBite code dated back to as early as **2018**, when Vasan was working for and had obligations to **other entities** well before the formation of VoiceBite itself, which was not formed until on or around August 4, 2023.

```python
#!/usr/bin/env python
# -*- coding: utf-8 -*-



__author__ = 'Arjun Vasan, Vasan Varadarajan'
__copyright__ = 'Copyright 2018.'
```

25.     Further investigation established that the code not only predated VoiceBite's existence but also contained numerous references to "Cyborg" – a reference to **Vasan's previous company, CyborgOps, and a third party with claims to the code** – in the VoiceBite application.

26.     CyborgOPS was a company previously founded by Vasan. Echoing Checkmate's acquisition of VoiceBite, Cyborg's assets were acquired by Presto Automation, and Vasan joined Presto Automation as Head of Voice Innovation before being terminated in or around April or May of 2023. The code's specific references to "Cyborg" includes at least the following:

- The **deployment.txt** file, which describes the deployment process for the application, referred to the entire VoiceBite application as "Cyborg."

```
sudo passwd cyborg #set password
sudo usermod -s /bin/bash cyborg
#allow cyborg to sudo into root
usermod -a -G sudo cyborg #by default a group sudo is created with sudo priveleges in sudoers file
#logout and login as ka
to be able to ssh in as cyborg, your key has to be in .ssh/authorized_keys file in /home/cyborg


step5:
cd ~
mkdir git #use this as default dir
cd git
sudo apt-get update
sudo apt-get install git #install git
#Now follow section 'steps for deployment'
```

- The **_deepgram.txt_** file, which contains credentials for using the Deepgram TTS (text-to-speech), explicitly referenced "Cyborg."

```
name: cyborg-ops
key: xDx6Cd7rPfNE5WXt
secret: bLY6BJ4RIYpFw7mgjgWa9YTFe8TwElw6
```

- The **_env.json_** file, which provides configuration settings for the application also contained multiple references to "Cyborg."

```
installDir": "/home/voicebite",
coreAppDir": "platform",
authDir": "/home/voicebite/platform/auth",
googleCreds": "{{ installDir }}/{{ coreAppDir }}/auth/goog.json",
squareApiPrefix": "https://r2d2.friendlycyborg.com/squareapi",
ps_db": "postgresql://cyborg:cyborg23@slash-db-do-user-3934208-0.a.db.ondigitalocean.
recordingDirPrefix": "/var/www/av.voicebite.ai/html",
clientID": "883344568883-h5n8p9c96tk372afvo5vb332p76t78cn.apps.googleusercontent.com"
certfile": "/etc/letsencrypt/live/av.voicebite.ai/fullchain.pem",
keyfile": "/etc/letsencrypt/live/av.voicebite.ai/privkey.pem",
logDir": "{{ installDir }}/log",
echoDelayInFrames": 1,
```

- The **_Globals.py_** file, which manages application-wide configurations, also incorporated references to "Cyborg," consistent with the **_Env.json_** structure above.

```
#determine the active based on the hostname (G['active'], G['active']
G=config
G['portMap'] = portMap
G['activeHostname']=hostname
G['test']=overview['test']
#G['redisPassword'] = G['redisPassword'] == "None" ? None : G['redisPassword']
G['redisPassword'] = None if G['redisPassword'] == 'None' else G['redisPassword
if 'redis_connection_class' in G:
    if G['redis_connection_class'] == 'redis.SSLConnection':
        G['redis_pool'] = redis.ConnectionPool(host=G['redisHost'], port=G['re
            , password=G['redisPassword'],connection_class=redis.SSLConnection
    else:
        print(f'Unknown redis connection_class: {G["connection_class"]}')
        exit(1)
else:
    G['redis_pool'] = redis.ConnectionPool(host=G['redisHost'], port=G['redisP
```

- Even more brazenly, several user interface components within the VoiceBite application had copyright headers that were changed from "CyborgOPS" to "VoiceBite."



27.    Beyond VoiceBite's application code being unoriginal, previously acquired by another entity, and recycled, Checkmate's investigation uncovered references to an additional third-party author, "Vasan Varadarajan," who was a former "Founder & President" of CyborgOPS.



28.     Varadarajan's role was not disclosed in the Transaction, nor was his authorship acknowledged in the representations and warranties made by Defendant.  However, on or around January 23, 2025, Vasan admitted in writing that Varadarajan – *yet another third party with claims to this intellectual property* – had developed the property that Vasan falsely claimed to own.

