UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

CHECKMATE.COM, INC.,    :

     Plaintiff,  :

       :

       :

       :

       :

       :

       :

   -against-   :

       :

       :

       :

       :

ARJUN VASAN,    :

       :

     Defendant. :

------------------------------------------------------- X

**25-CV-03181** (JMF)

DEFENDANT'S NOTICE OF SPECIAL
APPEARANCE; AND MOTION TO
DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-FILED RULE; FOR LACK OF
PERSONAL JURISDICTION, IMPROPER
VENUE, INSUFFICIENT SERVICE; AND
FAILURE TO SATISFY A CONDITION
PRECEDENT, TO STATE A CLAIM AND
TO JOIN INDISPENSABLE PARTIES;
MEMORANDUM OF LAW IN SUPPORT

### NOTICE OF SPECIAL APPEARANCE

  PLEASE TAKE NOTICE that Defendant ARJUN VASAN appears *specially* in this action solely for the purpose of contesting this Court's jurisdiction, venue, and sufficiency of service, and to assert the threshold defenses set forth in the accompanying Motion to Dismiss, Transfer, or Stay, and for no other purpose. This special appearance is expressly made without waiver of, and with full reservation of, any and all rights and defenses including, without limitation, all defenses available under Federal Rules of Civil Procedure 8, 9, 12, 19, 56 and any other jurisdictional, procedural, or substantive defense. By making this appearance and filing this motion, Defendant does not consent to the jurisdiction of this Court or waive any defense of improper service, lack of personal jurisdiction, or improper venue.

## <u>TABLE OF CONTENTS</u>

**NOTICE OF SPECIAL APPEARANCE** ...................................................................................I

**TABLE OF CONTENTS** ........................................................................................................ II

**TABLE OF AUTHORITIES** .................................................................................................IV

**MEMORANDUM OF LAW** .................................................................................................... 1

  **I. INTRODUCTION** ............................................................................................................. 1

  **II. FACTUAL BACKGROUND** ........................................................................................... 2

    *A. The Parties and their Bargain* ....................................................................................... 2

    *B. The Origins of the Current Dispute* ............................................................................... 3

    *C. Procedural History* ......................................................................................................... 3

    *D. Events in the California Action* ...................................................................................... 4

  **III. LEGAL STANDARDS** ................................................................................................... 5

    *A. The Parties' Agreements* ................................................................................................ 5

    *B. First-to-File Rule* ............................................................................................................ 5

    *C. Forum Selection Clause Enforcement* ........................................................................... 6

      1. Legal Standard: "Arises From or Relates To" ........................................................... 6

      2. Exceptions to Enforcement ......................................................................................... 6

      3. California Labor Code § 925 ....................................................................................... 7

    *D. Rule 12(b) Grounds for Dismissal* ................................................................................. 7

      1. Lack of Personal Jurisdiction (Rule 12(b)(2)) ............................................................ 7

      2. Improper Venue (Rule 12(b)(3)) ................................................................................. 7

      3. Insufficient Service of Process (Rule 12(b)(5)) .......................................................... 7

      4. Failure to State a Claim Upon Which Relief Can Be Granted (Rule 12(b)(6)) ............. 7

      5. Failure to Join Indispensable Parties (Rule 12(b)(7), Rule 19) .................................. 9

    *E. Improper Venue (§1391) vs. Forum Non Conveniens (§1404)* ........................................ 9

      1. Improper Venue (28 U.S.C. § 1391, Rule 12(b)(3)): ................................................... 9

      2. Forum Non Conveniens and Transfer (28 U.S.C. § 1404(a)): .................................. 10

  **IV. ARGUMENT – FAILURE TO STATE A CLAIM AND JOIN PARTIES** ................... 10

    *A. Plaintiff's Non-Compete Claim must be Dismissed with Prejudice as Fatally Defective* 10

      1. Defendant's Two Emails Demonstrate Compliance, Not Breach ............................... 11

      2. The Terms of the Non-Compete Agreement Foreclose Breach .................................. 11

3. The Agreement Is Void and Unenforceable Under Delaware and New York Law ..... 11

4. No Legitimate Business Interest to Protect .................................................................. 12

5. No Colorable Breach Means No Forum Selection Clause .......................................... 12

6. Mutual Non-Disparagement—Checkmate's Breach ................................................. 12

7. Dismissal with Prejudice is Warranted due to the Evidence on Record ..................... 13

8. The Non-Competition Agreement is Void Under its Own Terms ............................... 13

*B. Plaintiff's Fraud Claims are Equally Deficient* ................................................. *13*

1. Complete Failure to Satisfy Rule 9(b)'s Particularity Requirements ......................... 13

2. Plaintiff's Own Allegations Prove the Absence of Fraud ......................................... 14

3. Plaintiff Misattributes Team Conduct to Individual Defendant .................................. 15

4. No Material Misrepresentation ................................................................................. 15

5. No Cognizable Damages .......................................................................................... 16

6. No Reasonable Reliance ........................................................................................... 16

7. The Negligent Misrepresentation Claim Fails for the Same Reasons ....................... 16

8. Plaintiff's Fraud Allegations are Evidence of its Own Fraudulent Conduct ............... 16

*C. Plaintiff Failed to Satisfy a Condition Precedent and Join Indispensable Parties* ......... *17*

1. Failure to Satisfy a Condition Precedent to Bring This Lawsuit (Rule 12(b)(6)) ......... 17

2. Plaintiff Is Equitably Estopped from Evading the Merger Agreement's Dispute

Resolution Procedure ................................................................................................. 18

3. Failure to Join Indispensable Parties (Rules 12(b)(7) and 19) ................................... 20

**V. ARGUMENT – FAILURE TO ESTABLISH JURISDICTION AND VENUE ............ 21**

*D. The First-to-File Rule Strongly Supports Dismissal, Transfer or Stay* ............................ *21*

*E. Forum Selection Clause Is Invalid or Unenforceable* ....................................... *21*

1. Forum Selection Clauses Do Not Create Jurisdiction .............................................. 21

2. The Merger Agreement's Forum Selection Clause is not Applicable Here ................. 22

3. A Rigorous Contract Analysis Shows Employment is Carved Out ............................. 23

4. Plaintiff Elects to Void the Clauses under California Labor Code § 925 .................... 24

*F. Venue in New York Is Improper (28 U.S.C. §1391)* ........................................... *25*

1. No Substantial Events Occurred in New York ......................................................... 25

2. Defendant Resides in California and has No Substantial New York Contacts ............ 26

3. Venue Analysis Under § 1391 Clearly Favors California ......................................... 26

*G. Forum Non Conveniens Factors Strongly Favor California (§1404)* ............................ 26

    1. Plaintiff's Choice of Forum Deserves Reduced Deference Given the Circumstances.. 26

    2. The Central District of California Is an Adequate Alternative Forum ......................... 27

    3. The Private Interest Factors Strongly Favor California ................................................ 27

    4. The Public Interest Factors Decisively Favor California............................................. 27

    5. The Balance of Factors "Tips Strongly" in Favor of Dismissal.................................. 28

*H. Plaintiff Failed to Sufficiently Effect Service of Process (Rule 12(b)(5))* ....................... 28

*I. This Court Lacks Personal Jurisdiction Over Defendant* ................................................. 29

**VI. CONCLUSION** ....................................................................................................... **29**

## **TABLE OF AUTHORITIES**

<u>CASES</u>

*Adam v. Jacobs,*

    950 F.2d 89, 92 (2d Cir. 1991) ------------------------------------------------------------- 6

*Adams v. Raintree Vacation Exch., LLC,*

    702 F.3d 436, 439 (7th Cir. 2012) ------------------------------------------------------- 22

*Albert Fadem Trust v. Duke Energy Corp.,*

    214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)-------------------------------------------- 10

*Alcoa S.S. Co. v. M/V Nordic Regent,*

    654 F.2d 147, 151 (2d Cir. 1980) (en banc)-------------------------------------------- 28

*Alltrade, Inc. v. Uniweld Products, Inc.,*

    946 F.2d 622, 625 (9th Cir. 1991) ------------------------------------------------------- 6

*America Movil, S.A.B. de C.V. v. 7-Eleven, Inc.,*

    642 F. App'x 17, 21 (2d Cir. 2016) ------------------------------------------------------ 27

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) -------------------------------------------------------------------7

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct.,*

    571 U.S. 49, 62 (2013) ------------------------------------------------------------- 6, 7, 10

*Ballard v. Savage,*

    65 F.3d 1495, 1498 (9th Cir. 1995) ------------------------------------------------------7

*Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.,*

821 F.3d 297, 305 (2d Cir. 2016)-------------------------------------------------------- 18

*Base Metal Trading Ltd. v. Russian Aluminum,*

253 F.3d 681, 684 (2d Cir. 2001)------------------------------------------------------- 28

**BDO Seidman v. Hirshberg**,

93 N.Y.2d 382, 388–89 (1999) ----------------------------------------------------------8

*Bell Atl. Corp. v. Twombly,*

550 U.S. 544-------------------------------------------------------------------------------7

*Bennett v. Medtronic, Inc.,*

285 F.3d 801, 804 (9th Cir. 2002) ------------------------------------------------------6

*Berman v. Informix Corp.,*

30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) --------------------------------------------- 26

*Brockmeyer v. May,*

*383 F.3d 798, 801 (9th Cir. 2004)*------------------------------------------------------7

*Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 474 (1985) --------------------------------------------------------------- 29

*Cadle Co. v. Whataburger of Alice, Inc.,*

174 F.3d 599, 603 (5th Cir. 1999) ------------------------------------------------------5

*Calavo Growers of Cal. v. Generali Belgium,*

632 F.2d 963, 968 (2d Cir. 1980)------------------------------------------------------ 27

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC,*

155 F.3d 603, 609 (2d Cir. 1998) ----------------------------------------------------- 27

*Castillo v. Taco Bell of Am., LLC,*

960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) -------------------------------------------6

*Citigroup Inc. v. City Holding Co.,*

97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) --------------------------------------------- 21

*Continental Grain Co. v. The FBL-585,*

364 U.S. 19, 26 (1960) ------------------------------------------------------------------ 27

*Cortec Indus., Inc. v. Sum Holding L.P.,*

949 F.2d 42, 47 (2d Cir. 1991)----------------------------------------------------------9

*Crigger v. Fahnestock & Co.,*

443 F.3d 230, 234 (2d Cir. 2006)-------------------------------------------------------9

*Daimler AG v. Bauman*,
   571 U.S. 117, 138–39 (2014) -------------------------------------------------------------- 29

*Daly v. Citigroup Inc.*,
   939 F.3d 415, 421 (2d Cir. 2019) -------------------------------------------------------------- 8

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408, 432 (2d Cir. 2005) -------------------------------------------------------------- 25

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
   276 F.3d 1150, 1156 (9th Cir. 2002) -------------------------------------------------------- 20

*DeRosa v. Nat'l Envelope Corp.*,
   595 F.3d 99, 103 (2d Cir. 2010) -------------------------------------------------------------- 23

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104, 111 (2d Cir. 2010) -------------------------------------------------------------- 9

*DiRienzo v. Philip Servs. Corp.*,
   294 F.3d 21, 29 (2d Cir. 2002) -------------------------------------------------------------- 27

***Edwards v. Arthur Andersen** LLP*,
   44 Cal. 4th 937, 945–46 (2008) -------------------------------------------------------------- 8

*EEOC v. Peabody W. Coal Co.*,
   610 F.3d 1070, 1078 (9th Cir. 2010)* -------------------------------------------------------- 9

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
   522 F.3d 271, 275 (2d Cir. 2008) -------------------------------------------------------------- 26

*Farnsworth v. Towboat Nantucket Sound, Inc.*,
   790 F.3d 90, 97 (1st Cir. 2015) -------------------------------------------------------------- 23

*Ferens v. John Deere Co.*,
   494 U.S. 516, 527 (1990) -------------------------------------------------------------- 26

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
   865 F.2d 513, 517 (2d Cir. 1989) (internal quotation marks omitted) -------------------------- 27

*Fink v. Golenbock*,
   238 A.D.2d 37, 40 (1st Dep't 1997) -------------------------------------------------------------- 23

***Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*** -------------------------------------------------- 26

*Gottlieb v. County of Orange*,
   84 F.3d 511, 518 (2d Cir. 1996) -------------------------------------------------------------- 8

