**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHECKMATE.COM, INC.

Plaintiff,

v.

ARJUN VASAN

Defendant.

Case No. 1:25-CV-03181(JMF)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 6

I. The Court Has Jurisdiction Over Defendant. ........ 7

A. The Forum Selection Clause is valid and enforceable. ........ 7

B. The Forum Selection Clause is not unreasonable. ........ 9

C. New York is the proper forum for all claims. ........ 10

D. The First-to-File Rule does not override the Forum Selection Clause. ........ 13

E. Defendant's other arguments are without merit. ........ 14

II. Plaintiff Has Adequately Alleged a Cause of Action for Fraud. ........ 18

A. The Amended Complaint satisfies Rule 9(b)'s pleading requirements. ........ 19

B. Even Construing Defendant's Undeveloped Arguments as Favorably as Possible, Defendant's Arguments are Without Merit ........ 20

III. Plaintiff Has Adequately Pled a Breach of the Non-Compete Agreement. ........ 24

A. The Amended Complaint Alleges that Defendant Breached the Non-Compete Agreement. ........ 24

B. The Non-Compete Agreement is not Void Under its Own Terms ........ 24

C. Defendant's remaining arguments interpreting the Merger Agreement are without merit. ........ 25

i. Failure to Satisfy a Condition Precedent ........ 25

ii. Equitable Estoppel ........ 26

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
585 F.3d 696 (2d Cir. 2009)....................9

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010)....................23

*Arjun Vasan v. Checkmate.com Inc.*,
Case No. 2:25-cv-0765-MEMF (C.D. Cal.) ....................1

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Trust*,
2011 WL 4552508 (Del. Ch. Sep. 14, 2011) ....................12

*Ashall Homes Ltd. v. ROK Entertainment Grp. Inc.*,
992 A.2d 1239 (Del. Ch. 2010)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
228 F. Supp. 2d 348 (S.D.N.Y. 2002)....................9

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
571 U.S. 49 (2013)....................10, 16

*In re Bristol Myers Squibb Co. Sec. Litig.*,
586 F. Supp. 2d 148 (S.D.N.Y. 2008)....................20

*CA, Inc. v. Ingres Corp.*,
2009 WL 4575009 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010)....................13

*Centene Corp. v. Accellion, Inc.*,
2022 WL 898206 (Del. Ch. Mar. 28, 2022)....................13

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989)....................6

*DIMON Inc. v. Folium, Inc.*,
48 F. Supp. 2d 359 (S.D.N.Y. 1999)....................23

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................19

*Fasano v. Yu Yu*,
921 F.3d 333 (2d Cir. 2019)....................15

*Fla. Chem. Co., LLC v. Flotek Indus., Inc.*,
262 A.3d 1066 (Del. Ch. 2021)....................9, 12

*Glidepath Holding B.V. v. Spherion Corp.*,
590 F. Supp. 2d 435 (S.D.N.Y. 2007)....................18

*Gordian Grp., LLC v. Syringa Expl., Inc.*,
168 F. Supp. 3d 575 (S.D.N.Y. 2016)....................8

*Ingres Corp. v. CA, Inc.*,
8 A.3d 1143 (Del. 2010)....................14

*Iragorri v. United Techs. Corp.*,
274 F.3d 65....................7

*Kaufman v. Cohen*,
307 A.D.2d 113 (1st Dep't 2003)....................18

*Koob v. IDS Fin. Servs., Inc.*,
213 A.D.2d 26 (1st Dep't 1995)....................10

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....................21

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014)....................14

*In re Lottery.com, Inc. Sec. Litig.*,
765 F. Supp. 3d 303 (S.D.N.Y. 2025)....................20

*Ludmer v. Hasan*,
33 A.D.3d 594 (2d Dep't 2006)....................17

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988)....................7

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014)....................8, 9, 10, 11

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*,
263 A.2d 281 (Del. 1970)....................14

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007)....................22

*In re Nine West Holdings, Inc.*,
614 B.R. 175 (S.D.N.Y. 2020)....................15, 16

*NuMSP, LLC v. St. Etienne*,
462 F. Supp. 3d 330 (S.D.N.Y. 2020)....................7, 8

*Rana v. Islam*,
305 F.R.D. 53 (S.D.N.Y. 2015)....................20

*Robinson v. Deutsche Bank Tr. Co. Americas*,
572 F. Supp. 2d 319 (S.D.N.Y. 2008)....................22

*Roby v. Corp. of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993)....................9

*Simon v. Navellier Series Fund*,
2000 WL 1597890 (Del. Ch. Oct. 19, 2000)....................13

*Speedmark Transp., Inc. v. Mui*,
778 F. Supp. 2d 439 (S.D.N.Y. 2011)....................24

*Strategic Marketing & Comms., Inc. v. Kmart Corp.*,
41 F. Supp. 2d 268 (S.D.N.Y. 1998)....................10

*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995)....................7

**Statutes**

8 Del. C. § 259(a)....................12

28 U.S.C. § 1391....................15

28 U.S.C. § 1404....................15

28 U.S.C. § 1406....................15

Cal. Labor Code § 925....................13, 14, 15, 16

N.Y. CPLR 308(4)....................17

Fed. Rule Civ. Proc. 9(b)....................19, 20, 21

**INTRODUCTION**

Defendant's spaghetti-at-the-wall motion should be denied.

Defendant Arjun Vasan ("Defendant") co-founded VoiceBite, a Delaware incorporated, customer-service based company that leveraged artificial intelligence ("AI") to automate the voice ordering process for restaurants. Amended Complaint ("AC") ¶ 14. Plaintiff is a technology company that offers a variety of technology and services to restaurants, helping them with first-party ordering, third-party integrations, menu management, loyalty programs, and more. AC ¶ 13.

As alleged in the Amended Complaint, Plaintiff was duped by Defendant into paying significant amounts of money for worthless assets when Defendant made numerous misrepresentations about the proprietary code for VoiceBite's voice ordering AI application, including regarding its functionality, creation and ownership. When Plaintiff learned post-closing that Defendant had defrauded Plaintiff, and that Defendant had breached numerous provisions of the contractual documents underlying the Transaction (defined below), Plaintiff filed suit in New York State Supreme Court, as was permitted in the forum selection clauses contained in the Merger Agreement and the Non-Compete Agreement. Defendant removed to federal court and filed his Motion to Dismiss, Transfer or Stay (Dkt. #34) (the "Motion").