29.     The truth was thus becoming clear: Arjun Vasan did not have the rights he claimed to have.  And because he did not have rights he claimed to have, he did not and could not assign those rights to VoiceBite, and VoiceBite did not and could not assign those rights to Checkmate: directly contradicting the representations made by Defendant.

30.     Checkmate confronted Vasan with its findings.  On December 6, 2024, Checkmate, through counsel, sent a letter to Vasan's legal counsel, detailing the discrepancies in the code and

how Defendant had misled Checkmate into acquiring VoiceBite under fraudulent representations, namely by falsely claiming originality and exclusive ownership of the code.

31.     Vasan's excuses became increasingly bizarre and implausible.  He falsely characterized the numerous "Cyborg" references embedded in the VoiceBite application code as merely "incidental" and asserted that "Cyborg" was a commonly used English word. Vasan failed to provide any substantive justification for the misrepresentations: "Incidental references to CyborgOps, or use of the common English word 'cyborg,' which I happen to like, and have used for user accounts, passwords and so on for many years, do not constitute material misrepresentation or fraud."

32.     In January 2025, Vasan even went so far as to tell Checkmate that it didn't matter whether or not misrepresentations had been made by him or whether he had committed outright fraud: throughout the transaction, he deliberately sought to negotiate payment from Checkmate to himself **"*no matter what*"** while all the while hiding the true state of his and VoiceBite's rights.

33.     In February 2025, Vasan's excuses shifted yet again.  This time, he claimed that the software, the code – the ***heart*** of VoiceBite – was not, in fact, intellectual property – emphasizing the stark and troubling reality that Checkmate had been duped by Vasan into acquiring a valueless non-asset.

34.     Of course, Checkmate would not have agreed to acquire VoiceBite if its core technology was not, in fact "intellectual property."  Vasan's misrepresentations regarding the originality and ownership of the code were knowing falsehoods that he told with full awareness of their materiality to Checkmate's decision to acquire VoiceBite.

35.     Then again in February 2025, Vasan brazenly made the excuse that he actually discussed with his co-founders the possibility of disclosing to Checkmate the fraudulent

representations he made concerning VoiceBite's AI technology prior to the closing of the VoiceBite transaction but ultimately decided, because of an alleged fear of a hostile reaction from Checkmate, it was better to cause Checkmate to rely on the representations so as to ensure that Checkmate would move forward with the acquisition.

36.     Vasan's desire to avoid accountability has since devolved into increasingly frequent and explicit threats.  For example, on May 5, 2025, Vasan wrote to Checkmate's counsel and said that if Checkmate did not abandon its effort to pursue its rights, he would "***crush***" it, that its counsel's "***careers will be ruined***," that he "***will show no mercy***" and that Checkmate should "***give up now, or face the fury of a hacker scorned.***"

> Because I will crush them, and you .. let me be clear. You will be **completely** crushed.
>
> Should you persist in your idiocy, your client will be eliminated (entirely), and K&L Gates will be humiliated .. by an insufferable *pro se*. Your careers will be ruined, and I will ensure that the press is well aware.
>
> I will show no mercy. None whatsoever. So give up now, or face the fury of a hacker scorned.

37.     Two days later, Vasan sought to retract these statements and claimed that they did "not represent [his] actual intentions, strategy, or approach to this litigation."

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Breach of Contract of Intellectual Property Acknowledgement and Assignment of IP and Other Assets)

38.     Checkmate incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

39.     Checkmate, on the one hand, and Vasan, on the other hand, entered into a written Intellectual Property Acknowledgement on April 30, 2024, as part of the Transaction, pursuant to which Vasan was prevented from bringing intellectual property owned by or subject to claims by third parties to Checkmate.

40.     Checkmate as assignee and third party beneficiary of VoiceBite, on the one hand, and Vasan, on the other hand, entered into an Assignment of IP and Other Assets on April 30, 2024, as part of the Transaction, pursuant to which Checkmate purchased all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction related to VoiceBite's technology.

41.     Pursuant to the terms of the Intellectual Property Acknowledgement and Assignment of IP And Other Assets agreements, Vasan made express representations and warranties concerning the authorship, ownership and originality of the VoiceBite application code.

42.     The Intellectual Property Acknowledgement and Assignment of IP And Other Assets agreements are valid contracts entered into with consideration.