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353, 357 (2d Cir. 2005)------------------------------------------------------------25, 26

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501, 508-09 (1947) ------------------------------------------------------------------- 28

*Harsco Corp. v. Segui*,
    91 F.3d 337, 348 (2d Cir. 1996) --------------------------------------------------------------- 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524, 529 (2019)---------------------------------------------------------------------- 18

*IDT Corp. v. Tyco Group*, S.A.R.L.,
    13 N.Y.3d 209, 214 (2009) --------------------------------------------------------------------- 17

*In re Lehman Bros. Holdings Inc.*,
    970 F.3d 91, 102–03 (2d Cir. 2020) ----------------------------------------------------------- 8

In re *World Trade Center Lower Manhattan Disaster Site Litig.*,
    846 F.3d 58, 75 (2d Cir. 2017)----------------------------------------------------------------- 19

*International Shoe Co. v. Washington*,
    326 U.S. 310, 316 (1945) -----------------------------------------------------------------------22, 29

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
    119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000)-------------------------------------------------- 21

*Israel v. Chabra*,
    537 F.3d 86, 95 (2d Cir. 2008) ----------------------------------------------------------------- 18

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
    11 F.3d 399, 405 (3d Cir. 1993) --------------------------------------------------------------- 20

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163, 170 (2d Cir. 2004) -------------------------------------------------------------- 18

*Johnson v. Cisney*, No. 22-cv-3091,
    2023 WL 3166684, at *2 (C.D. Cal. Apr. 28, 2023)------------------------------------------- 6

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495, 498–99 (9th Cir. 2000) --------------------------------------------------------- 10

*Kalyanaram v. American Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.* --------------------- 9

*Kim v. Ji Sung Yoo*,
    2019 WL 2353287, at *2 (2d Cir. June 3, 2019) ---------------------------------------------- 20

*Kosakow v. New Rochelle Radiology Assocs.*,
   274 F.3d 706, 725 (2d Cir. 2001) --------------------------------------------------------- 19

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419, 422 (2d Cir. 2011) ---------------------------------------------------------- 9

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
   10 F. Supp. 3d 504, 514 (S.D.N.Y. 2014) ------------------------------------------------ 9

*Legum v. Russo*,
   133 A.D.3d 638, 639 (2d Dep't 2015)----------------------------------------------------- 18

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273, 290 (2d Cir. 2006) ---------------------------------------------------------- 8

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1, 15 (1972) ------------------------------------------------------------------------ 6

*Magi XXI, Inc. v. Stato della Città del Vaticano*,
   714 F.3d 714, 721-22 (2d Cir. 2013)----------------------------------------------------- 22

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509, 514 n.5 (9th Cir. 1988) -------------------------------------------------- 6, 12

*Marquez v. Capital One Bank, U.S.*, 22-CV-1591-GPC-KSC,
   2023 WL 3919473, at *2 (S.D. Cal. Jun. 12, 2023)--------------------------------------- 6

*McBeth v. Porges*,
   171 F. Supp. 3d 216, 230 (S.D.N.Y. 2016)---------------------------------------------- 20

*MHR Capital Partners LP v. Presstek, Inc.*,
   12 N.Y.3d 640, 645 (2009) ----------------------------------------------------------------- 17

*Morris v. New York State Dep't of Taxation & Fin.*,
   82 N.Y.2d 135, 140-41 (1993) ------------------------------------------------------------ 19

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39, 53 (2d Cir. 2004)------------------------------------------------------------- 22

*Nassau Trust Co. v. Montrose Concrete Products Corp.*,
   56 N.Y.2d 175, 184 (1982) ----------------------------------------------------------------- 19

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992) ------------------------------------------------------------------------ 12

*Nedlloyd Lines B.V. v. Superior Court*,

3 Cal. 4th 459, 469 (1992) ------------------------------------------------------------- 6

*New Hampshire v. Maine*,

532 U.S. 742, 749 (2001) ------------------------------------------------------------ 23

*Norex Petroleum Ltd. v. Access Indus., Inc.*,

416 F.3d 146, 155 (2d Cir. 2005) --------------------------------------------------- 26

*Northrop Grumman Info. Tech., Inc. v. United States*,

535 F.3d 1339, 1345 (Fed. Cir. 2008) --------------------------------------------- 22

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,

86 N.Y.2d 685, 690 (1995) ---------------------------------------------------------- 17

***Papermill Holdings Ltd. v. Banks***,

2019 WL 1978613, at *2–3 (S.D.N.Y. May 3, 2019)* ---------------------------- 8

*Piedmont Label Co. v. Sun Garden Packing Co.*,

598 F.2d 491, 496 (9th Cir. 1979) -------------------------------------------------- 10

*Pinela v. Neiman Marcus Group, Inc.*,

238 Cal. App. 4th 227, 240 (2015) ------------------------------------------------- 25

*Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 254 (1981) ------------------------------------------------------------ 28

*Pipkins v. JP Morgan Chase Bank, N.A.*,

978 F.3d 838, 844 (5th Cir. 2020) --------------------------------------------------- 7

*Pollux Holding Ltd. v. Chase Manhattan Bank*,

329 F.3d 64, 74 (2d Cir. 2003) ------------------------------------------------------ 26

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,

388 U.S. 395, 403-04 (1967) -------------------------------------------------------- 18

*Provident Tradesmens Bank & Trust Co. v. Patterson*,

390 U.S. 102, 109–11 (1968) ------------------------------------------------------- 20

*River Dock & Pile, LLC v. Ins. Co. of N. Am.*,

219 A.D.3d 104, 115 (2d Dep't 2023) ---------------------------------------------- 19

*Rombach v. Chang*,

355 F.3d 164, 170 (2d Cir. 2004) ---------------------------------------------------- 8

*Shields v. Citytrust Bancorp, Inc.*,

25 F.3d 1124, 1127–28 (2d Cir. 1994) ---------------------------------------------- 8

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,

    549 U.S. 422, 429–30 (2007) -------------------------------------------------------------- 10

*Spotless Enters. Inc. v. The Accessory Corp.*,

    415 F. Supp. 2d 203, 205-06 (E.D.N.Y. 2006) ------------------------------------------------ 6

*Stewart Org., Inc. v. Ricoh Corp.*,

    487 U.S. 22, 29 (1988) -------------------------------------------------------------------------- 10

*Sunward Elecs., Inc. v. McDonald*,

    362 F.3d 17, 22 (2d Cir. 2004) ----------------------------------------------------------------- 22

*TradeComet.com LLC v. Google, Inc.*,

    693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010). ------------------------------------------------- 22

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,

    745 F.3d 131, 137 (4th Cir. 2014) ------------------------------------------------------------- 26

*United States v. Bestfoods*,

    524 U.S. 51, 68 (1998) -------------------------------------------------------------------------- 22

*Verdugo v. Alliantgroup, L.P.*,

    237 Cal. App. 4th 141, 147 (2015) ------------------------------------------------------------ 25

*Walkovszky v. Carlton*,

    18 N.Y.2d 414, 419 (1966) -------------------------------------------------------------------- 19

*WIWA v. Royal Dutch Petroleum Co.*,

    226 F.3d 88, 102 (2d Cir. 2000) --------------------------------------------------------------- 26

*Woodke v. Dahm*,

    70 F.3d 983, 985 (8th Cir. 1995) -------------------------------------------------------------- 26

## MEMORANDUM OF LAW

### I. INTRODUCTION

At the outset, Plaintiff Checkmate.com, Inc. ("Checkmate")'s Second Cause of Action for Breach of the Non-Competition Agreement should be Dismissed with Prejudice as foreclosed by Plaintiff's own submitted evidence.[1] This Court need not resolve Venue or Governing Law—the plain facts prove Defendant's good faith compliance, under the laws of *any* of these United States, whether those of Delaware, California, New York or even Texas.

Moreover, Plaintiff's fraud claims not only fail to meet rule 9(b)'s heightened standards but serve as compelling evidence of Plaintiff's own fraud and retaliation. See CA Cmpl ¶¶ 111-127. The lawsuit before this Court is the capstone of a strategy to extract talent, technology and goodwill without honoring the "million dollar" promises that induced Defendant and his cofounders into merging their months-old, California-based Voice AI startup ("VoiceBite") with Checkmate—a more mature restaurant technology provider *alleged* to reside in New York[2].

In reality, Checkmate structured the parties' agreements—if its present interpretations are credited—to create the illusion of a "multimillion dollar" transaction, while reserving every possible advantage to itself and stripping Defendant and his team of every benefit and protection, including the "millions of dollars" it promised but *never paid*.[3] The phantom cash dangled to lure the VoiceBite founders is now being used to mislead the courts and achieve its preferred venue.

At the threshold, Plaintiff's complaint fails to allege compliance with a fundamental, bargained-for condition precedent: the Merger Agreement's mandatory group-claims procedure. This alone requires dismissal under Rule 12(b)(6)[4]. The claims further fail under Rules 12(b)(7)

---

[1] I.e., submitted in the related California action, which underlie the very allegations now asserted in this case.

[2] Checkmate is a **distributed** corporate entity with no real center of gravity. Its employees are scattered around the world, and the ability to work where one prefers is explicitly advertised in its recruiting process. Checkmate's only legitimate claim to New York residence is that its CEO Vishal Agarwal—and almost no other employee—lives there. By contrast, Defendant is a physical human being who lives in California and has for over 25 years.

[3] While Checkmate has leveraged this millionaire gloss in multiple courts in an attempt to justify transfer to New York (or, for some reason, West Texas), it has not paid and indeed formally asserted it *never intends to pay*, the $1.5 million in bonuses owed to the five founders (of which Defendant's share was $500,000).

[4] Under binding Second Circuit law, "where a condition precedent purportedly gives rise to a contractual obligation, it must be alleged in order to state a claim for breach." See **Molina v. Palisades Federal Credit Union**, 2023 WL 6723772, at *4 (S.D.N.Y. Oct. 12, 2023) (Furman, J.) (quoting **O'Grady v. BlueCrest Cap. Mgmt. LLP**, 646 F. App'x 2, 5 (2d Cir. 2016)). Plaintiff's silence on this dispositive precondition is fatal: "If the complaint fails to allege satisfaction of a contractual condition precedent, it is subject to dismissal." *Id.*

and 19 for failure to join indispensable parties, and under the first-filed doctrine, as Plaintiff cannot meet the burden to show relief could not be obtained in the earlier-filed California Action.

Plaintiff has yet to effect proper service or demonstrate sufficient contacts with New York to establish personal jurisdiction, and venue is improper here. Defendant was a California resident and employee; Plaintiff is a distributed company; and all relevant events, witnesses, and evidence are centered in California. The convenience factors likewise favor California.

California's Labor Code § 925 and the parties' agreements also independently invalidate Plaintiff's anticipated forum selection arguments. Specifically, § 7.4 of the Merger Agreement preserves claims to employment compensation, such as bonuses and severance.

Moreover, on May 12, 2025, after Defendant's Motion to Quash, Plaintiff amended its Complaint to correct his address and remove allegations of Texas residency—conceding the self-serving tactics it previously employed to manufacture jurisdiction.[5]

The Court should not humor or excuse Plaintiff's *unwarranted chutzpah*[6]. For the reasons above and as detailed below, Defendant respectfully requests that *this* Court dismiss this action in its entirety—or, at a minimum, dismiss with prejudice those claims foreclosed by the record and the parties' bargained-for conditions precedent, or alternatively transfer or stay in favor of the earlier-filed action. This result is required by the facts, the law, and the interests of justice.

## II. FACTUAL BACKGROUND

### A. The Parties and their Bargain

1. Defendant Arjun Vasan is a resident of Cerritos, California. Defendant lived and worked in California at all relevant times pertaining to this dispute. See Vasan Decl. ¶2-3.

2. On or around August 1, 2023, Defendant co-founded VoiceBite Corporation in Cupertino, California, where he lived at the time.[7] *Id.*

3. In January 2024, negotiations began for a merger with Plaintiff Checkmate.[8] *Id at 6.*

---

[5] Plaintiff's procedural conduct reflects a pattern of bad faith. Defendant notes that such antics have prompted the Hon. Judge Frimpong to issue a *sua sponte* Order to Show Cause and threaten sanctions against Plaintiff.
[6] See ***United States v. Syufy Enterprises***, 903 F.2d 659, 666 n.1 (9th Cir. 1990) (Kozinski, J.) ("**Chutzpah** … that quality enshrined in a man who, having killed his mother .. throws himself on the mercy of the court because he is an orphan.").
[7] Of the founding team, four were lifelong California residents and the fifth was from Toronto, Canada.
[8] VoiceBite had no customers, revenue or outside investors. The team was jointly negotiating for employment.