The Motion seeks to dismiss this case, or in the alternative, to transfer or stay this case in favor of an employment action pending in the Central District of California. At the time Plaintiff had filed this action on February 14, 2025, Plaintiff had not been served with a copy of the complaint in the California action.[1] Still trying to avoid accountability, Defendant has thrown the

---

[1] *Arjun Vasan v. Checkmate.com Inc.,* Case No. 2:25-cv-0765-MEMF (JPRx) (C.D. Cal.), filed January 28, 2025. At the time of Plaintiff's filing of the action in New York, Checkmate had not been served with the Complaint in the California action.

proverbial "kitchen sink" at Plaintiff with dozens of convoluted arguments.[2] Many lack any detail or significant analysis. Others seek to improperly introduce (alleged) facts outside of the Amended Complaint, in a posture more reminiscent of a motion for summary judgment. Amidst the random arguments that are dispersed throughout Defendant's memorandum of law in support of the Motion, Plaintiff seems to focus on four points: 1) lack of personal jurisdiction over Defendant; 2) that this case should be transferred to the federal court in the Central District of California; 3) failure to state a claim for fraud; and 4) failure to state a cause of action for breach of the non-compete agreement. All lack merit.

***First***, this Court undoubtedly has personal jurisdiction over Defendant. Defendant expressly consented to jurisdiction in the state and federal courts of New York in the forum selection clause contained within the Merger Agreement. In addition, Plaintiff served the Defendant with the summons and Complaint (and Amended Complaint) in compliance with New York law.

***Second***, Defendant's request to transfer this case to the Central District of California is without merit in light of the forum selection clause in the Merger Agreement, which specifies the federal and state courts of New York as the appropriate forum for any litigation arising out of the Merger Agreement. Defendant does not, and cannot, identify any authority that would compel the Court to ignore the parties' agreed-to selection of New York as the exclusive forum for this action.

***Third***, the Amended Complaint clearly alleges all of the elements for a fraud claim against Defendant, with sufficient particularity. While Defendant argues that Plaintiff must allege the specific day and time of each misrepresentation, Plaintiff has more than met the relevant pleading

---

[2] Defendant has admitted to using generative AI to prepare his filings, which may explain the often convoluted nature of his brief. Unfortunately, this may have resulted in AI-generated "hallucinations," including misattributed or in some cases apparently non-existent quotations from cases. *See infra* n.3, at 7.

standard in alleging that Defendant made the misrepresentations about VoiceBite in the months leading up to the Transaction (which closed April 30, 2024). Defendant's other arguments—supported by declarations from himself and his father—are wholly inappropriate to submit in connection with a motion to dismiss, and in any event do not disprove the allegations in the Amended Complaint.

***Fourth***, and finally, Plaintiff has stated a cause of action for breach of the non-compete agreement. Once Defendant's fraudulent scheme was discovered, and as described in the Amended Complaint, Defendant immediately reached out to competitors for a new job (while still employed by Plaintiff), offering the ***same code*** he had sold to Plaintiff, and offered to poach several of Plaintiff's employees as well. These actions clearly breached the Non-Compete Agreement, as well as New York law.

Thus, as described in further detail below, the Motion should be denied in its entirety.

## BACKGROUND

Defendant Arjun Vasan ("Defendant") co-founded VoiceBite, a Delaware incorporated, customer-service based company that leveraged artificial intelligence ("AI") to automate the voice ordering process for restaurants. AC, ¶ 14. Plaintiff is a technology company that offers a variety of technology and services to restaurants, helping them with first-party ordering, third-party integrations, menu management, loyalty programs, and more. AC, ¶ 13.

In early 2024, based on multiple representations made by Defendant regarding the value of the underlying intellectual property, Plaintiff began negotiating to acquire VoiceBite. AC ¶ 14. Months of negotiations culminated in Plaintiff acquiring VoiceBite, as memorialized by, *inter alia*, documents including (1) the Agreement and Plan of Merger (the "Merger Agreement") (Ex. A); (2) Assignment of IP and Other Assets (the "IP Assignment") (Ex. B); (3) Intellectual Property

Acknowledgement (the "IP Acknowledgment") (Ex. C); and (4) Non-Competition Agreement (the "Non-Compete Agreement") (Ex. D). *See* AC, ¶ 15 Plaintiff's acquisition of VoiceBite is referred to herein as the "Transaction."

Beginning at the outset of the negotiations, Defendant represented himself, and thus VoiceBite, as the owner of the proprietary code for VoiceBite's voice ordering AI application, a key asset material to Plaintiff's decision to pursue the Transaction. AC ¶ 16. Indeed, Plaintiff would not have acquired VoiceBite if it knew the code was not proprietary. AC ¶¶ 33-34.

Defendant repeatedly refused to allow Plaintiff to review the code. AC ¶ 18. But Plaintiff obtained from Defendant and VoiceBite express representations and warranties regarding the ownership and authorship of the code. AC ¶ 18. For instance, Defendant warranted that he was the owner, inventor, and/or author of intellectual property related to the VoiceBite software; that such IP was not subject to any claim or rights of any third party; that VoiceBite's products or services were not misappropriating or infringing upon any IP rights of any person; and that no source code for VoiceBite's software had been delivered or made available to any person who was not an employee of VoiceBite. *Id.*; *see also* Ex. A, Merger Agreement, § 5.9 *et seq.* These warranties were all false; and Defendant knew they were false when he made them. AC ¶ 19. Defendant also knew that, given he had prevented Plaintiff from reviewing the VoiceBite code, Plaintiff was relying on his representations as to the authorship, ownership, and rights to the VoiceBite code. AC ¶ 19.

Even after the Transaction closed, Defendant refused to provide Plaintiff with access to the code for months. AC ¶ 21. But once he realized that the writing was on the wall, and Plaintiff finally had access to the code, he began looking to work at a competing company, in violation of the Non-Compete Agreement the parties entered into as part of the Transaction. AC ¶ 23.