43.     Checkmate has fully performed all conditions, covenants and promises required to be performed on its part in accordance with the Intellectual Property Acknowledgement and Assignment of IP And Other Assets agreements except to the extent that its performance was waived, excused or prevented by Vasan.

44.     Vasan materially breached the Intellectual Property Acknowledgement and Assignment of IP and Other Assets agreements, including by bringing intellectual property owned and subject to claims by third parties and failing to provide rights to VoiceBite's intellectual property as set forth in detail above.

45.     As a direct and proximate result of Vasan's foregoing breaches of contract, Plaintiffs have suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of the jurisdictional minimum of this court.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Noncompete Agreement)

46.     Checkmate incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

47.     Checkmate and Vasan entered into the Non-Compete Agreement, as part of the Transaction, a valid contract entered into with consideration.

48.     Pursuant to the terms of the Non-Compete Agreement, Vasan is prohibited, *inter alia*, from engaging or participating in or acquiring any financial or beneficial interest in any business that competes with Plaintiffs' business of providing AI-powered voice systems for phone answering or for restaurant drive-through voice ordering.

49.     Checkmate has fully performed all conditions, covenants and promises required to be performed on its part in accordance with the Non-Compete Agreement except to the extent that its performance was waived, excused or prevented by Vasan.

50.     Vasan materially breached the Non-Compete Agreement by, *inter alia*, in November 2024, contacting one or more of Plaintiffs' competitors for the purpose of attempting to solicit interest in acquiring the same code and employees provided to Checkmate as part of the Transaction.

51.     As a direct and proximate result of Vasan's foregoing breaches of the Non-Compete Agreement, Checkmate has suffered, and will continue to suffer, damages, including direct,

consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of the jurisdictional minimum of this court.

## THIRD CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

52.     Checkmate incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

53.     The Intellectual Property Acknowledgement and Assignment of IP And Other Assets, and Non-Compete agreements each incorporate a covenant of good faith and fair dealing, which provides that the parties would deal with each other in good faith and would not engage in conduct to deprive another party of the benefits of each of the agreements.

54.     Vasan materially breached the implied covenant of good faith and fair dealing in the Intellectual Property Acknowledgement and Assignment of IP And Other Assets agreements by knowingly and intentionally depriving Checkmate of its rights to obtain benefits under these agreements, making false representations and warranties concerning the VoiceBite application code's original authorship and exclusive ownership, as set forth in detail above.

55.     As a direct and proximate result of Vasan's foregoing breaches of the implied covenants of good faith and fair dealing, Plaintiffs have suffered, and will continue to suffer, damages, including direct, consequential, and incidental losses and lost profits, in an amount to be proved at trial in excess of the jurisdictional minimum of this court.

## FOURTH CLAIM FOR RELIEF

### (Fraud)

56.     Checkmate incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

57.    Vasan knowingly and intentionally misrepresented that Vasan and VoiceBite were the original author and exclusive owner of the VoiceBite application code, by way of numerous representations made to Checkmate throughout the Transaction as detailed above, including the following oral and written misrepresentations:

- Vasan was "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system") and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of Vasan;

- Vasan had provided to VoiceBite "all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction" related to VoiceBite's technology;

- That VoiceBite owned or had valid and enforceable right to use, all intellectual property used or proposed to be used in connection with its business;

- That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person;"

- That "no source code for any VoiceBite Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee" of VoiceBite;

- That Vasan had not "omitted to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading;" and

- That Vasan "is not aware of any information necessary to enable a prospective purchaser of VoiceBite" to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein."

58.    All of these representations were false when made. Vasan, who admits in writing that he intended at the time that he would be paid "no matter what," knew of their falsity and knew that Checkmate would rely on Defendant's material representations and warranties to make

decisions, *inter alia*, as to whether to enter into the Merger Agreement with VoiceBite and close same.

59.    The intentional misrepresentations and fraudulent statements were material and intended to induce Checkmate into paying Vasan millions of dollars.

60.    Checkmate reasonably and justifiably relied on the intentional misrepresentations and fraudulent statements made by Defendants.  As a direct and proximate result of Defendant's fraud, Plaintiff has suffered, and will continue to suffer damages, in an amount to be proved at trial in excess of the jurisdictional minimum of this court.