4.  The three cofounders—Defendant, CEO Robert Nessler and COO Christopher Lam— *jointly* negotiated the agreements at issue along with VoiceBite counsel.  See §III.A.

5.  Negotiations occurred solely from California, with the lead negotiator for Plaintiff— Michael Bell—being a resident of Manhattan Beach, California.[9] See *Id at 9*, RJN E.

6.  The merger closed on April 30, and employment for the founders started May 1, 2024.[10]

B. The Origins of the Current Dispute

7.  On November 14, 2024, Plaintiff terminated Defendant while on medical leave.[11]

8.  Defendant subsequently requested compensation earned per his agreements. *Id at 27*.

9.  On December 7, 2024, Plaintiff falsely claimed Defendant had resigned, and alleged misconduct it claimed "disentitled" him from earned and unpaid compensation[12] *Id*.

C. Procedural History

10.  On January 28, 2025, Defendant filed a Complaint[13] against Plaintiff in the Central District of California ("C.D. Cal."), alleging various claims.[14] See *Id at 33*.

11.  On January 29, 2025, Defendant sent a formal ethics complaint[15] to the General Counsel of K&L Gates LLP, alleging misconduct in its representation of Plaintiff. *Id at 34*.

12.  Hours after, Plaintiff sent a "Notice of Claim" to the VoiceBite shareholders (including Defendant), alleging fraud and asserting forfeiture of $1.5 million in retention bonuses earned through employment and of all equity pursuant to the Merger[16]. *Id at 35*.

13.  Deputy General Counsel Charles Tea III responded on January 31st, requesting materials to support Defendant's allegations against K&L Gates and its attorney Ryan Q. Keech.

---

[9] Bell visited the founders in Cupertino on January 31st, and the founders visited Bell in Manhattan Beach on March 16, 2024. The founders never visited New York. Defendant has no property in New York, has not been there in several years, has not conducted business or purposefully directed activities there that would give rise to the alleged claims.
[10] See CA Cmpl. ¶¶ 15-19. Defendant then relocated to Cerritos, where he spent most of his employment with Plaintiff.
[11] Defendant was recovering in a Costa Mesa, CA medical facility. See Vasan Decl.; RJN Ex. C. CA Cmpl ¶¶ 39-47.
[12] On December 20, 2024, Defendant rejected the allegations and threatened legal action if the payments were not made. See Vasan Decl. at ¶ 28, Exhibit Y "First Notice of Claim"
[13] See Case No. 2:25-cv-00765-MEMF-JPR, the "California Action", "CA Cmpl", RJN Ex. B.
[14] Defendant's claims in the Cal. Action include wrongful termination, retaliation, fraudulent inducement, breach of contract, violation of the Family and Medical Leave Act, and related claims.
[15] See Exhibit G.1-3 – Ethics Complaint to K&L Gates General Counsel and Formal Response.
[16] See Exhibit F – This Notice was sent to the shareholder's designated representative shareholders—who engaged a counsel and anticipated negotiation based on Plaintiff's behavior and overtures.

14. Under the reasonable belief that negotiations were forthcoming, Defendant delayed serving the California Action. Meanwhile Plaintiff filed this retaliatory lawsuit in New York State Court on February 14, 2025, against Defendant *individually*.[17] *Id at 35-38*.

15. On February 17th, Tea responded that he would need more time given "pending matters". On February 21st, Tea formally replied and dismissed the allegations.[18] *Id at 38*.

16. Defendant properly served the California Action on Plaintiff's Delaware registered agent on March 5, 2025, and filed proof of service on March 6, 2025. *Id at 39*.

17. Plaintiff attempted to serve Defendant on March 5, 2025, via "nail and mail" service at Defendant's California residence. However, its summons erroneously identified an unrelated 3rd party residing in Sugar Land, Texas. See *Id at 37*, ECF No. 21.

18. On the basis of this defect, and Plaintiff's use thereof to advance false Jurisdictional narratives, Defendant filed a Motion to Quash Service on April 21, 2025. *Id*.

19. On May 12, 2025, Plaintiff amended its Summons and Complaint with the correct Cerritos, California address and removed all references to Texas residency. RJN Ex. E.

D. Events in the California Action[19]

20. On March 25, 2025—the day prior[20] to Plaintiff's response due date in the California Action—Plaintiff alerted Defendant of its forthcoming Motion to Dismiss/Transfer.

21. On April 18, 2025, in its Reply to Defendant's Opposition, Plaintiff proceeded to blame Defendant's *pro se* status and "court deadlines" for the noncompliance. CA Dkt. 32.

22. On April 23, 2025, the Hon. Judge Maame Ewusi-Mensah Frimpong issued an Order to Show Cause *sua sponte* for its failure and threatened sanctions. See RJN, CA Dkt. 45.

---

[17] From teammates, Defendant learned that Plaintiff was planning to sue in New York as a strategic response to his California claims and ethics complaint. Vasan Decl. at ¶ 33.

[18] Tea <u>failed to disclose</u> the newly filed lawsuit. See Ex. G ("Charles Tea Thread" & "Draft Bar Complaint")

[19] The evidentiary record in the California Action is substantially developed, with a fully briefed pending Motion to Dismiss or Transfer filed by Plaintiff. See RJN, Exhibit A, C.D. Cal. Docket.

[20] In the Central District of California, Local Rule 7-3 requires parties to meaningfully meet and confer about planned motions at least seven days in advance of filing. Despite its failure to attempt contact with Defendant until the day before its deadline, Plaintiff proceeded to certify compliance in its brief—which Defendant contested.

## III. LEGAL STANDARDS

A. The Parties' Agreements

**Merger Agreement**: Plaintiff has relied on a mandatory Forum Selection Clause (§9.7) in its argument to transfer the California Action. . However, equally mandatory from the same contract are (1) §9.11, which requires service to a California address specified by Defendant; (2) §7.4, which expressly carves out employment claims from the agreement's purview; (3) §9.1, which designates a shareholder representative to jointly pursue and defend claims on their behalf; (4) §8.8 defines indemnification as the exclusive remedy for such joint claims; (5) §8.5, capping indemnification claims ;and (6) §9.8, waiving jury trials. See Ex. M – Merger Excerpts.

**Offer Letter and Bonus Agreement**: Defendant's Offer Letter specifies severance of in sum $120,000, owed if terminated, cause or no cause, and defines his employment as governed under the laws of California. His Bonus Agreement defines a $500,000 retention bonus, vested at 90 days of employment and payable upon the close of a $7.5 million financing.[21]

**Non-Competition Agreement**: This ancillary agreement, signed as a mandatory condition of employment, purports to prohibit competition, solicitation, and disparagement against "the Company" for two years, but suffers from inconsistent drafting and circular ambiguity regarding the identity of the "Company" being protected.[22] See Ex. I – Non-Compete.

**IP Letter and Assignment Agreement**: These were agreements introduced at the 11th hour of negotiations, *without consideration*, after the deal terms had been agreed, prompting VoiceBite's counsel to resign in protest of Plaintiff's negotiation practices.[23]

B. First-to-File Rule

The first-to-file rule is a well-established doctrine of federal comity[24] that permits a district court to dismiss, stay, or transfer a later-filed action when a complaint involving

---

[21] Checkmate publicly announced a $10 million series B round on October 23, 2024, but it has never paid the bonuses.

[22] The non-disparagement provision is **mutual**, also prohibiting executives of the company from disparaging VoiceBite's stockholders—which include Defendant. This agreement also contains its own Forum Selection Clause favoring New York; however, its applicability is limited to its own enforcement.

[23] Defendant alleges with particularity in the California Action that Plaintiff's actions in imposing these agreements constituted fraud and coercion, thereby rendering them voidable. Plaintiff has not disclosed these agreements.

[24] In **Cadle Co. v. Whataburger of Alice, Inc**, 174 F.3d 599, 603 (5th Cir. 1999), noting that this rule "is grounded in principles of comity and sound judicial administration" and prevents "the waste of duplication, the burden on litigants of being required to fight legal battles on two fronts, and the chance that the two courts would reach different results."

substantially similar parties and issues has already been filed in another district. The rule promotes[25] efficient judicial administration, conserves judicial resources, and prevents the risk of conflicting judgments. See *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991);

Courts typically consider three factors to determine whether the first-to-file rule applies: **(a)** which lawsuit was filed first; **(b)** whether the parties are substantially identical, even if their roles are reversed[26]; and **(c)** similarity of the operative facts and whether the claims overlap[27].

C. Forum Selection Clause Enforcement

Forum selection clauses are presumed enforceable under federal law[28] but limited to claims that "arise from or relate to" the parent contract and subject to certain exceptions.

*1. Legal Standard: "Arises From or Relates To"*

Federal courts interpret forum clauses to apply only to disputes that have a "substantial connection" to the contract in which the clause appears. The party seeking to enforce the clause bears the burden of establishing that the claim falls in scope and that no exceptions apply.[29] Courts look to the substance, not just how it is pleaded[30]. Thus, a forum clause will not be enforced if claims merely "touch upon" the contractual relationship unless the underlying facts or rights at issue are grounded in, or substantially related to, the contract containing the clause.

*2. Exceptions to Enforcement*

A forum selection clause will not be enforced if it (1) is obtained through fraud, duress or overreach; (2) would contravene a strong public policy of the forum state; or (3) would result in a grave inconvenience or denial of a party's day in court.[31]

---

[25] The first-to-file rule is not absolute; its application rests in the discretion of the court, which may consider factors such as bad faith or forum shopping. See *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); and *Marquez v. Capital One Bank, U.S.*, 22-CV-1591-GPC-KSC, 2023 WL 3919473, at *2 (S.D. Cal. Jun. 12, 2023).

[26] See *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205-06 (E.D.N.Y. 2006);

[27] See *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013).

[28] See *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,15 (1972); and *Atlantic Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49,2 (2013).

[29] As explained by the Ninth Circuit: "A forum selection clause applies only to disputes relating to the interpretation and performance of the contract itself." See *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Similarly, "the scope of a forum selection clause should be interpreted according to its plain language and limited to claims with a significant relationship to the contract." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 469 (1992).

[30] and *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002) (whether the claim "depends on" the contract).

[31] See *Bremen*, 407 U.S. at 15; *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1144 (9th Cir. 2004).

### 3. California Labor Code § 925

Labor Code § 925 embodies California's strong public policy protecting its employees' right to a California forum and California law: it provides that any contract requiring an employee to litigate outside California, or under non-California law, is voidable by the employee unless the employee was *individually* represented by counsel in negotiating the agreement.[32].

D. Rule 12(b) Grounds for Dismissal

Federal Rule of Civil Procedure 12(b) authorizes the dismissal of a complaint for certain threshold defects in the proceedings. The following grounds are relevant to this motion:

### 1. Lack of Personal Jurisdiction (Rule 12(b)(2))

A court may dismiss an action if it lacks personal jurisdiction over the defendant. The plaintiff bears the burden of demonstrating that jurisdiction is proper[33]. Where the defendant does not have minimum contacts with the forum state or where asserting jurisdiction would offend traditional notions of fair play and substantial justice, dismissal is warranted.

### 2. Improper Venue (Rule 12(b)(3))

A case may be dismissed if the selected venue is improper under the federal venue statutes. The court must determine whether the complaint satisfies any of the bases for venue under 28 U.S.C. § 1391. If venue is improper, the court may dismiss or, in the interests of justice, transfer the case to a proper venue. *See Atlantic Marine.*

### 3. Insufficient Service of Process (Rule 12(b)(5))

Where service of the summons and complaint has not been accomplished in accordance with the Federal Rules or relevant state law, dismissal under Rule 12(b)(5) is appropriate. The burden is on the plaintiff to prove effective service[34].