Defendant contacted a competitor of Plaintiff, mentioned the possibility of leaving, and the potential of bringing two of Plaintiff's engineers with him. *Id*. Defendant also sent to the competitor earlier versions of the VoiceBite code. AC ¶ 23.

As for the VoiceBite code, Plaintiff's investigation of the code revealed that its copyright dated back to as early as 2018, when Defendant was working for and had obligations to other entities. AC ¶ 24. The code contained numerous references to "Cyborg," which is a reference to Defendant's previous company, CyborgOPS. AC ¶ 25. Defendant had sold the assets of CyborgOPS to Presto Automation, yet another company with claims to the code. AC ¶ 26. Additionally, Plaintiff's investigation revealed that the code contained references to a third party, Vasan Varadarajan, who was the former founder and president of CyborgOPS. AC ¶ 27. Mr. Varadarajan's role and authorship was never disclosed, despite the fact that Defendant represented and warranted that he was the owner and author of the VoiceBite code. AC ¶ 28. In short, Plaintiff's investigation revealed that contrary to Defendant's numerous representations, Plaintiff had purchased an asset—the VoiceBite code—that was effectively worthless.

Pursuant to the forum selection clause in the Merger Agreement, designating New York state or federal courts as the exclusive jurisdiction for any legal action relating to the agreement, Plaintiff filed suit against Defendant in New York state court on February 14, 2025. Defendant subsequently removed this case to this court on April 12, 2025. Dkt. #1. On April 21, Defendant filed a motion to dismiss. Dkt. #10. The court terminated Defendant's motion, ordering that Plaintiff shall file any amended complaint as a matter of course by May 12, 2025. Dkt. #16. Plaintiff timely filed its amended complaint. Dkt. #21. Defendant filed the Motion on June 2, 2025. Dkt. #34.

## ARGUMENT

To the extent it is understandable, Defendant's motion to dismiss (the "Motion"), Dkt. #34, more closely resembles a motion for summary judgment. Defendant also filed two declarations and attached a number of extraneous documents as exhibits. Dkt. ## 35-36. But it has long been the case that, "[o]n a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (internal citation omitted). Therefore, the declaration of Defendant, as well as the declaration submitted by Defendant's father, should be entirely disregarded by the Court.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Here, the Amended Complaint, along with the documents executed by the parties relating to the Transaction, specifically and sufficiently allege that Defendant: breached the IP Assignment and IP Acknowledgment by transferring IP owned and subject to claims by third parties (Count 1); breached the Non-Compete Agreement the parties entered into as part of the Transaction by soliciting employees and competitors (Count 2); breached the implied covenant of good faith and fair dealing by depriving Plaintiff the benefit of the bargain under the IP Assignment and IP Acknowledge agreements, namely, by transferring IP owned and subject to claims by third parties (Count 3); fraudulently misrepresented the propriety of the VoiceBite code (Count 4) or, alternatively, negligently misrepresenting the propriety of the code (Count 5), thereby inducing

Plaintiff to purchase the company for millions of dollars; and should be disentitled to further compensation under the parties' agreements and relevant law (Count 6).

For the reasons set forth, below, Defendant's motion to dismiss should be denied.

## I. The Court Has Jurisdiction Over Defendant.

Defendant asserts throughout his brief that this court does not have jurisdiction over him, that venue is improper, and that this case should proceed in California. All of Defendants arguments are without merit. Plaintiff also notes that Defendant has apparently relied on generative AI to marshal arguments for him, which regrettably has resulted in a brief that is replete with holdings misattributed to cases or quotations created out of thin air.[3]

### A. The Forum Selection Clause is valid and enforceable.

"It is well established that 'parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (citation omitted). "Where an agreement contains a valid and enforceable forum

---

[3] *See, e.g.*, Motion at p. 26, at n. 93. There, Defendant cites *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995) with the following quoted language in parentheticals: "[t]he substantiality requirement is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."). Although not necessarily inconsistent with the decision, the first half of this quote does not exist, and is presumably the result of a generative AI hallucination (or Defendant decided to put quotes around his paraphrased understanding of that court's decision). This is unfortunately only one of several such examples in Defendant's brief.

In the next footnote, Defendant cites a 2001 Second Circuit opinion, *Iragorri v. United Techs. Corp.*, 274 F.3d 65, arguing that "Even when a plaintiff chooses its home forum, that choice receives less deference if '**the circumstances indicate that the choice of forum was motivated by forum-shopping reasons**.' *Id.* at 72." (quoted language in bold) Similarly, this bolded language beginning with "the circumstances…" is not located in the opinion cited by Mr. Vasan. *See* Motion at p. 26, n. 95.

Elsewhere on page 6 Mr. Vasan quotes the Ninth Circuit as stating "A forum selection clause applies only to disputes relating to the interpretation and performance of the contract itself," and Mr. Vasan cites to *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). This quote is not found in the decision, nor is anything similar to be found in footnote 5.

selection clause ... it is not necessary to analyze jurisdiction under [the state] long-arm statute or federal constitutional requirements of due process." *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (citation omitted). This is because "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." *Id.* (citation omitted).

When determining whether a forum selection clause is enforceable, courts look to "(1) 'whether the clause was reasonably communicated to the party resisting enforcement'; (2) whether the clause is 'mandatory or permissive, i.e., ... whether the parties are required to bring any dispute to the designated forum or simply permitted to do so'; and (3) 'whether the claims and parties involved in the suit are subject to the forum selection clause.'" *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014).

Here, there is no dispute that the forum selection clause was reasonably communicated to Defendant. Second, the clause is mandatory: "***[a]ny*** legal action" or proceeding relating to the agreement "***will*** be brought or otherwise commenced ***exclusively*** in any state or federal court located in the County of New York, State of New York" (emphasis added). Ex. A, Merger Agreement, § 9.7(b). The expansive language that "any legal action" will be brought "exclusively" in New York demonstrates that the clause is mandatory rather than permissive. *See St. Etienne*, 462 F. Supp. 3d at 343 (explaining that a forum selection clause is mandatory when the parties are required to bring any dispute to the designated forum).[4] Additionally, the parties further "expressly and irrevocably consent[] and submit[] to the jurisdiction of each state and federal court located in … New York." Ex. A, Merger Agreement, § 9.7(b)(i). That irrevocable consent operates as a

[4] Indeed, Defendant has effectively admitted that this action is related to the Merger Agreement by (incorrectly) demanding that Plaintiff deliver all filings pursuant to the notice provision within the Merger Agreement. *See* Email from A. Vasan to R. Keech dated 5/28/2025, Ex. E ("However, I must reiterate that Section 9.11 of the Merger Agreement expressly requires that all legal notices and communications be delivered by overnight courier (e.g., FedEx, UPS, or equivalent), unless otherwise agreed in writing. I do not agree.")

waiver of any claims of *forum non conveniens*, further demonstrating that the forum selection clause is mandatory. *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009).