## **FIFTH CLAIM FOR RELIEF**

### **(Negligent Misrepresentation)**

61.    Checkmate alleges this claim in the alternative to its fourth claim for relief and incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

62.    Vasan had a duty to provide Checkmate with truthful and accurate information as part of the Transaction.

63.    Vasan negligently misrepresented that he and VoiceBite was the original author and exclusive owner of the VoiceBite application code, including by way of the following oral and written misrepresentations:

- Vasan was "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system") and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of Vasan;

- Vasan had provided to VoiceBite "all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and

packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction" related to VoiceBite's technology;

- That VoiceBite owned or had valid and enforceable right to use, all intellectual property used or proposed to be used in connection with its business;

- That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person;"

- That "no source code for any VoiceBite Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee" of VoiceBite;

- That Vasan had not "omitted to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading;" and

- That Vasan "is not aware of any information necessary to enable a prospective purchaser of VoiceBite" to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein."

64.    Vasan knew that Checkmate would rely on Defendant's material representations and warranties to make decisions, *inter alia*, whether to enter into the Merger Agreement with VoiceBite and whether to pay Vasan significant amounts of money.

65.    Checkmate reasonably relied on Vasan's negligent misrepresentations. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered, and will continue to suffer damages, in an amount to be proved at trial in excess of the jurisdictional minimum of this court.

## SIXTH CLAIM FOR RELIEF

### Declaratory Relief

66.    Checkmate incorporates and re-alleges the preceding paragraphs of this Amended Complaint as if fully set forth herein.

67.    Vasan represented in the agreements set forth above and otherwise that he and

VoiceBite were the exclusive authors and/or owners of the code forming the basis of VoiceBite's technology and further represented that no representation was made in connection with the Transaction contained any untrue statement of material fact or omitted to state any material fact necessary to make the statements not misleading.

68.     Through his pervasive breaches of representations and warranties, fraud and other misconduct, Vasan breached these obligations, giving rise to Checkmate's right to indemnification and disentitling Vasan to further compensation under any relevant agreements.

69.     Because Vasan has failed to comply with Checkmate's demands under the notices of breach and refused to satisfy and/or acknowledge his past, current and future obligations to repay and indemnify Plaintiffs for his misconduct, Plaintiffs reasonably expect that Vasan will continue to refuse to comply with his obligations under the relevant agreements – thus creating a real and justiciable controversy as to the rights and legal relations of the parties under the Transaction agreements.

70.     Because there is a justiciable controversy under CPLR § 3001, Checkmate is entitled to a declaration that Vasan is disentitled to further compensation under the parties' agreements and relevant law and that Vasan is required to indemnify Plaintiffs for losses incurred as a result of the foregoing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Checkmate prays for judgment against Vasan as follows:

1.     On the First through Fifth Claims for Relief, that Checkmate recover compensatory, consequential, incidental damages, and lost profits in an amount to be proved at trial in excess of the jurisdictional minimum of this Court;

2.     On the Sixth Claim for Relief, that a declaratory judgment issue that Vasan is

disentitled to further compensation under the parties' agreements and relevant law and that Vasan is required to indemnify Plaintiffs for losses incurred as a result of the foregoing conduct.

3.    That Vasan be ordered to pay punitive and exemplary damages in a sum sufficient to punish and deter him and others from similar wrongdoing;

4.    That Vasan pay to Checkmate the full costs of this action, including attorney's fees, to the fullest extent permitted by the parties' agreements and relevant law;

5.    That Checkmate recover pre- and post-judgment interest;

6.    That Checkmate be granted such other and further relief, in law or in equity, to which Plaintiffs may be entitled or as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial of all issues in this Amended Complaint so triable.

Dated: May 12, 2025                                    K&L GATES LLP


                                                       By: */s/ Thomas A. Warns*
                                                           Thomas A. Warns
                                                           tom.warns@klgates.com
                                                           599 Lexington Avenue
                                                           New York, NY 10022
                                                           Telephone: 212-536-3900


                                                           Ryan Q. Keech (*pro hac vice* forthcoming)
                                                           Rebecca I. Makitalo (*pro hac vice*
                                                           forthcoming)
                                                           10100 Santa Monica Blvd., 8th Fl.
                                                           Los Angeles, CA 90067
                                                           Telephone: 310-552-5000


                                                           *Attorneys for Plaintiff*
                                                           CHECKMATE.COM, INC.