### 4. Failure to State a Claim Upon Which Relief Can Be Granted (Rule 12(b)(6))

To survive dismissal under 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere conclusory

---

[32] See Lab. Code § 925(a), (e) and ***Pipkins v. JP Morgan Chase Bank, N.A.***, 978 F.3d 838, 844 (5th Cir. 2020).
[33] See ***Ballard v. Savage***, 65 F.3d 1495, 1498 (9th Cir. 1995).
[34] See ***Mullane v. Cent. Hanover Bank & Tr. Co.***, *339 U.S. 306, 314 (1950);*

statements, legal conclusions, or "threadbare recitals" of elements are insufficient. *Iqbal*, 556 U.S. at 678. Additional standards exist for specific claims:

### (i) Claims Based on Written Agreements

In breach of contract actions, the plaintiff must plead the existence of a valid contract, the specific provisions at issue, plaintiff's own performance, defendant's breach, and resulting damages.[35] If claims are based on a written agreement, the plaintiff must either attach the contract or plead its essential terms with particularity.

### (ii) Condition Precedent (Rule 9(c))

If satisfaction of a contractual condition precedent is required, the plaintiff must allege—at least generally—that all such conditions have been met.[36] When a defendant specifically denies the occurrence of a condition precedent, the burden shifts to plaintiff to show compliance.

### (iii) Non-Compete Claims

To state a claim for breach of a non-compete agreement, a plaintiff must plead: (1) the existence of a valid and enforceable agreement; (2) the agreement's specific scope, duration, and geographic reach; (3) facts showing the defendant's allegedly prohibited conduct; and (4) that the agreement is not void or unenforceable as against public policy.[37]

### (iv) Claims Sounding in Fraud – Rule 9(b) Heightened Pleading Standards

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaint must: "(1) *specify the statements* that the plaintiff contends were fraudulent, (2) identify *the speaker*, (3) state *where* and *when* the statements were made, and (4) explain *why* the statements were fraudulent."[38] Conclusory allegations or group pleading are insufficient. In the software/IP context, courts require non-conclusory facts linking technical artifacts to alleged acts of fraud.

---

[35] See **Harsco Corp. v. Segui**, 91 F.3d 337, 348 (2d Cir. 1996); **Gottlieb v. County of Orange**, 84 F.3d 511, 518 (2d Cir. 1996). **Daly v. Citigroup Inc.**, 939 F.3d 415, 421 (2d Cir. 2019).

[36] **Fed. R. Civ. P. 9(c); In re Lehman Bros. Holdings Inc.**, 970 F.3d 91, 102–03 (2d Cir. 2020).

[37] See **Papermill Holdings Ltd. v. Banks**, 2019 WL 1978613, at *2–3 (S.D.N.Y. May 3, 2019);* and **Edwards v. Arthur Andersen** *LLP*, 44 Cal. 4th 937, 945–46 (2008); and **BDO Seidman v. Hirshberg**, 93 N.Y.2d 382, 388–89 (1999).

[38] **Rombach v. Chang**, 355 F.3d 164, 170 (2d Cir. 2004); **Shields v. Citytrust Bancorp, Inc**, 25 F.3d 1124, 1127–28 (2d Cir. 1994). **Lerner v. Fleet Bank, N.A.**, 459 F.3d 273, 290 (2d Cir. 2006).

### (v) Failure to State a Fraud Claim (12(b)(6) and 9(b))

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with intent to defraud, (4) reasonable reliance by the plaintiff, and (5) resulting damages."[39]

### (vi) Allegations Contradicted by Documentary Evidence

While the court must accept well-pled allegations as true, the Second Circuit has held that this rule does not apply where allegations are directly contradicted by permissible evidence.[40] The court "need not accept as true an allegation that is contradicted by documents on which the complaint relies."[41] On a Rule 12(b)(6) motion, the Court may consider the complaint, attached exhibits, documents incorporated by evidence, or on which the complaint relies. In contract disputes, courts consider contemporaneous documents essential to formation, scope and effect.[42]

*5. Failure to Join Indispensable Parties (Rule 12(b)(7), Rule 19)*

Rule 19 requires the joinder of parties necessary for the just adjudication of a dispute. Failure to join such parties, when feasible, may result in dismissal under Rule 12(b)(7). The court must consider whether complete relief can be accorded among existing parties and whether absent parties have interests that would be impaired or create a risk of inconsistent obligations[43].

E. Improper Venue (§1391) vs. Forum Non Conveniens (§1404)

*1. Improper Venue (28 U.S.C. § 1391, Rule 12(b)(3)):*

Under 28 U.S.C. § 1391(b), venue is proper in: (a) a judicial district where any defendant resides, if all defendants reside in the same state; (b) district in which a substantial part of the events giving rise to the claim occurred; or (c) if there is no district in which the action may otherwise be brought, any district in which any defendant is subject to the court's personal

---

[39] ***Crigger v. Fahnestock & Co.***, 443 F.3d 230, 234 (2d Cir. 2006); ***LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC***, 10 F. Supp. 3d 504, 514 (S.D.N.Y. 2014) (Furman, J.). Each element must be alleged with particularity as required by Rule 9(b); generalized or conclusory allegations will not suffice. *Id.*

[40] See ***DiFolco v. MSNBC Cable LLC***, 622 F.3d 104, 111 (2d Cir. 2010). Defendant limits his submissions to such materials and will address any dispute as to admissibility if raised.

[41] ***ATSI Communications, Inc. v. Shaar Fund, Ltd.***, 493 F.3d 87, 98 (2d Cir. 2007); ***Barnum v. Millbrook Care Ltd. P'ship***, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Kalyanaram v. American Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (Furman, J.) and ***Matusovsky v. Merrill Lynch***, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

[42] See *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)

[43] See ***EEOC v. Peabody W. Coal Co.***, 610 F.3d 1070, 1078 (9th Cir. 2010)*.

jurisdiction. If none apply, venue is improper, and dismissal or transfer is appropriate under Rule 12(b)(3) and 28 U.S.C. § 1406(a). The burden is on the plaintiff to establish proper venue[44].

The court determines venue propriety solely by reference to the facts alleged in the complaint and the statutory criteria. If venue is improper, dismissal or transfer is mandatory.[45]

*2. Forum Non Conveniens and Transfer (28 U.S.C. § 1404(a)):*

Even if Venue is proper, a federal court may transfer the case under 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of justice." [46] considering: (1) Plaintiff's choice of forum (especially if plaintiff resides there); (2) convenience of the parties and witnesses; (3) access to evidence and sources of proof; (4) local interest in the controversy and familiarity with governing law; and (5) judicial economy and the interests of justice.

Courts in both the Second and Ninth Circuits apply a "case-by-case" analysis, weighing public and private interest factors to determine whether transfer serves the interests of justice[47].

# IV. ARGUMENT – FAILURE TO STATE A CLAIM AND JOIN PARTIES

## A. Plaintiff's Non-Compete Claim must be Dismissed with Prejudice as Fatally Defective

Defendant need not rely on California's public policy disfavoring non-competes.[48] The Complaint reveals a fatal flaw in Plaintiff's claim under any applicable law: looking for work, especially under *active threat of termination[49]*, is not competing. See FAC ¶23.

> .. in direct contravention of his non-compete agreement, Vasan began **looking to work at a competing company**. On or around November 7 and 8, 2024, Vasan **contacted a competitor** of Checkmate and **mentioned the possibility of leaving** ...

Plaintiff fails here in New York to attach or quote the agreement, identify any solicitation of a *Checkmate* employee; or annex the referenced emails to a competitor. The record from the California action makes clear *why*: the content of the emails actually demonstrate Defendant's explicit disclosure of his obligations, express intent to comply, and total absence of solicitation, competition, or employee contact. Further, the agreement reveals itself to be deeply flawed.

---

[44] See **Piedmont Label Co. v. Sun Garden Packing Co.**, 598 F.2d 491, 496 (9th Cir. 1979).

[45] See *Atlantic Marine*, 571 U.S. 49, 55–56 (2013).

[46] See **Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.**, 549 U.S. 422, 429–30 (2007).

[47] See **Stewart Org., Inc. v. Ricoh Corp.**, 487 U.S. 22, 29 (1988).

[48] Defendant's employment was explicitly governed under California Law

[49] See Cal. Action ECF No. 10 ¶<> ("CA Cmpl") and ECF No. 18 ¶<> ("Motion to Dismiss/Transfer")

*1. Defendant's Two Emails Demonstrate Compliance, Not Breach*

In the first, Defendant expressly conditions his availability on specific terms of the agreement, showing intent to comply: "I have a short window to decide to leave and *nullify my non-compete*… and I *can* bring over 2 additional 10x engineers ...". (Ex. I, "Lunchbox Emails")

In the second, Defendant shows *caution* in selecting demo recordings not from Checkmate or VoiceBite, but from 2021-2022, prior to any active obligations to any operating entity: "Ok, I figured it's safer to send some older recordings so there's no potential risk … these are from Cyborg (my earlier company) and from 2021-2022.". *Id*.

*2. The Terms of the Non-Compete Agreement Foreclose Breach*

The agreement's operative restriction is defined in its ¶¶ 2 and 3: *during the "Restricted Period" of two years, the Stockholder (i.e. Defendant), shall not*:

> **Non-Competition** (a) engage or participate in, or acquire any financial or beneficial interest in, any business that competes with the Business in the Restrictive Territory; **¶ 2;**
>
> **Non-Solicitation** (a) solicit or attempt to solicit any of employees of Acquirer or the Company or induce any of employees of Acquirer or the Company to resign from their employment by Acquirer or the Company, as applicable; **¶ 3.**
>
> (**For Both**) (b) induce or assist any other Person to engage in any of the activities described in subparagraph (a) **¶¶ 2, 3**

Critically, Defendant took no further actions beyond these emails (Vasan Decl. ¶28). He did not accept a job offer, engage or participate in a competing business, attempt to solicit any Checkmate employees or customers, share confidential information or disparage the company. Plaintiff has not alleged any facts beyond these emails, so there is simply no basis for any claim of breach nor any damages for Plaintiff to calculate from the defectively alleged breach.

*3. The Agreement Is Void and Unenforceable Under Delaware and New York Law*

The agreement defines Checkmate as "Acquirer" and VoiceBite as "Company" at the outset, but alternates between using "Company" to refer to VoiceBite and at times seemingly to Checkmate itself—often within the same section or even sentence. This shifting and circular usage renders it impossible to determine which entity's business or interests are being protected, defeating any claim to a clear and enforceable restriction. This ambiguity is fatal.

Under both Delaware and New York law, restrictive covenants are strictly construed, and any ambiguity is resolved against enforcement.[50] The agreement conditions enforceability on employment by "Company." Defendant was only employed by Checkmate, not "Company." Where, as here, a condition precedent fails, the agreement is unenforceable.[51] Moreover, Plaintiff provided no separate consideration in exchange, rendering the agreement void regardless.[52]

### 4. No Legitimate Business Interest to Protect

The agreement defines "Business" as "the Company's current business of providing artificial intelligence powered voice systems." Plaintiff has not alleged any transfer of significant business operations, customers, or goodwill in the voice AI market at the time of agreement. With no legitimate interest to protect, the agreement fails under any applicable governing law.[53]

### 5. No Colorable Breach Means No Forum Selection Clause

Courts do not enforce forum selection clauses in a vacuum. Such clauses are enforceable only with respect to disputes that actually arise under the contract containing the clause[54].

### 6. Mutual Non-Disparagement—Checkmate's Breach

From the outset of employment, Checkmate executives singled out Defendant for advocating for his team's legal and contractual rights (see Exhibit B, "BYOD Retaliation"). This conduct escalated when Defendant demanded timely payment of back pay and earned bonuses[55].

By any reasonable interpretation, these actions constitute a direct breach of the *mutual* non-disparagement provision. Thus, not only is Plaintiff unable to articulate a colorable breach by Defendant, but it is also itself in violation of the very agreement it seeks to invoke.

---

[50] See *FP UC Holdings, LLC v. Lanard*, 2024 WL 1305894, at *7 (Del. Ch. 2024); *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 371 (2015).

[51] See *Miller v. HCP & Co., LLC*, 2018 WL 656378 (Del. Ch. 2018) (Courts will not enforce restrictive covenants where conditions precedent to enforceability are not met)

[52] See *Schroeder v. Silverman*, 179 A.D.2d 624, 625 (N.Y. App. Div. 1992). ("A covenant not to compete lacking adequate consideration is unenforceable.")