Finally, all of Plaintiff's claims, including the claim for fraudulent inducement of the Merger Agreement, which was entered into by Plaintiff and Defendant, are subject to the broad forum selection clause of that agreement, which applies to "[a]ny legal action … relating to this Agreement." *See Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1085-86 (Del. Ch. 2021) ("[A] claim for fraudulent inducement arises out of the contract that the plaintiff was fraudulently induced to execute, bringing the claim within the scope of the forum selection provision in the agreement."); *Martinez*, 740 F.3d at 224 (holding that interpretative questions about the meaning and scope of the forum selection clause are resolved under the substantive law designated in a valid contractual choice-of-law clause).[5]

B. The Forum Selection Clause is not unreasonable.

Plaintiff vaguely alleges that the forum selection clause in the Merger Agreement is not enforceable, but this argument is without merit. A forum selection clause is presumptively valid, and will control "absent a strong showing that it should be set aside." *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 372 (S.D.N.Y. 2002). The presumption may be overcome "by a clear showing that the clauses 'are unreasonable under the circumstances.'" *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Forum selection clauses are unreasonable if: (1) their incorporation

[5] Defendant's argument that the forum selection clause applies only to "joint, shareholder-related" claims (Def.'s Memo. at 23-24) is nonsensical. Additionally, the agreement makes no distinction between "joint, shareholder-related" claims and other types of claims for purposes of the forum selection clause. Rather, the clause, by its very words, applies to "any legal action or other Legal Proceeding ***relating to*** this Agreement or the enforcement of any provision of this Agreement." Ex. A, Merger Agreement, § 9.7(b) (emphasis added).

into the agreement was a result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum; or (4) trial in the selected forum will be so difficult and inconvenient that plaintiff effectively will be deprived of its day in court. *Martinez*, 740 F.3d at 228.

There is no reasonable argument that the incorporation of the forum selection clause into the Merger Agreement was the result of fraud or overreaching, particularly because, as Defendant himself admits, the parties to the Merger Agreement were represented by counsel. Motion at 25, n. 90. Nor can there seriously be any argument that the law of New York is fundamentally unfair. Forum selection clauses are routinely upheld under New York law. *See, e.g.*, *Koob v. IDS Fin. Servs., Inc.*, 213 A.D.2d 26, 33 (1st Dep't 1995) ("It is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation."). And Defendant will not "be deprived of his day in court," as "mere inconvenience and expense of traveling are not themselves adequate reasons to disturb the parties' contractual choice of forum." *Strategic Marketing & Comms., Inc. v. Kmart Corp.*, 41 F. Supp. 2d 268, 274 (S.D.N.Y. 1998); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013) ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

The forum selection clause is valid. And Defendant has failed to make any showing, let alone a "strong" one, that the forum selection clause should be set aside.

C. New York is the proper forum for all claims.

Defendant then contends that New York is not the proper forum because the complaint asserts claims that arise under "ancillary agreements" that do not contain forum selection clauses. Motion at 22.

It is true that the Merger Agreement and the Non-Competition Agreement contain forum selection clauses and the IP Assignment and IP Acknowledgment do not. However, this is of no moment. The broad forum selection clause in the Merger Agreement provides that "***[a]ny legal action*** … ***relating to*** this Agreement or the enforcement of any provision of this Agreement will be brought or otherwise commenced exclusively in any state or federal court located in the County of New York, State of New York." Ex. A., Merger Agreement § 9.7(b) (emphasis added). Here, the claims pursuant to the IP Assignment and IP Acknowledgment (Claims 1 and 3) relate to the Merger Agreement, as they seek to remedy the harm caused by Defendant making false representations and warranties concerning the VoiceBite code's original authorship and exclusive ownership. *Compare* Claim 1, AC ¶ 44 (Defendant breached the IP Assignment and IP Acknowledgment "including by bringing intellectual property owned and subject to claims by third parties and failing to provide rights to VoiceBite's intellectual property"), with Claim 3, AC ¶ 54 (Defendant breached the implied covenant of good faith and fair dealing in the IP Agreement and IP Acknowledgement "by knowingly and intentionally depriving [Plaintiff] of its rights to obtain benefits under these agreements, making false representations and warranties concerning the VoiceBite application code's original authorship and exclusive ownership").

Indeed, in Section 5.9(f) of the Merger Agreement, which is explicitly integrated in the IP Acknowledgment, Defendant represented that the VoiceBite code did not misappropriate, violate, or infringe upon any intellectual property rights of any individual, corporation, LLC, or other organization. Ex. A, Merger Agreement § 5.9(f) Delaware courts[6] consistently hold that broad forum selection clauses that apply to claims that "relate" to the contract encompass all claims that

[6] "[I]nterpretive questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Martinez*, 740 F.3d at 224. Defendant does not appear to contest the validity of the choice-of-law clause in the Merger Agreement, which calls for application of Delaware law.

touch on the contract, not just claims for breach of contract. *See Flotek Indus.*, 262 A.D.3d at 1087 ("The claim … for aiding and abetting Snively's breaches of fiduciary duty does not arise under the Terpene Agreement, but it relates sufficiently to the Terpene Agreement to fall within the scope of the Delaware Forum Provision."); *ASDC Holdings, LLC v. Richard J. Malouf 2008 All smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *5 (Del. Ch. Sep. 14, 2011) (holding that broad forum selection clauses, which cover "all claims between the contracting parties that 'arise out of' or 'relate to' a contract, apply not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance'" (citation omitted)). As such, Counts 1 and 3 of the Amended Complaint sufficiently relate to the Merger Agreement to fall within the scope of its broad forum selection clause.[7]