[53] VoiceBite at 3-4 months old, had no customers or revenue. Checkmate had no existing Voice AI business.

[54] See ***Manetti-Farrow, Inc. v. Gucci America, Inc.***, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("A forum selection clause applies only to disputes relating to the interpretation and performance of the contract itself."); ***Nedlloyd Lines B.V. v. Superior Court,*** 3 Cal. 4th 459 (1992). Where, as here, the party seeking enforcement cannot articulate a plausible, good faith claim of breach, invocation of the clause is improper.

[55] Checkmate's pattern of conduct included regular threats of termination and public shaming in front of his teammates, including referring to Defendant as "a problem." These actions persisted through his termination and beyond. After Defendant's termination meeting, Checkmate executives Michael Bell and Amy Brown can be heard discussing their ongoing efforts to isolate and disparage Defendant in order to justify the termination to the team.

*7. Dismissal with Prejudice is Warranted due to the Evidence on Record*

Plaintiff's continued prosecution of this claim, in light of dispositive evidence to the contrary, is improper and should not be tolerated by this Court. Where, as here, amendment would be futile and no colorable claim can be pleaded, dismissal with prejudice is required to preserve judicial resources and protect Defendant from further abusive litigation.

*8. The Non-Competition Agreement is Void Under its Own Terms*

Under its *bargained for* terms, the Agreement terminates under its own accord if the Stockholder (Defendant) is terminated without Cause or if he resigned for Good Reason:

> The Restrictive Period shall terminate if Stockholder terminates his employment for Good Reason or the Company terminates Stockholder's employment other than for Cause. ¶ 1

Moreover, "Cause" is to be determined by a specified process: good faith negotiation followed by mediation/arbitration if required:

> Any controversy, dispute or claim regarding whether a termination is for Cause shall first be settled through good faith negotiation. If the dispute cannot be settled… the parties agree to attempt in good faith to settle… by mediation administered by JAMS… ¶ 12

At no time did Plaintiff invoke or initiate this process. Instead, having cited the emails as "cause" at time of termination, it subsequently repudiated its own rationale—repeatedly asserting in demand letters and official court filings that Defendant had *<u>resigned</u>*[56]. See RJN C.

Under these circumstances, Plaintiff is ***estopped*** from asserting any theory of "cause" and the contract's post-termination restrictions—including the non-compete, non-disparagement, non-solicit and forum selection provisions are void and unenforceable as a matter of law.

B. Plaintiff's Fraud Claims are Equally Deficient

Plaintiff's fraud claims (Fourth and Fifth Causes of Action) fail catastrophically under both Rule 9(b)'s heightened pleading standards and Rule 12(b)(6)'s basic requirements. These claims represent a fundamental misunderstanding of what constitutes fraud under the law.

*1. Complete Failure to Satisfy Rule 9(b)'s Particularity Requirements*

Plaintiff's complaint falls short of the heightened threshold on multiple fronts:

---

[56] This tactic was no oversight: by claiming resignation, Plaintiff sought to evade its contractual obligation to pay severance totaling over $120,000—only to belatedly claim "for cause" when its ruse was up.

**No Temporal Specificity**: The Complaint uses vague, conclusory phrases: "throughout the Transaction" (¶57) and "by way of numerous representations made to Checkmate throughout the Transaction" (*Id*.) without identifying when any specific representation was allegedly made. Rule 9(b) requires "the time" of each statement, not sweeping references to multi-month periods.

**No Geographic Specificity**: The Complaint fails entirely to identify where any alleged oral misrepresentations were made. For written representations, Plaintiff provides no document dates, meeting locations, or other indicia of place required by Rule 9(b)[57].

**No Particularized Scienter**: The Complaint makes only generic, conclusory allegations that "Vasan knew they were false when he was making them" (¶19) without any factual allegations about what Defendant specifically knew, when he knew it, or how Plaintiff can prove his mental state. Rule 9(b) requires more than threadbare assertions of intent.

These failures require dismissal under Rule 9(b) and are incurable as a matter of law.

*2. Plaintiff's Own Allegations Prove the Absence of Fraud*

Moreover, Plaintiff has pleaded facts that affirmatively negate the essential elements of fraud. The "evidence" Plaintiff cites proves transparency and good faith, not deception.

If Defendant were actually attempting to conceal his father's contributions, he obviously would have removed his father's name from the code—a task requiring a simple search-and-replace. The fact that "Vasan Varadarajan" remained clearly visible in the code proves the exact opposite: there was no intent to hide anything because there was nothing meaningful to hide.

Plaintiff concedes that Defendant "discussed with his co-founders the possibility of disclosing to Checkmate the fraudulent representations he made concerning VoiceBite's AI technology". Cmpl. ¶35. This allegation is dispositive. Fraudsters do not discuss disclosure with others—they hide their conduct. The fact that Defendant <u>advocated transparency</u> but ultimately accepted the *team's consensus* on what constituted appropriate disclosure, shows good faith and collaboration, not intent to deceive—and highlights the collective nature of the negotiations.

---

[57] Plaintiff's failure to identify where any alleged misrepresentations were made is not accidental—it is strategic. Every location where negotiations occurred, every meeting where representations were allegedly made, and every discussion about the technology took place in California. Plaintiff cannot comply with Rule 9(b)'s basic requirement to plead 'where' without undermining their jurisdiction arguments and proving this case belongs in California, not New York.

### 3. Plaintiff Misattributes Team Conduct to Individual Defendant

Plaintiff's fraud theory treats Defendant as a sole rogue actor, when in fact VoiceBite had three co-founders with shared responsibilities, who negotiated and acted jointly.

**Wrong Person for Disclosure Duties**: Plaintiff provides no allegations about who was responsible for data room management, disclosure updates, or documentation during closing. Defendant cannot have fraudulent intent for duties that were not his responsibility. If there were any material disclosure deficiencies—which Defendant disputes—they would represent collective team oversights in a complex transaction, not individual fraud.

**Misattribution of Statements**: The most egregious example appears at Cmpl. ¶ 33, where Plaintiff attributes to Defendant statements that were made by joint shareholder counsel in response to Plaintiff's Notice of Claim against all VoiceBite founders. Counsel's nuanced legal argument that functional code did not constitute intellectual property under recent Supreme Court precedent was distorted into an alleged "admission" by Defendant. This demonstrates fundamental confusion—or deliberate deception—about who said what and when.

### 4. No Material Misrepresentation

Plaintiff's fraud claim fails under Rule 12(b)(6) and Rule 9(b) because it does not plead facts showing a material misrepresentation. It alleges, at most, that certain statements about authorship or "originality" of certain functional code modules were inaccurate. But it nowhere alleges, except in wholly conclusory terms, that these statements were material to its decision to enter the transaction or would have altered the value, functionality, or marketability of what was acquired. Rule 9(b) requires particularized factual allegations of materiality; none are provided.

In reality, the disputed code consists of functional modules that Defendant co-wrote with his father over many years, not the large language model AI voice ordering that was VoiceBite's core innovation and continues to be used and developed by Checkmate. Plaintiff acquired exactly what it bargained for: a fully formed Voice AI team and technological foundation to develop Voice AI products. The existence of the disputed modules did not change VoiceBite's technical capabilities, market value, or business prospects. You cannot commit fraud over immaterial technical details that affect neither the product's functionality nor its value.

*5. No Cognizable Damages*

Here, the Complaint does not allege with any particularity that Plaintiff failed to receive the value it bargained for. The allegations are wholly conclusory: Plaintiff admits it acquired the full VoiceBite team, technical foundation, and product roadmap, which are currently being used to develop and launch successful voice AI products—including with major customers such as Popeye's. There are no non-conclusory allegations that any alleged omission or misstatement caused loss of value, loss of functionality, or other cognizable harm. On the contrary, Plaintiff has received and profited from exactly what it sought to acquire.

Because Plaintiff has not pled facts showing any actual injury resulting from the alleged fraud, the claim fails as a matter of law and must be dismissed.[58]

*6. No Reasonable Reliance*

Plaintiff cannot claim reasonable reliance while simultaneously claiming it was duped by obvious, easily discoverable information. Plaintiff had every opportunity to ask for a code walk-through with technical members of its team. Rather than insist on overbroad IP agreements, unsuitable for a young unfunded startup, it could have required a code review before proceeding.

*7. The Negligent Misrepresentation Claim Fails for the Same Reasons*

Plaintiff's negligent misrepresentation claim fails for all the same reasons as the fraud claim, plus the additional unfulfilled requirement that Defendant owed Plaintiff a duty of care. Plaintiff has called the merger an "arm's length commercial transaction between sophisticated parties with counsel". In such a transaction, no such special duty exists.

*8. Plaintiff's Fraud Allegations are Evidence of its Own Fraudulent Conduct*

The IP Letter and Assignment Agreements were coerced at the 11th hour, after negotiations had explicitly concluded[59]. Plaintiff has not provided the executed copies of these agreements—alone fatal to its claims—but moreover, cannot allege with specificity actual consideration provided in exchange for the *personal* liability it purports they confer. Plaintiff's wholly conclusory assertions of the validity of these agreements cannot survive rule 9(b).

---

[58] *See, e.g., Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).
[59] See CA Cmpl. ¶¶ 16, 116, 118 and Exhibit S, "IP Letter Summary".

Plaintiff's complaint relies on vast leaps of logic. The mere presence of a name in a codebase does not justify an inference of infringement or misappropriation.[60] All use of legacy code was expressly authorized. But even assuming infringement—which is denied—this does not, without particularized allegations, support an inference of fraud.[61] *Even if* Plaintiff could plead fraud, all code was transferred by VoiceBite to Checkmate, not by Defendant personally.

C. Plaintiff Failed to Satisfy a Condition Precedent and Join Indispensable Parties

*1. Failure to Satisfy a Condition Precedent to Bring This Lawsuit (Rule 12(b)(6))*

The Merger Agreement provides a framework to govern disputes arising from the agreement. Specifically, the agreement establishes a Holder Representative with exclusive authority to represent the Pre-Closing Holders (the VoiceBite shareholders) in disputes:

> "The Holder Representative will have full power, authority and discretion... to represent the Pre-Closing Holders and their respective successors and assigns with respect to all matters arising under this Agreement, including, after the Closing, to negotiate and enter into amendments to this Agreement for and on behalf of the Pre-Closing Holders and make all decisions required or allowed to be made by the Holder Representative pursuant to the provisions hereof and thereof (including the right to defend, settle, compromise or take any other action with respect to any matter for which Indemnified Parties seek indemnification under Section 8)…" - **§ 9.1, Merger Agreement**

While Plaintiff initially served Notice to the Holder Representative on January 29, 2025, it promptly contradicted its own position by filing this retaliatory lawsuit against Defendant individually on February 14, 2025 — bypassing the contractual dispute resolution process.

Section 9.1 grants the Holder Representative not just the authority but the exclusive duty to "defend, settle, compromise or take any other action" with respect to disputes under the agreement. This process is not optional — it is a condition precedent to any litigation involving Pre-Closing Holders. Under New York law, such conditions must be strictly enforced[62]. Should

---

[60] See *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, 2019 WL 1768618, at *2 (N.D. Cal. Apr. 22, 2019)* ("Similarity in file headers or code structure, without more, does not plausibly allege misappropriation or fraud.").

[61] See Vasan Decl. ¶ 4-5; Varadarajan Decl. ¶ 3; *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021)* ("[T]hat code or data originated elsewhere is not, without more, evidence of misappropriation or fraud. A complaint must allege facts—beyond technical artifacts—connecting the defendant to wrongful conduct.").

[62] In ***Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.***, 86 N.Y.2d 685, 690 (1995), the Court of Appeals held that "express conditions must be literally performed; substantial performance will not suffice." The court reaffirmed this standard in ***MHR Capital Partners LP v. Presstek, Inc.***, 12 N.Y.3d 640, 645 (2009), where it described a condition

Plaintiff seek damages for any transaction-related breach, it **must** proceed through the Holder Representative as specified in § 9.1.[63] Once agreed to, the contract governs[64].