Under Delaware law, "related contemporaneous documents should be read together." *Ashall Homes Ltd. v. ROK Entertainment Grp. Inc.*, 992 A.2d 1239, 1250 (Del. Ch. 2010). All four of the relevant Transaction agreements were executed the same day—April 30, 2024—by the Plaintiff[8] and Defendant. All four agreements relate to Plaintiff's acquisition of VoiceBite. Indeed, the IP Acknowledgement specifically states that it is being "entered into … in connection with [Plaintiff] entering into the [Merger Agreement]" with Defendant. Because the agreements all

---

[7] Count 6 for Declaratory relief, like Counts 1 and 3, is similarly related to the Merger Agreement. Plaintiff alleges that Defendant "represented in the [Transaction] agreements … and otherwise that he and VoiceBite were the exclusive authors and/or owners of the code forming the basis of VoiceBite's technology and further represented that no representation [] made in connection with the Transaction contained any untrue statement of material fact…." AC ¶ 67. Plaintiff also alleges that, because of Defendant's "pervasive breaches of representations and warranties, fraud and other misconduct, [Defendant] breached the[] obligations" set forth in the Transaction documents, "giving rise to [Plaintiff's] right to indemnification and disentitling [Defendant] to further compensation under any relevant agreements." AC ¶ 68.

[8] The IP Assignment was executed by VoiceBite and Defendant. Plaintiff, as the surviving corporation after its merger with VoiceBite, assumed all rights and responsibilities of VoiceBite under that agreement. 8 Del. C. § 259(a).

relate, claims arising out of the IP Assignment or the IP Acknowledgment are still subject to the broad forum selection clause of the Merger Agreement, the core agreement underlying the transaction. *See Simon v. Navellier Series Fund*, 2000 WL 1597890 (Del. Ch. Oct. 19, 2000) (holding that the trustee was required to bring his indemnification claim in the venue the parties selected in Indemnification Agreement, even though the claim was based on a related agreement which did not contain a venue provision); *Centene Corp. v. Accellion, Inc.*, 2022 WL 898206, at *12 (Del. Ch. Mar. 28, 2022) (applying forum selection clause of one agreement to claims arising from second, related agreement, that did not contain a forum selection clause); *CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *48 (Del. Ch. Dec. 7, 2009) (holding forum selection provision in "fundamental" agreement applied to ancillary agreement that did not contain a forum selection provision), *aff'd*, 8 A.3d 1143 (Del. 2010).

D. The First-to-File Rule does not override the Forum Selection Clause.

Throughout his brief, Defendant alludes to a California action that he filed against Plaintiff a few weeks before the instant suit. In that suit, Mr. Vasan broadly alleged retaliation and wrongful termination by Checkmate and purported to bring a variety of claims against Checkmate, including under the Family and Medical Leave Act ("FMLA") and other claims under California state law.[9] Because Defendant filed that suit shortly before Plaintiff filed this action, Defendant argues that the "first-filed rule," which "gives priority to the court where litigation was first initiated," should apply. Motion, at 21.

It is true that, "as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum

[9] Defendant separately argues that the forum selection clause of the Merger Agreement is voidable by operation of California Labor Code § 925. However, as discussed *infra* Section I(E), section 925 applies in the context of forum selection clauses included in employment agreements (which the Merger Agreement is not). Thus, there is no basis for the court to dismiss Plaintiff's complaint on the basis of section 925.

in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing." *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281, 283 (Del. 1970). However, the first-to-file rule does not apply "in cases where a contract identifies [a specific state] as the chosen forum in a legally enforceable forum selection clause." In that situation:

> where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the [first-to-file] principle might otherwise require a different result. The reason is that the [first-to-file] principle is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement.

*Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145-46 (Del. 2010) (the forum selection clause named "either Delaware or New York as the chosen forum").

So too here. The forum selection clause in the Merger Agreement names New York as the exclusive jurisdiction in which to bring suit. Ex. A, Merger Agreement § 9.7(b). Because the parties here expressly agreed upon a legally enforceable forum selection clause, the court should honor the contract and enforce the forum selection clause.[10]

E. Defendant's other arguments are without merit.

Defendant's other attempts to avoid the forum selection clause similarly fail.

***First***, Defendant argues that any employment-related claims are subject to California Labor Code § 925, and that because Plaintiff seeks declaratory relief "to 'disentitle' him from

---

[10] In addition, Defendant's lawsuit in California was likely initiated (at least in part) in a misguided attempt to preempt accountability in this forum, as Mr .Vasan was on notice that Checkmate was investigating potential breaches of the Merger Agreement by Mr. Vasan and was likely to bring suit against him. For instance, as early as December 6, 2024, Plaintiff sent a letter to Defendant's then-counsel (which Mr. Vasan attached to his declaration as Exhibit Y) informing Defendant that Plaintiff was investigating his numerous breaches of the Merger Agreement and that Plaintiff sought indemnification. This is another reason to decline application of the first to file rule. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (stating that a court may depart from the first to file rule "when the first suit was filed as a result of forum shopping or when the first suit was a result of anticipatory filing.")

compensation earned through employment, the clause is voidable at his election." Motion at 24-25. Defendant's argument is misguided. It cannot seriously be argued that the Merger Agreement is an employment contract or contains a condition of employment such that it is subject to Section 925. And the fact that Plaintiff seeks a declaration under the Transaction related agreements (Claim 6) in no way impacts the enforceability of the forum selection clause in the parties' Merger Agreement – which Defendant, in his individual capacity and while represented by counsel – signed.

***Second***, Defendant cites to 28 U.S.C. §§ 1391, 1404, and 1406, and argues that California, not New York, is the proper forum for this action. Motion at 25-28. He is mistaken.

When faced with a defendant's motion to dismiss on grounds of *forum non conveniens*, federal courts typically assess "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (citation omitted). However, the analysis "changes 'when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *In re Nine West Holdings, Inc.*, 614 B.R. 175, 183 (S.D.N.Y. 2020) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). In such cases, the court first examines whether the forum selection clause is mandatory and presumptively enforceable. *Id.* at 183-84. And as discussed above in Section I(A), the forum selection clause is valid and enforceable. Defendant does not, and cannot, argue to the contrary. *Id.* (explaining that defendant carries the "heavy burden" of overcoming the enforceability of the forum selection clause).