Plaintiff's actions — serving a joint shareholder Notice, then promptly filing an individual lawsuit — reveal a tactical attempt to avoid the very structure it initially invoked. As such, Plaintiff now faces a core contradiction: (a) if it argues that the dispute arises under the Merger Agreement (to invoke the forum selection clause in § 9.7(b)), it must also comply with the dispute resolution process in § 9.1; or (b) if it argues that the claims fall outside that framework, it forfeits any right to rely on the forum selection clause for jurisdiction.

This is precisely the type of selective enforcement that courts reject. In *Israel v. Chabra*, 537 F.3d 86, 95 (2d Cir. 2008), the Second Circuit affirmed that parties cannot "benefit from selective enforcement" of contract terms while ignoring other binding provisions[65].

Finally, all decisions were made collectively, and Plaintiff's decision to isolate one shareholder and bypass the agreed joint process is improper, inequitable, and legally ineffective.

### 2. Plaintiff Is Equitably Estopped from Evading the Merger Agreement's Dispute Resolution Procedure

By serving a Notice of Claim on the Holder Representative on January 29, 2025, Plaintiff represented its intent to proceed under § 9.1 of the Merger Agreement. Defendant and the other shareholders reasonably relied on this conduct, refraining from immediately escalating litigation and preparing to engage Plaintiff through shared counsel, as contemplated by the Agreement.

Plaintiff's abrupt reversal—filing a direct lawsuit against Defendant in his individual capacity on February 14, 2025—contradicted that representation and caused material prejudice.

---

precedent as "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." In **IDT Corp. v. Tyco Group**, S.A.R.L., 13 N.Y.3d 209, 214 (2009), the Court of Appeals emphasized that "a court may not excise express conditions precedent... or impose additional requirements not contained in the agreement."

[63] As the Supreme Court stated in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), courts are not at liberty to disregard a contractually mandated dispute resolution procedure, even if they believe the claim is weak or the process inefficient. The Second Circuit has also consistently upheld this principle: see **JLM Industries, Inc. v. Stolt-Nielsen SA**, 387 F.3d 163, 170 (2d Cir. 2004), emphasizing the importance of honoring contractual dispute resolution mechanisms.

[64] This principle also held in **Prima Paint Corp. v. Flood & Conklin Mfg. Co.**, 388 U.S. 395, 403-04 (1967), where the Court held that disputes regarding the enforceability of provisions — including procedural mechanisms — must be resolved in accordance with the process chosen by the parties, unless there is a direct challenge to the clause itself.

[65] The court further elaborated in **Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.**, 821 F.3d 297, 305 (2d Cir. 2016) that "a party may not cherry-pick the provisions of a contract that it will adhere to."

Equity bars Plaintiff from initiating the very procedural framework designed to ensure collective resolution, only to then abandon it when expedient.

Under New York law, *equitable estoppel* prevents a party from asserting rights that would work injustice on another who, justifiably relying on the opposing party's actions, has been misled into a detrimental change of position. The New York Court of Appeals has established[66] that the doctrine applies when "the conduct of the party to be estopped must have induced the party seeking estoppel to justifiably rely on that conduct to his or her detriment."[67]

Moreover, Plaintiff now advances a novel and dangerous legal theory that collapses the distinction between individual and corporate liability. It seeks to litigate against one individual for alleged breaches that arose from corporate representations and collective decision-making— setting a precedent that blurs clear lines between shareholders, employees, and corporate entities.

The representations and warranties at issue were negotiated and executed collectively by the founding team, with shared counsel and full transparency. By isolating Defendant—the only team member Plaintiff terminated and currently without income—Plaintiff fragments a unified defense, not to pursue justice, but to exploit a strategic imbalance in power[68].

This litigation strategy has several immediate and troubling consequences:

(a) It undermines the team's collective defense, leveraging economic disparity and isolation to increase Plaintiff's odds of prevailing without regard to merit.

(b) It creates a moral hazard, incentivizing acquirers to terminate and target the most outspoken employee in order to weaken opposition and avoid contractual obligations.

---

[66] See **Nassau Trust Co. v. Montrose Concrete Products Corp.**, 56 N.Y.2d 175, 184 (1982)

[67] This was reinforced in **River Dock & Pile, LLC v. Ins. Co. of N. Am.**, 219 A.D.3d 104, 115 (2d Dep't 2023), holding that equitable estoppel "prevents one from denying his or her own expressed or implied admission which has in good faith been relied upon by another to his or her detriment." Moreover, in **Kosakow v. New Rochelle Radiology Assocs.**, 274 F.3d 706, 725 (2d Cir. 2001), the Second Circuit held that equitable estoppel is appropriate when "a party has engaged in a course of conduct that makes it inequitable for that party to take a position that contradicts that conduct." The doctrine has been similarly applied in **In re World Trade Center Lower Manhattan Disaster Site Litig.**, 846 F.3d 58, 75 (2d Cir. 2017), finding estoppel when a party takes inconsistent positions to gain tactical advantage.

[68] Courts have consistently rejected such attempts to bypass corporate forms without proper justification. In **Walkovszky v. Carlton**, 18 N.Y.2d 414, 419 (1966), the Court of Appeals established that "the corporate form may not be disregarded merely because the corporate assets are insufficient to satisfy the claims of creditors." Similarly, in **Morris v. New York State Dep't of Taxation & Fin.**, 82 N.Y.2d 135, 140-41 (1993), the court emphasized that piercing the corporate veil requires "a showing that the individual defendants exercised complete domination of the corporation and... such domination was used to commit a fraud or wrong."

(c) Plaintiff has openly asserted that success against one founder will serve as grounds to
deny bonuses to the rest, regardless of their individual conduct.

Courts should not countenance such selective enforcement or power-leveraged litigation.
Equity, contractual integrity, and the structure of the Merger Agreement—drafted by Plaintiff—
all demand that this lawsuit—and the theory on which it relies—be rejected.

*3. Failure to Join Indispensable Parties (Rules 12(b)(7) and 19)*

Plaintiff's failure to join the other VoiceBite shareholders—whose rights to substantial
bonus compensation and equity are directly threatened by this litigation—compels dismissal
under Rule 12(b)(7) and Rule 19. Federal law is clear: "No procedural principle is more deeply
embedded in the common law than that, in an action to set aside a contract, all parties who may
be affected by the determination of the action are indispensable."[69]

Under Plaintiff's theory, the Merger Agreement creates a unified liability structure: even
a mere allegation of "fraud" against one founder exposes all former shareholders to forfeiture of
more than $1.5 million in earned compensation and equity[70]. Thus, adjudicating Plaintiff's
claims in the absence of the other shareholders would "as a practical matter impair or impede
[their] ability to protect [their] interest[s]" and subject Defendant to the risk of "inconsistent
obligations"—the exact prejudice Rule 19 was designed to prevent.[71]

The Second Circuit has consistently held that parties whose contractual or financial
interests are directly implicated are indispensable.[72]

Defendant has identified the absent shareholders and explained their material interest, but
he cannot unilaterally add these parties; only Plaintiff can do so.[73] Because joinder is required

---

[69] See ***Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.***, 11 F.3d 399, 405 (3d Cir. 1993); see also ***Provident Tradesmens Bank & Trust Co. v. Patterson***, 390 U.S. 102, 109–11 (1968).
[70] See Exhibit M, Merger Agreement §§ 8.1, 8.5; Exhibit F, VoiceBite Shareholder Notice of Claim.
[71] See *Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii);* see also ***Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.***, 276 F.3d 1150, 1156 (9th Cir. 2002).
[72] See ***McBeth v. Porges***, 171 F. Supp. 3d 216, 230 (S.D.N.Y. 2016) (Furman, J.) (granting dismissal where absent parties "would necessarily be affected by any judgment rendered");
and ***Kim v. Ji Sung Yoo***, 2019 WL 2353287, at *2 (2d Cir. June 3, 2019) (Furman, J.) (party seeking relief must "explicitly name all absent necessary parties, explain their role, and state why they cannot be joined").
[73] See ***Kim***, supra ("a party requesting relief must 'plead … the reasons for nonjoinder'"; defendants may move for dismissal or an order compelling joinder).

but has not occurred, and adjudication in their absence would prejudice both absent parties and Defendant, dismissal (or a stay pending proper joinder) is mandatory under Rule 19.

## V. ARGUMENT – FAILURE TO ESTABLISH JURISDICTION AND VENUE

<u>D. The First-to-File Rule Strongly Supports Dismissal, Transfer or Stay</u>

The first-filed rule gives priority to the court where litigation was first initiated[74] and the chronology of events leaves no doubt that the California Action has priority:

(a) **January 28, 2025**: Defendant filed the California Action

(b) **February 14, 2025**: Plaintiff filed this New York Action

(c) **March 5, 2025**: Defendant properly served the California Action on Plaintiff

(d) **March 6, 2025**: Defendant files proof-of-service in the California Action

(e) **March 7, 2025**: Plaintiff files affidavit of an attempted "nail and mail" service in the New York Action (with defective summons)

(f) **March 13, 2025**: Plaintiff attempted substitute service (with defective summons)

(g) **March 17, 2025**: Earliest Plaintiff's service deemed complete under New York law

(h) **April 21, 2025**: Defendant files Motion to Quash Service

(i) **May 12, 2025**: Plaintiff amends Complaint and Summons to fix Defendant's address

The California Action should take precedence as (1) it was filed more than two weeks before[75] this action with service properly completed (at minimum) 10 days prior to service of this New York Action; (2) the actions both concern the same identical parties; and (3) the actions both concern the entitlement of Defendant to compensation earned through his employment.

<u>E. Forum Selection Clause Is Invalid or Unenforceable</u>

*1. Forum Selection Clauses Do Not Create Jurisdiction*

Plaintiff is anticipated to rely on a forum-selection clause in the Merger Agreement to establish personal jurisdiction over Defendant. However, forum-selection clauses do not, by themselves, confer personal jurisdiction where it otherwise does not exist.

---

[74] See ***Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.***, 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) ("the well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority").
[75] See ***Citigroup Inc. v. City Holding Co.***, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) (noting that "the first-filed rule looks to the chronology of the filings of the complaint").

In federal court, personal jurisdiction must still comply with both states long-arm statutes and constitutional due process[76]. Even where a forum-selection clause exists, courts evaluate whether the defendant has "minimum contacts" with the forum such that jurisdiction comports with "traditional notions of fair play and substantial justice."[77] As this District has held, a forum clause cannot by itself create jurisdiction where a defendant has no meaningful contacts[78].

*2. The Merger Agreement's Forum Selection Clause is not Applicable Here*

Even if forum-selection clauses could confer jurisdiction (they cannot), the specific clause in the Merger Agreement is inapplicable here for several independent reasons:

**Separate Agreements Without Forum Selection**: The Complaint is based on ancillary agreements — including the "IP Letter" and "Assignment Agreement" — that lack such clauses. The IP Letter contains a unilateral reference to the Merger Agreement, but one-way references are insufficient to establish proper integration.[79]

**Different Parties to Agreement**: The Assignment Agreement was executed between Defendant and VoiceBite, not between Defendant and Plaintiff. This reflects a distinct legal relationship. Plaintiff cannot bootstrap forum-selection onto contracts to which it was not a party—as the Second Circuit has affirmed[80] that "a non-signatory to a contract containing a forum selection clause may enforce that clause only if the non-signatory is 'closely related' to a signatory," which requires "a sufficiently close relationship" and foreseeability of litigation[81].

**Differing Contractual Capacities**: The IP Letter was executed between Plaintiff and Defendant as an individual, whereas the Merger Agreement was between Plaintiff and VoiceBite as a corporate entity. As the Supreme Court established in *United States v. Bestfoods*, 524 U.S. 51, 68 (1998), there is a "general principle of corporate law deeply ingrained in our economic

---

[76] See *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).

[77] **International Shoe Co. v. Washington**, 326 U.S. 310, 316 (1945).

[78] See **Rent-A-Center, West, Inc. v. Jackson**, 561 U.S. 63 (2010); ***TradeComet.com LLC v. Google, Inc.***, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010).

[79] See ***Magi XXI, Inc. v. Stato della Città del Vaticano***, 714 F.3d 714, 721-22 (2d Cir. 2013), "for the terms of one document to be incorporated by reference into another document, the 'reference must be clear and unequivocal.'" Similarly, in **Northrop Grumman Info. Tech., Inc. v. United States,** 535 F.3d 1339, 1345 (Fed. Cir. 2008), the court held that "incorporating language must explicitly, or at least precisely, identify the written material being incorporated."