Then, "[w]here a presumptively valid mandatory forum selection clause exists, the *forum non conveniens* analysis is modified. The 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.' In addition, in such a circumstance, a court 'must deem the private-interest factors to weigh entirely in favor of the preselected forum." *In re Nine West*, 614 B.R. at 184 (citations omitted, cleaned up). "As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64 (internal citation omitted).

This is not that "unusual" case in which the forum-selection clause should not control, and Defendant's arguments as to the public interest factors do not change that fact. Motion at 27-28. Even if California has a compelling interest in adjudicating disputes involving its residents, so too does New York—the principal place of business of Plaintiff. *In re Nine West*, 614 B.R. at 185 (holding that the dispute has a connection to the forum because Plaintiffs' principal place of business is New York). And contrary to Defendant's unsupported assertions, Labor Code § 925 does not apply to *this* case or the claims raised herein. Finally, there is no conflict-of-laws analysis; the Transaction agreements are governed by Delaware law. Simply put, the public interest factors do not outweigh the forum selection clause.[11]

***Third***, Defendant contends that Plaintiff failed to sufficiently effect service of process. But Defendant, who attempted (unsuccessfully) to evade service of process, misunderstands the

---

[11] Defendant attempts to get around the forum selection clause by arguing that Plaintiff has somehow waived enforcement of the provision by failing to follow the Merger Agreement's "joint dispute resolution procedures." Motion. at 23. Defendant believes that Plaintiff needed to pursue this litigation against the Holder Representative, pursuant to Section 9.1 of the Merger Agreement despite the fact that Plaintiff has brought claims only against Defendant individually, and not the other shareholders and/or officers of VoiceBite. Simply put, the Holder Representative provision does not apply, as there is no need for a representative "to act on behalf of the Pre-Closing Holders…." Merger Agreement, Ex. A § 9.1(a).

requirements of service under New York law. Plaintiff initially filed this case in New York Supreme Court and served Defendant with the Summons and Complaint. Specifically, a process server made several diligent attempts to serve Plaintiff in several places, including at what he claims to be his residence in California, 12615 193rd Street, Cerritos, CA 90703, and ultimately affixed a copy of the summons and complaint to Defendant's door and mailed another copy to Defendant at the same address. *See* Ex. F, Affirmation/Affidavit of Service dated May 6, 2025. This is consistent with New York law, which permits "nail and mail" service. *See* N.Y. CPLR 308(4) ("where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business…").[12]

Defendant claims that "legal notices—including service of process" must be sent to him by overnight courier (i.e. FedEx or UPS) pursuant to § 9.11 of the Merger Agreement. *See* Ex. E, May 28, 2025 Email from A. Vasan to R. Keech; Motion at 28. Putting aside Defendant's apparent admission that the Merger Agreement (and its forum selection clause) governs this dispute, in any

---

[12] Moreover, Defendant's argument that an incorrect address on the original as-filed summons in New York State court somehow renders the summons fatally defective and deprives the Court of personal jurisdiction over Defendant is entirely without merit, and Defendant cites no case to support such a proposition, particularly where (as here) Defendant was timely served with the Complaint and Summons at his address, and Plaintiff took the extra step of amending the original summons after removal. *See Ludmer v. Hasan*, 33 A.D.3d 594, 594 (2d Dep't 2006) (error in address to which summons was mailed did not render service of process void where it was virtually certain that the summons w[ould] arrive at its intended destination) (internal citations omitted). Here, there is no question that the original summons did arrive at its intended destination, as Mr. Vasan began threatening undersigned counsel with a motion for sanctions for filing the New York Complaint less than a week after receiving a copy of Summons and Complaint at his Cerritos, CA address on March 4, 2025.

event, it is based on Defendant's own misreading of the Merger Agreement. This provision relates to notices "required or permitted by this Agreement," and does not concern the service of process.

Plaintiff has clearly served Defendant with the summons and complaint, and Defendant's contentions are without merit.

## II. Plaintiff Has Adequately Alleged a Cause of Action for Fraud.

The Court can similarly dispense with Defendant' attempt to claim that the requirements for pleading a case for fraud have not been satisfied, as Plaintiff's well-pleaded allegations adequately allege fraud under New York law. *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 461 (S.D.N.Y. 2007) (denying motion to dismiss New York common law fraud claim). "To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003). It cannot be disputed that the complaint adequately pleads these elements: Defendant represented that he and VoiceBite were the original author and exclusive owner of the VoiceBite application code, that the code was not subject to any claim or rights of any third party, and that no source code for VoiceBite had been delivered or made available to any person who was not an employee of VoiceBite. AC ¶ 57. All of those representations were false: Defendant and VoiceBite were not the original author of the code, they were not the exclusive owner of the code, and third parties had claims to the code as a result of Defendant previously selling them the code. AC ¶¶ 25-29. Defendant actively concealed the source code from Plaintiff. AC ¶¶ 17-21. The amended complaint alleges that Defendant knew these representations were false when made, ¶¶ 35, 58, and that Plaintiff reasonably relief on the representations when entering into the agreement to purchase VoiceBite. ¶¶ 34, 59-60. Finally, the amended complaint

alleges that Plaintiff was injured by paying millions of dollars for a company—more specifically, for what Plaintiff believed to be the company's proprietary code—that ended up not being worthless, as neither Defendant nor VoiceBite were actually the exclusive owner or rights holder to the code. ¶¶ 33, 59.

A. The Amended Complaint satisfies Rule 9(b)'s pleading requirements.

To adequately state a claim for fraud, a complaint must also "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted). The amended complaint contains extensive, particular allegations as to each of these elements. To summarize, it alleges that Defendant knowingly materiality misrepresented the very heart of VoiceBite's asset—its "proprietary" code—to induce Plaintiff to purchase VoiceBite and enrich Defendant. It also alleges that Defendant misrepresented himself as the owner, inventor, and/or author of the VoiceBite code. The amended complaint asserts that Defendant made these misrepresentations leading up to the closing of the transaction and execution of the Merger Agreement on April 30, 2024. And it alleges why the statements were fraudulent: (1) Defendant had created the code along with another individual who also has an interest in the code (AC ¶ 24-25); (2) the code was first developed while Defendant was previously working at a third-party company, so that company has an interest in the code (¶ 21); and Defendant sold the code to yet another third-party, who therefore also has an interest in the code (Complaint ¶ 22-23). Defendant also actively concealed the code from Plaintiff prior to the Transaction. AC ¶¶ 17-21. These allegations are specific and meet Rule 9(b)'s pleading requirements.