[80] See ***Motorola Credit Corp. v. Uzan***, 388 F.3d 39, 53 (2d Cir. 2004)

[81] See also ***Adams v. Raintree Vacation Exch., LLC***, 702 F.3d 436, 439 (7th Cir. 2012) (requiring a "close relationship" between the dispute and the agreement containing the forum selection clause).

and legal systems that a parent corporation... is not liable for the acts of its subsidiaries." This principle extends to distinguishing contracts made in different legal capacities[82].

**Procedural Waiver**: Plaintiff has failed to follow the Merger Agreement's joint dispute resolution procedures. Plaintiff's decision to file this action directly, outside this framework, constitutes a waiver of its ability to enforce the forum clause. Courts have consistently held that parties cannot selectively enforce contractual provisions ignoring others[83].

**Inconsistant Positions**: Plaintiff is cherry picking the Merger Agreement, invoking the forum clause while disregarding its equally mandatory jury trial waiver, liability cap, carve-out for employment claims, service of process provisions and dispute resolution framework. This inconsistency further undermines any claim of contractual certainty or fairness. Courts have rejected such inconsistent positions under the doctrines of equitable and quasi-estoppel[84].

### 3. A Rigorous Contract Analysis Shows Employment is Carved Out

The Merger Agreement explicitly and intentionally separates two distinct categories of rights and claims: (1) **joint**, shareholder-oriented claims, and (2) **individual** employment-related claims. This structural distinction is reflected most explicitly in §§ 7.4, 8.8, 9.1 and 9.7.

First, § 7.4 explicitly divides these two categories. § 7.4(a)(i) preserves claims "arising from or relating to the transactions contemplated by this Agreement"—claims inherently joint in nature, tied to the collective shareholder interest in the "Merger Consideration,"[85] In contrast, § 7.4(a)(ii) separately preserves individual employment-related claims, stating explicitly:

> § **7.4(a)(ii) "carveouts"** ... other than ... (ii) <u>any right</u> of any Pre-Closing Holder or any employee to accrued but unpaid wages, salary, compensation, bonuses, accrued vacation or other benefits or other

---

[82] The New York Court of Appeals similarly held in ***Fink v. Golenbock***, 238 A.D.2d 37, 40 (1st Dep't 1997) that "the law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability."

[83] See ***Israel v. Chabra***, 537 F.3d 86, 95 (2d Cir. 2008) (rejecting "selective enforcement" of contractual terms). In ***Farnsworth v. Towboat Nantucket Sound, Inc.***, 790 F.3d 90, 97 (1st Cir. 2015), the court noted that "a party cannot cherry-pick the provisions of a contract that it deems favorable while disregarding those that it deems unfavorable."

[84] See ***New Hampshire v. Maine***, 532 U.S. 742, 749 (2001) (prohibiting parties from "deliberately changing positions according to the exigencies of the moment"). The Second Circuit has applied this principle in contractual disputes, noting in ***DeRosa v. Nat'l Envelope Corp.***, 595 F.3d 99, 103 (2d Cir. 2010) that parties may not "play fast and loose with the courts" by adopting inconsistent interpretations of the same agreement.

[85] Defined specifically as the "321,199 shares of Checkmate Common Stock to be allocated pro rata amongst the shareholders of VoiceBite."

amounts payable or that may become payable to such Person ***as a service provider to the Company***.[86]

Second, §§ 9.1 and 8.8 underscore the joint, shareholder-centric nature of claims "arising under or relating to this Agreement." § 9.1 defines the role of the Holder Representative as "the exclusive agent, representative, and attorney-in-fact" for all pre-closing holders, who exclusively handles claims of a joint, collective shareholder nature. § 8.8 further states:

> "The indemnification provided in this Agreement shall be the sole and exclusive remedy … with respect to claims ***arising from or relating to this Agreement*** or the transactions contemplated hereby,"
>
> (reinforcing the *collective* nature of such claims, tied exclusively to merger equity and shareholder obligations)

Third, § 9.7—the forum selection clause—follows this deliberate structural design. The Agreement consistently employs the phrase "arising under or relating to this Agreement" to encompass only joint, shareholder-oriented claims. Because individual employment claims were explicitly carved out by § 7.4(a)(ii), they categorically do not "arise under or relate to" the Merger Agreement and thus fall outside the scope of § 9.7's forum clause, which states:

> "Each of the parties hereby irrevocably submits to the exclusive jurisdiction of the courts located within the State of New York... in respect of any claim ***arising under or relating to this Agreement***."

Finally, the consistent and deliberate usage of "arising under or relating to this Agreement" clearly demonstrates the parties' intent to limit the forum selection, indemnification, and dispute resolution mechanisms exclusively to joint, shareholder-related claims. In short, the Merger Agreement's careful textual structure confirms that employment rights were deliberately preserved and removed from its collective framework, including the forum clause.

### 4. Plaintiff Elects to Void the Clauses under California Labor Code § 925

As applied to employment-related claims, any forum-selection clause is voidable under Cal. Labor Code § 925. Defendant's Offer Letter explicitly states that it "shall be governed by the

---

[86] Employment claims, grounded in individual contracts and protected in Defendant's case under California law, remain actionable and exempt from these collective provisions. These claims, by design, stand outside the collective, shareholder-focused provisions that "***arise under or relate to***" the Agreement and the Transaction contemplated thereby.

laws of the State of California." Because Plaintiff seeks declaratory relief to "disentitle" him from compensation <u>earned through employment</u>, the clause is voidable at his election[87].

In the California Action, Plaintiff has argued Defendant is not entitled to protection from § 925, claiming, *inter alia*, that (1) that Defendant was and indeed ***is*** a Texas resident[88]; (2) that the merger was not a condition of his employment; and (3) that he was represented by counsel and therefore subject to the § 925(e) exception. None of these theories hold water.

(1) Plaintiff has at long last corrected its fraudulent identification of Defendant as a resident of Sugar Land, Texas, and conceded his California residency—undermining a key factual basis for its position. Plaintiff's own exhibits, as well as those provided by Defendant, demonstrate that he *primarily* lived and worked in California while an employee of Checkmate.

(2) Plaintiff's anticipated position is that the merger and employment constituted "one integrated transaction" and it cannot produce any evidence of a separate employment offer.

(3) Plaintiff's anticipated reliance on the § 925(e) exception misreads the plain language of the statute.[89] To qualify, representation must be *in fact* and *individual*.[90]—not the case here.

F. Venue in New York Is Improper (28 U.S.C. §1391)

*1. No Substantial Events Occurred in New York*

The "events or omissions giving rise to the claim" must be substantial and material, not merely tangential or incidental[91]. Here, the principal facts occurred in California, not New York.

---

[87] See ***Verdugo v. Alliantgroup, L.P.***, 237 Cal. App. 4th 141, 147 (2015), which held that "California public policy favors the protection of employee rights" and in ***Pinela v. Neiman Marcus Group, Inc.***, 238 Cal. App. 4th 227, 240 (2015), which emphasized that California has a "strong public policy protecting the rights of California workers."
[88] Defendant stayed with his brother in Midland, Texas from August 3rd, 2024, until September 30th, 2024. He has not been back to Texas since. He worked from California for over 70% of his days at Checkmate and Plaintiff's own C.D. Cal. Exhibits show California withholdings on 60% of his income and a CA address on file for over 65% of days.
[89] Lab. Code §925, "*This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel*".
[90] While VoiceBite had shared corporate counsel, Plaintiff has asserted dominion over all privilege, relationships and work-product associated with these corporate counsel—revealing its own understanding that these attorneys did not, in fact, represent Defendant in a personal capacity. Corporate counsel owes duties solely to the entity—not to ***individual*** constituents. See *La Jolla Cove Motel*, 121 Cal.App.4th at 784. Under § 925(e), an employee is "in fact ***individually*** represented by legal counsel" only if they have their own ***independent*** attorney or a dual representation agreement.
[91] See ***Gulf Ins. Co. v. Glasbrenner***, 417 F.3d 353, 357 (2d Cir. 2005) ("Substantiality for venue purposes is a more exacting standard than for jurisdiction, and a court should focus on relevant activities of the parties within the district."); ***Daniel v. Am. Bd. of Emergency Med***, 428 F.3d 408, 432 (2d Cir. 2005) (requiring "a close nexus" between the events in the district and the claim).

*2. Defendant Resides in California and has No Substantial New York Contacts*

Courts routinely find venue improper where the locus of operative facts is in another district[92]. Here, all substantive events occurred in California, not New York.[93]

*3. Venue Analysis Under § 1391 Clearly Favors California*

Accordingly, this action should be dismissed or transferred under 28 U.S.C. § 1406(a) or, alternatively, transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a)[94].

G. Forum Non Conveniens Factors Strongly Favor California (§1404)

*1. Plaintiff's Choice of Forum Deserves Reduced Deference Given the Circumstances[95]*

When a company's operations are dispersed, its claim to a chosen forum is weakened[96]. Second, the operative facts of this dispute occurred almost entirely in California.[97] Third, forum-shopping has been rejected by courts as meriting reduced deference[98].

---

[92] See **Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.,** 867 F. Supp. 2d 859, 867 (E.D. Tex. 2012) ("Venue is improper if the acts or omissions that gave rise to the claim did not occur in the district."); **Employers Ins. of Wausau v. Fox Entm't Grp., Inc.,** 522 F.3d 271, 275 (2d Cir. 2008) (affirming transfer where "the core events occurred elsewhere").

[93] **Gulf Ins. Co. v. Glasbrenner** is especially instructive here: "For venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."— 417 F.3d at 357. See also **Woodke v. Dahm**, 70 F.3d 983, 985 (8th Cir. 1995) ("The substantiality requirement is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."); **United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency**, 745 F.3d 131, 137 (4th Cir. 2014) ("[T]he events in the forum must be significant, not merely tangential to the dispute.").

[94] See **Berman v. Informix Corp.**, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (transferring case to California where "the vast majority of the events" occurred there); **Spiliada Maritime Corp. v. Cansulex**, 495 U.S. 495 (1979)

[95] As the Second Circuit has recognized, "the degree of deference given to a plaintiff's forum choice varies with the circumstances." **Iragorri**, 274 F.3d at 71. Even when a plaintiff chooses its home forum, that choice receives less deference if "the circumstances indicate that the choice of forum was motivated by forum-shopping reasons." *Id.* at 72.

[96] A corporate entity cannot demand that its *alleged* location be respected for the burdens of litigation, while simultaneously shifting the *actual* costs of office space and infrastructure onto its employees. The address of CEO Agarwal's apartment is not dispositive—nor does it substitute for an actual office space available to its workforce. See **WIWA v. Royal Dutch Petroleum Co.**, 226 F.3d 88, 102 (2d Cir. 2000) (analyzing the significance of a company's distributed operations in forum analysis).

[97] The Second Circuit has held that "the more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." **Iragorri**, 274 F.3d at 71-72. Conversely where plaintiff's choice has minimal connection to the facts of the case, less deference is warranted. See **Pollux Holding Ltd. v. Chase Manhattan Bank**, 329 F.3d 64, 74 (2d Cir. 2003) (less deference where "the operative facts upon which the litigation is brought bear little connection to the chosen forum").

[98] Here, Plaintiff appears to have filed this action to pre-empt Defendant's California Action. See **Ferens v. John Deere Co.**, 494 U.S. 516, 527 (1990); see also **Norex Petroleum Ltd. v. Access Indus., Inc.**, 416 F.3d 146, 155 (2d Cir. 2005).

### 2. The Central District of California Is an Adequate Alternative Forum[99]

Here, Defendant has submitted to the jurisdiction of the Central District of California by filing his action there. Federal courts in other districts constitute adequate alternative forums[100].

### 3. The Private Interest Factors Strongly Favor California[101]

(1) The vast majority of evidence is digital due to Checkmate's remote nature. Moreover, Defendant resides in California, where the agreements were executed. See Vasan Decl. (2) Nearly all material witnesses reside in California including, critically, an individual prominently featured in the Complaint—Vasan Varadarajan—Defendant's father who, like him, lives in Cerritos, California[102]. See Declaration of Vasan Varadarajan. (3) Even for willing witnesses, the burden of travel would be substantial.[103] (4). Proceeding here, while the California Action continues, risks duplicative discovery, inconsistent rulings, and wasted judicial resources[104].