B. Even Construing Defendant's Undeveloped Arguments as Favorably as Possible, Defendant's Arguments are Without Merit

Defendant asserts numerous undeveloped arguments in his quest to avoid the clear and specific allegations of his fraud. But it is readily apparent that Defendants' claims are without merit.

***First***, Defendant contends that the Amended Complaint lacks temporal and geographic specificity. Motion at 14. But to satisfy Rule 9(b), "a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 162 (S.D.N.Y. 2008). Here, the Amended Complaint clearly alleges that Defendant made the material misrepresentations (or omissions) in the spring of 2024, leading up to Plaintiff acquiring VoiceBite on April 30, 2024. (AC ¶ 13-16). That timeframe is more than sufficient to give a fair and reasonable notice to Defendant of the misrepresentations and omissions that underlie Plaintiff's claim. Indeed, Defendant does not claim otherwise. *See* Motion at 14 ("Every location where negotiations occurred, every meeting where representations were allegedly made, and every discussion about the technology took place in California."). *See also Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015) ("[A] complaint need only apprise a defendant of the 'general time period' of any alleged misstatements to meet the requirements of Rule 9(b)."); *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 337 (S.D.N.Y. 2025) (holding that allegations that Defendants made material misstatements "since before 2020" was sufficiently particularized).

***Second***, Defendant incorrectly claims that the amended complaint fails to include particularized allegations of scienter. Motion at 14. The amended complaint alleges that Defendant "knew" his representations were false "when he was making them." AC ¶ 16. It further alleges that

Defendant's "misrepresentations regarding the originality and ownership of the code were knowing falsehoods that he told with full awareness of their materiality to [Plaintiff's] decision to acquire VoiceBite." AC ¶ 31. Indeed, the amended complaint asserts that, despite knowing his representations were false and that Checkmate would rely on them, he "intended" at the time of the transaction to be paid "no matter what." *Id.* ¶ 52. Defendant also actively concealed the code from Plaintiff because he knew that his representations were false. AC ¶¶ 17-21. These allegations more than meet the requirements of Rule 9(b), which provides that elements of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (holding that a plaintiff may establish a strong inference of fraudulent intent either by alleging facts to show that defendant had both the motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness).

***Third***, according to Defendant, the Amended Complaint does not allege that the misrepresentations were material to Plaintiff's decision to enter the transaction or would have altered the value of VoiceBite's business. Motion at 15. That is false. The amended complaint specifically alleges that the VoiceBite code was "a key asset material to [Plaintiff's] decision to pursue the acquisition because it would provide [Plaintiff] with the ability to be a very early mover into the nascent but potentially enormous AIU-assisted restaurant ordering space." AC ¶ 16. The amended complaint further asserts that the VoiceBite code was the very "heart of VoiceBite," and that Plaintiff would not have agreed to acquire VoiceBite of its core technology (the code) was not what Defendant claimed it to be. AC ¶¶ 33-34.

***Fourth***, Defendant asserts that Plaintiff cannot claim reasonable reliance. Motion at 16. Defendant pretends that Plaintiff claims it was duped by "obvious, easily discoverable

information," and that Plaintiff "could have required a code review before proceeding." *Id.* But Defendant's ***factual*** claim is inappropriate for resolution on a motion to dismiss. Defendant is simply ignoring the allegations of the Amended Complaint. The Amended Complaint asserts that, *inter alia*, Defendant was "evasive about allowing [Plaintiff] to review what he claimed to be VoiceBite's proprietary code," and that Defendant's evasiveness is what prompted Plaintiff to obtain express representations and warranties from Defendant regarding his ownership and authorship of the code. AC ¶ 18. It also alleges that the code was a key asset and was material to Plaintiff's decision to acquire VoiceBite (AC ¶ 16), that Plaintiff relied on Defendant's representations and warranties when deciding to acquire VoiceBite (AC ¶ 59), and that Defendant's "intentional misrepresentations and fraudulent statements were material and intended to induce [Plaintiff] into paying [Defendant] millions of dollars" (*id.*). It is more than reasonable to infer that Plaintiff relied on Defendant's statements as to his ownership and authorship of the code—which was at the core of VoiceBite's business—when deciding to purchase VoiceBite. And, in any event, whether reliance on a misrepresentation is reasonable "is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008).

***Fifth***, Defendant asserts that the amended complaint does not assert cognizable damages. Motion at 16. But it does. The amended complaint specifically alleges that, because of Defendant's misrepresentations as to the code, Plaintiff "had been duped into acquiring a valueless non-asset," and paid millions of dollars for it. AC ¶¶ 33, 59. While the exact amount of damages will be proved at trial, at this stage, Plaintiff has met its pleading obligations. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007) ("In agreeing on GEM's purchase price, we assume the parties placed value on its intrinsic qualities, including its key personnel and its financial

performance. If appellant proves [appellee] fraudulently misrepresented those qualities, it may show that it has acquired an asset at a price that exceeded its true value.”).

***Finally***, Defendant asserts that Plaintiff’s claim for negligent misrepresentation (Count 5) fails because Defendant did not owe Plaintiff a duty of care. Motion at 16. Initially, “the determination of whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage.” *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 416 (S.D.N.Y. 2010). In any event, the amended complaint alleges that, at the outset of the negotiations to purchase VoiceBite, Defendant “represented himself … as the owner of proprietary code for VoiceBite’s ordering AI application.” AC ¶ 16. It then alleges that Defendant knew that Plaintiff would rely on Defendant’s material representations and warranties when deciding whether to enter into the Merger Agreement with VoiceBite and whether to pay Vasan significant amounts of money. AC ¶¶ 19, 64. And the amended complaint also asserts that, as part of the Transaction, Defendant would be given an executive role at Plaintiff. *Id.*, ¶ 17. These allegations are more than sufficient to allege a special relationship. *See id.* (holding that, for purposes of pleading a special relationship, “it is enough that Plaintiffs allege defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information”) (internal quotations omitted); *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373-74 (S.D.N.Y. 1999) (finding that plaintiff adequately alleged a special relationship where, *inter alia*, the defendants made representations “based on their superior information” regarding the company’s financial condition, and after the transaction the defendants received positions of trust, thus “establishing a continued relationship” with plaintiff).