### 4. The Public Interest Factors Decisively Favor California[105]

(1) California has a compelling interest in adjudicating disputes involving its residents and that occurred within its borders, such as this one[106]; (2) Labor Code § 925 represents an express policy choice to protect California workers should be respected[107]; (3) keeping this action in New York would necessitate complex conflict-of-laws analyses that would be avoided

---

[99] The Supreme Court has established that this requirement is ordinarily satisfied when "the defendant is 'amenable to process' in the other jurisdiction.". See **Piper Aircraft**, 454 U.S. at 254 n.22 (quoting **Gilbert**, 330 U.S. at 506-07).

[100] See, e.g., **Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC**, 155 F.3d 603, 609 (2d Cir. 1998) (finding District of Columbia an adequate alternative forum); **Calvo Growers of Cal. v. Generali Belgium**, 632 F.2d 963, 968 (2d Cir. 1980) (affirming forum non conveniens dismissal in favor of a California forum).

[101] The private interest factors identified by the Supreme Court include: (1) access to sources of proof; (2) availability of compulsory process; (3) cost of attendance of willing witnesses; and (4) practicality of trying the case. See **Gilbert**, 330 U.S. at 508; **Walden v. Fiore**, 571 U.S. 277, 285 (2014).

[102] Relevant witnesses include (a) Defendant, a California resident; (b) his supervisor Michael Bell—also Plaintiff's lead negotiator—a resident of Manhattan Beach, California; (c) the other VoiceBite founders, four of whom are California residents; (d) medical staff who treated Defendant during leave in Costa Mesa, California; As the Supreme Court noted in **Gilbert**, the inability to compel unwilling witnesses to attend trial is a significant factor favoring dismissal. 330 U.S. at 511. Under Federal Rule of Civil Procedure 45(c), this Court cannot compel attendance of witnesses who reside more than 100 miles from the courthouse, making most potential witnesses beyond its subpoena power. As such, Mr. Varadarajan is outside the subpoena power of New York courts which reinforces the impracticality of litigating this dispute in New York.

[103] The Second Circuit has emphasized that "the convenience of the witnesses is probably the single most important factor." See **Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.**, 865 F.2d 513, 517 (2d Cir. 1989).

[104] The Supreme Court has recognized that "the pendency of a similar action in another forum is a factor to be considered" **Continental Grain Co. v. The FBL-585**, 364 U.S. 19, 26 (1960).

[105] See **Piper Aircraft**, 454 U.S. at 241 n.6; **Iragorri**, 274 F.3d at 74.

[106] See **Gilbert**, 330 U.S. at 509. "there is a local interest in having localized controversies decided at home."

[107] See **America Movil, S.A.B. de C.V. v. 7-Eleven, Inc.**, 642 F. App'x 17, 21 (2d Cir. 2016) (recognizing importance of respecting state policy choices in forum non conveniens analysis).

in California.[108]; and (4) it would be unfair to burden New York citizens with jury duty when this case has little substantive connection to the state[109].

### 5. The Balance of Factors "Tips Strongly" in Favor of Dismissal

The doctrine of *forum non conveniens*[110] clearly favors the California forum.[111] The Supreme Court[112] and Second Circuit[113] have held that dismissal is warranted when "the balance of factors tips strongly in favor of trial in the foreign forum." *Piper Aircraft,* 454 U.S. at 255. Here, both private and public interest overwhelmingly favors litigation in California.

### H. Plaintiff Failed to Sufficiently Effect Service of Process (Rule 12(b)(5))

On May 12, 2025, Plaintiff amended its Summons to reflect Defendant's correct Cerritos, California address and revised its Complaint to remove references to Texas residency. This strategic retreat followed months of filings over three separate courts representing that Defendant resided in Texas—an assertion that has now been quietly abandoned.

While Defendant welcomes Plaintiff's belated correction, proper service of process has still not occurred. First, § 9.11 of the Merger Agreement requires that legal notices—including service of process—be delivered by overnight courier (e.g., FedEx or UPS), not by regular mail. Second, New York law governing service requires leave of court to serve by mail—such leave is typically granted only after diligent and unsuccessful efforts at personal service. Here, Plaintiff made no such showing or application of service of the amended complaint.[114]

Given these facts, and given Defendant's interest in an efficient resolution of this dispute, he respectfully requests the Court Order Plaintiff to Show Cause as to (1) the factual and legal

---

[108] See **Piper Aircraft**, 454 U.S. at 260 "the need to apply foreign law" can "point[] toward dismissal.".

[109] As the Supreme Court noted in **Gilbert**, there is no reason to "impose the duty of jury service upon the people of a community which has no relation to the litigation." 330 U.S. at 508-09.

[110] *Forum conviens* "permits a court to dismiss an action, even when venue is proper, on the theory that the case could be better tried elsewhere for the convenience of the litigants and the court." See **Alcoa S.S. Co. v. M/V Nordic Regent**, 654 F.2d 147, 151 (2d Cir. 1980) (en banc). As the Second Circuit has held, "the doctrine is essentially 'a supervening venue provision' that reflects a flexible response to the rigid venue requirements set by statute." **Iragorri v. United Techs. Corp.**, 274 F.3d 65, 72 (2d Cir. 2001) (quoting **American Dredging Co. v. Miller**, 510 U.S. 443, 453 (1994)).

[111] The Supreme Court has instructed courts to evaluate: (1) the degree of deference properly accorded to the plaintiff's choice of forum; (2) the availability of an adequate alternative forum; and (3) the balance of public and private interest factors **Piper Aircraft Co. v. Reyno**, 454 U.S. 235, 254 (1981); **Gulf Oil Corp. v. Gilbert**, 330 U.S. 501, 508-09 (1947).

[112] See **Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp**., 549 U.S. 422, 432 (2007)

[113] See also **Base Metal Trading Ltd. v. Russian Aluminum**, 253 F.3d 681, 684 (2d Cir. 2001) (affirming dismissal where "trial in the United States would be inconvenient for the parties and witnesses").

[114] Plaintiff's filed "Certificate of Service" indicates service via first class mail, in direct breach of the contract.

basis behind its use of the Sugar Land, Texas address and its subsequent retraction; (2) its compliance (or lack thereof) with the terms of the Merger Agreement and of the laws governing due process; and (3) why service should be deemed effective in light of these irregularities.

I. This Court Lacks Personal Jurisdiction Over Defendant

Plaintiff bears the burden of establishing jurisdiction but has failed to do so under either general or specific jurisdiction. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the law of the state in which the court sits — here, New York. Therefore, New York's Civil Practice Law and Rules ("CPLR") §§ 301 (general jurisdiction) and 302 (specific jurisdiction) govern.

Defendant has not engaged in "continuous and systematic" contact with New York that would permit this Court to exercise general jurisdiction under CPLR § 301.[115] Specific jurisdiction under CPLR § 302 is also lacking. Even if CPLR § 302 were satisfied (which it is not), the exercise of jurisdiction would still violate due process. Exercising jurisdiction would "offend traditional notions of fair play and substantial justice."[116] Accordingly, this Court lacks personal jurisdiction over Defendant under New York law and the Due Process Clause of the Fourteenth Amendment, and the Complaint should be dismissed under Rule 12(b)(2).

## VI. CONCLUSION

On April 24, 2025, Plaintiff filed an objection to a modest extension of time granted by the Hon. Judge Furman in this Southern District of New York. The Order had been issued, and moreover, Defendant had—out of an abundance of caution—timely filed a Motion to Quash, never needing the time he very much appreciates was nonetheless granted.

Plaintiff's objection pointed to the fact that its retaliatory Complaint was filed "almost two months" earlier, implying that Defendant was evading this instant action. Plaintiff did not concede or even acknowledge that any delays were wholly of its own doing.

In its zeal to evade California's worker protections by portraying Defendant as a resident of Texas, Plaintiff failed to serve Defendant prior to a planned family trip to Japan. Had it simply

---

[115] See ***Daimler AG v. Bauman***, 571 U.S. 117, 138–39 (2014).
[116] See ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945); and ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 474 (1985).

used the California address it was obliged to by **§ 9.11** of the Merger Agreement, its New York Action would have been served first. Yet Plaintiff now deigns to ask multiple courts to enforce **§ 9.7** of the *very same agreement* and overturn the results of the race ***it started*** and ***then lost***.

      Plaintiff's complaint is fatally defective. It fails to attach the agreements it claims were breached or describe the contents with specificity.[117] Here, the laundry list of contract provisions on which Plaintiff relies come with no references to which document contains them or in what context they were executed. This is a hit piece, not a serious pleading.

      Plaintiff has previously declined to provide Defendant with these very agreements despite months of written requests. The Second Circuit has long recognized that a party who brings suit based on documents but refuses to produce those documents impedes the opposing party's ability to defend and invites an inference of *bad faith*[118]. Plaintiff's moot objection to an already granted and unused two-week extension must be viewed <u>in this context</u>.

      This case does not belong in New York. Defendant properly filed suit in the Central District of California where he lives and primarily worked during the relevant period. Seeking to pre-empt those meritorious claims, Plaintiff has relied on misrepresentation and gamesmanship in bringing the improper action before this court. Proceeding here risks duplicative litigation, inconsistent rulings, and needless inefficiency. But really, *this case belongs nowhere*.

      Plaintiff's conduct goes far beyond "zealous advocacy" by counsel: it has pursued an unconscionable campaign of reputational and economic destruction against its former employee, whose extraordinary contributions and efforts are not in dispute. It does so to unwind the "bargained for" deal it claims to rely on and to evade its express obligations to pay $1.5 million in bonuses owed to the VoiceBite founding team of five. Preventing such abuse is precisely the purpose of this Court's inherent powers. For this and the other reasons herein, Defendant respectfully requests that the Court dismiss this Complaint, with prejudice, in its entirety, or grant such other relief as set forth in the [Proposed] Order filed herewith

---

[117] As the Second Circuit and this Court have held, "failure to allege the terms of the contract, or to attach or describe the operative agreement with specificity, is grounds for dismissal." See *Atkinson*, supra; *Molina v. Palisades Federal Credit Union*, supra. This defect alone compels dismissal under Rule 12(b)(6).

[118] See ***Residential Funding Corp. v. DeGeorge Financial Corp.***, 306 F.3d 99, 107 (2d Cir. 2002)

Respectfully Submitted[119],

DATED: Monday, June 2, 2025[120]

In Cerritos, California

*/s/ Arjun Vasan*

_____

**Arjun Vasan**[121]
Defendant *Pro Se*
arjun.vasan@gmail.com
(562) 900-6541

| Supplement | Attachments |
|---|---|
| Request for Judicial Notice | RJN Ex. A-F |
| Declaration of Arjun Vasan | Exhibits B, F, G.1-3, H, I, L, M, Q, S, U, Y, Z |
| Declaration of Vasan Varadarajan | |
| Proposed Order | |

---

[119] In ¶¶ 36-37 of its Amended Complaint, Plaintiff seizes on a fleeting, retracted in writing comment by Defendant—who, under litigation stress, briefly threatened to "crush" the opposition. The context: ongoing requests for protective measures for non-party witnesses. Defendant assures the Court he only meant that he would thoroughly defeat his opposition and regrets the momentary indulgence. (See Exhibit Z, May 5–7, 2025 Email Thread; FAC ¶36–37.).

[120] Defendant does not waive and expressly preserves all defenses, objections, and rights not raised in this motion, including but not limited to under Rules 12(b) and 56 (summary judgment).

[121] Plaintiff's approach to contract enforcement is best illustrated by a May 28, 2025, email chain (Exhibit Q, "Keech Thread"). At 5:38 PM, Attorney Tom Warns flatly asserts that "Section 9.11… is inapplicable with respect to filings in this action." Thirty-four minutes later, at 6:12 PM, Attorney Ryan Q. Keech contradicts Warns, stating "you have now reviewed the Merger Agreement and acknowledge that its provisions apply to the litigation,", demands Defendant withdraw his earlier-filed California Action and abandon all objections. Mr. Keech's tone became increasingly erratic, insisting on Defendant's "full and prompt compliance" with every provision Checkmate finds convenient. See *United States v. New York*, 708 F.2d 92, 97 (2d Cir. 1983) ("A party may not … adopt a 'heads I win, tails you lose' position.");