**III. Plaintiff Has Adequately Pled a Breach of the Non-Compete Agreement.**

A. The Amended Complaint Alleges that Defendant Breached the Non-Compete Agreement.

As part of the sale of VoiceBite to Plaintiff, the parties entered into the Non-Compete Agreement, dated April 30, 2024, the same day as the other Transaction agreements. Pursuant to the terms of the Non-Compete Agreement, Defendant is prohibited from, *inter alia*, engaging or participating in or acquiring any financial or beneficial interest in any business that competes with Plaintiff's business of providing AI-powered voice systems for phone answering or for restaurant drive-through voice ordering. AC ¶ 48.[13] The amended complaint alleges that Defendant breached the Non-Compete Agreement by contacting a competitor of Plaintiff for the purpose of attempting to solicit interest in acquiring the same code and employees provided to Plaintiff as part of the Transaction. AC ¶ 50. Those allegations are sufficient at this stage. *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 443 (S.D.N.Y. 2011) (holding that allegations that defendants solicited employees to leave plaintiff for a competitor and that defendants solicited plaintiff's customers were sufficient to survive motion to dismiss).

B. The Non-Compete Agreement is not Void Under its Own Terms

Defendant then claims that the Non-Compete Agreement is void because, he asserts, the Agreement terminates under its own accord if the Defendant is terminated without Cause, and "Cause" is to be determined by a specified mediation process that Plaintiff has not invoked. Motion. at 13. According to Defendant, because Plaintiff has asserted elsewhere that Defendant

[13] The Non-Compete Agreement also provides that Defendant will not "induce or assist any other Person" to "engage or participate in" "any business that competes" with Plaintiff (Section 2), and that Defendant will not "induce or assist any other Person" to "solicit or attempt to solicit any of employees" of Plaintiff (Section 3). Ex. D.

was fired for cause, Plaintiff is estopped from asserting any theory of "cause," and thus the Non-Compete Agreement is void as a matter of law.

This is a simply a red herring. Defendant himself acknowledges that he solicited employment at a competitor while he was still affiliated with Plaintiff. *See* Def.'s Memo. at 10 ("[L]ooking for work, especially under *active threat of termination*, is not competing."). It is for *those* actions—actions that Defendant took while still affiliated with Plaintiff—that Plaintiff brings a claim for breach of the Non-Compete Agreement. But whether Defendant was fired for Cause and thus whether the Non-Compete Agreement has automatically terminated is simply not at issue in this case.

C. Defendant's remaining arguments interpreting the Merger Agreement are without merit.

i. *Failure to Satisfy a Condition Precedent*

Defendant asserts that any claim for a transaction-related breach must proceed through the Holder Representative under Section 9.1 of the Merger Agreement. This reflects a misunderstanding the purpose of the Holder Representative.

Section 9.1 of the Merger Agreement provides that "the parties agree that it is desirable to designate a representative to act on behalf of the Pre-Closing Holders [the shareholders of VoiceBite] with respect to all matters arising under this Agreement." Section 9.1(b) states that the Holder Representative has the power to represent the Pre-Closing Holders, "including the right to defend, settle, compromise or take any other action with respect to any matter for which Indemnified Parties seek indemnification under Section 8…." This case does not assert any claims against the Pre-Closing Holders, defined in the Merger Agreement as the shareholders of VoiceBite. This is a direct claim against Mr. Vasan only. In addition, Plaintiff does not seek

indemnification from the Pre-Closing Holders. The Holder Representative provision of the Merger Agreement is simply not relevant.

ii. *Equitable Estoppel*

Defendant then contends that Plaintiff served a Notice of Claim on the Holder Representative on January 29, 2025, that Defendant "reasonably relied on this conduct," and so Plaintiff should be equitably estopped from bringing this suit against Defendant individually. Motion at 18-19.

Initially, this is an inappropriate argument at the motion to dismiss stage, as it relies on matters entirely outside of the Amended Complaint and, in fact, seeks a merits determination. Regardless, this argument has no merit. Whether Plaintiff sent a pre-suit letter to the Holder Representative, on behalf of all shareholders, is entirely irrelevant to, and has no bearing on, whether Plaintiff can pursue claims in this litigation against only the Defendant individually. Clearly, Plaintiff can. And Plaintiff is not "isolating Defendant" for "alleged breaches that arose from corporate representations and collective-decision making." Motion at 19. In reality, as set forth in the Amended Complaint, Defendant personally made false representations to induce Plaintiff into acquiring VoiceBite. The Amended Complaint seeks to hold Defendant accountable for his, and only his, actions leading up to, during, and after the Transaction.

## CONCLUSION

For all of the reasons described above, Plaintiff respectfully requests that Defendant's motion be denied in its entirety.

Dated: June 16, 2025

Respectfully submitted,

K&L GATES LLP

By: */s/ Thomas A. Warns*

Thomas A. Warns
Zach S. Jones
tom.warns@klgates.com
599 Lexington Avenue
New York, NY 10022
Telephone: 212-536-3900

Ryan Q. Keech (admitted *pro hac vice*)
Rebecca I. Makitalo (admitted *pro hac vice*)
10100 Santa Monica Blvd., 8th Fl.
Los Angeles, CA 90067
Telephone: 310-552-5000

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Checkmate.com, Inc., in accordance with your Honor's Individual Rules and Practices in Civil *Pro Se* Cases Rule 4(b), certifies that this Memorandum of Law contains 8674 words, including headings, footnotes, and quotations but excluding the caption, table of contents, table of authorities, signature blocks, and this certificate.

*/s/ Thomas A. Warns*
Thomas A. Warns