-1-

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
CHECKMATE.COM, INC.,

                    Plaintiff

    -against-

ARJUN VASAN,

                    Defendant
------------------------------------------------------X

**25-CV-3181** (JMF)

<u>DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY; FINAL ORDER IN RELATED ACTION IN THE CENTRAL DISTRICT OF CALIFORNIA</u>

**TO THE HONORABLE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

    PLEASE Defendant respectfully submits this Notice of Supplemental Authority to inform the Court that, on June 24, 2025, the United States District Court for the Central District of California entered its final order in the parallel action, *Arjun Vasan v. Checkmate.com, Inc.*, No. 2:25-cv-00765-MEMF-JPR. A true and correct copy of the order is attached as Exhibit A.

Dated **Thursday, June 26, 2025,**

  In **Cerritos, California**

Respectfully Submitted,

*/s/ Arjun Vasan*

**Arjun Vasan**
Defendant *Pro Se*

-1-

# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>               Plaintiff,<br><br>    v.<br><br>CHECKMATE.COM, INC.,<br><br>               Defendant. | Case No.: 2:25-cv-00765-MEMF-JPR<br><br>**ORDER DENYING MOTION TO DISMISS OR TRANSFER (ECF NO. 18) AND ORDER DENYING MOTION FOR LEAVE (ECF NO. 48) AND MOTION TO STRIKE (ECF NO. 57) AS MOOT** |

    Before the Court is a Motion to Dismiss or Transfer filed by Defendant Checkmate.com, Inc. ECF No. 18. For the reasons discussed below, the Court DENIES the Motion.

/ / /

/ / /

**SUMMARY OF ORDER FOR PRO SE PLAINTIFF**

You filed this lawsuit on January 28, 2025, alleging wrongful termination, fraudulent inducement, and related claims. Defendants have moved to dismiss or transfer your case contending that the Central District of California is not the proper venue for your claims. However, as explained in the following order, the Court finds (1) that this venue is proper for your claims because most of the relevant events to your claims arose in California, (2) that the forum selection clauses contained in certain contracts are not valid under California Labor Code Section 925, and (3) that there are no other persuasive reasons to transfer your case.

Although you are a *pro se* litigant (meaning you do not have an attorney), you still have to follow Court orders, the Local Rules, and the Federal Rules of Civil Procedure. *See* C.D. Cal. L.R. 83-2.2.3. The Local Rules are available on the Court's website, http://www.cacd.uscourts.gov/court-procedures/local-rules.

The Court cannot provide legal advice to any party, including you. There is a free "*Pro Se* Clinic" that can provide information and guidance about bringing a lawsuit in this Court.

- Public Counsel runs a free Federal *Pro Se* Clinic where *pro se* litigants can get information and guidance. The Clinic is located at the Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, CA 90012 *Pro se* litigants must call or submit an on-line application to request services as follows: on-line applications can be submitted at http://prose.cacd.uscourts.gov/los-angeles, or call (213) 385-2977, ext. 270.
- Public Counsel also has extensive resources for *pro se* litigants at its website located at https://publiccounsel.org/services/federal-court/.
- The Court is also informed that the LA Law Library, located across the street from the First Street Courthouse at 301 W. First Street, Los Angeles, CA 90012, also has extensive resources for *pro se* litigants. The LA Law Library can be reached via email at reference@lalawlibrary.org, or via telephone at (213) 785-2513.

/ / /

/ / /

# BACKGROUND

## I. Factual Background[1]

Plaintiff Arjun Vasan co-founded VoiceBite Corporation ("VoiceBite") with Chris Lam and Robert Nessler (collectively, the "Founders") in July of 2023. Compl. ¶¶ 2, 14. In April of 2024, VoiceBite merged with Defendant Checkmate.com, Inc. ("Checkmate"). *Id.* Vasan proceeded with the merger "under pressure but also under explicit promises of good faith and compensation guarantees." *Id.* ¶ 19. Post-merger, Vasan proceeded to be employed by Checkmate under the terms of an offer letter dated April 30, 2024, between the parties. *Id.* ¶ 20; ECF No. 18-4 ("Agarwal Decl."), Ex. D (the "Offer Letter"). The parties also entered into an agreement governing Vasan's bonus structure. Compl. ¶ 21; Agarwal Decl., Ex. C (the "Bonus Agreement"). Checkmate detailed a payment schedule for two months of back pay for VoiceBite employees' work during negotiations, to be paid after closing. Compl. ¶ 22. Despite Vasan's objections to reporting to Chief of Strategy Michael Bell, Checkmate's CEO Vishal Agarwal assigned Vasan to report directly to Bell. *Id.* ¶ 23.

During his employment with Checkmate, Vasan encountered hostility in response to legal or contractual concerns he raised. *Id.* ¶ 24. Agarwal denied that Vasan's retention bonus had been triggered, and pressured Vasan to sign a "partial bonus acceleration" document stipulating to a specific payment schedule (which was not followed). *Id.* ¶ 31. On September 24, 2024, Lam went on a planned month-long leave, as Agarwal informed the team of a "make or break" customer demo scheduled for October 23, 2024. *Id.* ¶ 36. Vasan's workload doubled due to this, while the work he did was persistently undermined by Agarwal and Bell. *Id.* ¶ 37. On October 22, 2024, Vasan suffered a panic attack during a team meeting. *Id.* ¶ 39. Checkmate gave Vasan the ultimatum of either accepting a demotion or being terminated. *Id.* Vasan requested medical leave, and soon provided medical certification to Checkmate. *Id.* ¶¶ 39–40. Checkmate referred to Vasan's leave as "unpaid personal leave" and did not provide him notice of his rights under applicable law. *Id.* ¶¶ 42, 44, 45. On November 14, 2024, Checkmate terminated Vasan. *Id.* ¶ 48.

---

[1] All facts stated herein are taken from the allegations in Plaintiff Arjun Vasan's updated Complaint unless otherwise indicated. ECF No. 10 ("Compl.").

3

## II. Procedural History

Vasan's Complaint, initially filed on January 28, 2025 (ECF No. 1), and amended on February 21, 2025 (*see* ECF No. 10), brings forth ten claims against Checkmate: (1) violation of the Family & Medical Leave Act ("FMLA"); (2) violation of the California Family Rights Act ("CFRA"); (3) retaliation; (4) wrongful termination; (5) constructive discharge; (6) wage theft; (7) breach of contract; (8) unjust enrichment; (9) promissory fraud and estoppel; and (10) civil conspiracy. *See generally* Compl.

On March 26, 2025, Checkmate filed the instant Motion to Dismiss or Transfer. ECF No. 18 (the "Motion"). The Motion contained a request for judicial notice. ECF No. 18-1. On April 14, 2025, Vasan filed an opposition with a request for judicial notice.[2] ECF No. 26-1 ("Opposition").[3] On April 16, 2025, Checkmate filed a reply. ECF No. 32 ("Reply").[4] From April 22 to 28, 2025, Vasan filed eight separate requests for judicial notice. ECF Nos. 40–44, 46, 47, 50 (collectively, with the requests for judicial notice filed in the Opposition, the "Vasan RJNs").[5] On April 25, 2025, Vasan also moved to for leave to file a Sur-Reply (ECF No. 48), to which Checkmate filed an

---

[2] Vasan first filed an opposition on April 9, 2025 (ECF No. 27), but filed a Notice of Errata alongside a Corrected Opposition (ECF No. 26). The Court therefore only considers the briefing at what appears to be the corrected and most recent version of the opposition filed at ECF No. 26-1 on April 14, 2025. Nevertheless, it appears the exhibits filed in support of the Opposition were only attached to the original opposition. Thus, the Court considers that filing only for purposes of referring to the exhibits referenced. ECF No. 27 at 34–102.

[3] Vasan also filed a supplemental declaration on April 13, 2025, representing that counsel for Checkmate had not timely or meaningfully conducted a meet and confer as required by the Local Rules and this Court's standing order prior to the filing of the Motion. ECF No. 25. The Court therefore issued an order to show cause as to why sanctions should not issue on counsel for Checkmate for this deficiency on April 23, 2025. ECF No. 45 ("OSC"). On April 29, 2025, both parties filed responses to the OSC. ECF Nos. 52 ("Checkmate OSC Resp."), 53 ("Vasan OSC Resp."). The Court notes that although counsel for Checkmate emphasizes that there was what they considered to be substantive and meaningful meet and confer on the issue, there is still no explanation as to why the meet and confer only occurred one day prior to the filing of the Motion. At the hearing for the matter, the Court heard from Checkmate on why the meet and confer was untimely. Having considered counsel's response, the Court finds that the deficiency was due to excusable neglect, and thus discharges the OSC.

[4] Checkmate also filed evidentiary objections to two declarations submitted in support of the Opposition. ECF No. 32-7. The Court does not find the majority of the statements objected to material to the findings it makes herein, so it does not reach the evidentiary objections except as specifically addressed in this order.

[5] The Court notes that Vasan appears to have updated the RJNs at ECF Nos. 40, 46, and 47 in his reply in support of his Motion to File Sur-Reply. *See* ECF Nos. 55-3–5. As explained below, the Court will consider the Sur-Reply, so the Court will also consider the updated versions of the RJNs.

opposition (ECF No. 54) and Vasan filed a reply (ECF No. 55).[6] On May 22, 2025, Vasan filed a supplemental declaration to authenticate earlier exhibits. ECF No. 56.[7] On May 31, 2025, Vasan filed a notice withdrawing the Vasan RJNs at ECF Nos. 40 (in part), 41, 42, 43, 46, 47, 50, and 51. ECF No. 59. On June 4, 2025, Checkmate filed a further request for judicial notice. ECF No. 60 (with ECF No. 18-1, the "Checkmate RJNs"). The Court held a hearing on June 5, 2025. ECF No. 65.[8]

## REQUEST FOR JUDICIAL NOTICE

### I. Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

/ / /

/ / /

---

[6] Vasan does not take any specific position on the OSC, but represents that any prejudice as to him due to the late meet and confer could be remedied by granting him leave to file a Sur-Reply and denying requests to strike his requests for judicial notice on estoppel grounds. The Court will address the issue of the requests for judicial notice separately, but finds that as Vasan represents that he was prejudiced by the late meet and confer, an appropriate remedy would be granting him leave to file his Sur-Reply. Thus, the Court considers the updated Sur-Reply (ECF No. 55-1) for this reason alone and does not find it necessary to otherwise reach the Motion for Leave to File Sur-Reply. ECF No. 48. Thus, the Motion for Leave is DENIED as MOOT.

[7] On May 29, 2025, Checkmate filed a Motion to Strike Improper Filings (ECF No. 57) seeking to strike a number of Vasan's filings made throughout this case. The Court DENIES the Motion as moot because the Court does not judicially notice the majority of the Vasan RJNs and regardless the Court's findings herein do not materially rely on any of the filings at issue.

Nevertheless, the Court emphasizes that it does not condone improper, cumulative, and/or untimely filings by any party and reminds all parties to review the Court's Standing Order and the Local Rules. Failure to abide by applicable rules will result in striking of briefing and/or sanctions as the Court deems appropriate.

[8] After the hearing, Vasan submitted a "Notice" purporting to explain a term that was discussed during the hearing. ECF No. 62. The Court considers this unsolicited supplemental briefing that was submitted without leave to do so, and therefore does not consider its substance.

## II. Discussion

In support of the Motion, Checkmate requests judicial notice of a complaint it filed against Vasan in New York as well as other filings from that action. *See* Checkmate RJNs. The Court notes that Vasan does not object to any evidentiary submissions made by Checkmate. ECF No. 49. As the Court finds the complaint to be an undisputed matter of public record, the Court will GRANT the Checkmate RJNs.

Vasan requests judicial notice in his Opposition of (1) Google search results for "Arjun Vasan"; (2) SEC filings referencing Michael Bell; (3) Notice of Claim to VoiceBite Shareholders; (4) a letter to Vasan from counsel for Checkmate; and (5) an AI-generated summary email. ECF No. 27 at 40. Checkmate objects to judicial notice of the documents as Vasan relies on them as evidence of disputed facts contained therein. ECF No. 33. As it does appear to the Court that Vasan is relying on the documents to notice facts contained therein that are not readily discernable (*see, e.g.,* ECF No. 27 (Exhibit A, Evidentiary Table)), the Court DENIES the judicial notice of these documents.[9]

Vasan also separately requests judicial notice of (1) a statement made in Checkmate's Reply (ECF No. 55-3); (2) the fact that he was not employed by Checkmate prior to the merger (ECF No. 41); (3) the "axiomatic principle that once an employer terminates an employee, the employment relationship is immediately and irrevocably severed" (ECF No. 42); (4) certain legal authorities related to the attorney-client privilege (ECF No. 43); (5) a prior order striking Vasan's complaint in Case No. 2:24-cv-11116-UA (ECF No. 44); (6) specific facts from other documents regarding his address (ECF No. 55-4); (7) press releases that reflect Bell's role (ECF No. 55-5); and (8) actions taken in the New York state action (ECF No. 50). The Court will only take judicial notice of the prior order in Case No. 2:24-cv-11116-UA as it appears to be an undisputed public record to which Vasan has not withdrawn his request. However, the Court denies taking judicial notice of any other fact or document as Vasan has either withdrawn the request (ECF No. 59) or they are not proper or necessary to take judicial notice of.

---

[9] To the extent that Vasan has attempted to authenticate certain documents (ECF No. 56), the Court may consider the exhibits without judicially noticing them. Nevertheless, the Court does not find any of the exhibits material to the findings herein.

# MOTION TO DISMISS

I.  **Applicable Law**

    A.  **Rule 12(b)(3)**

Rule 12(b)(3) provides that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . ." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Venue may be proper in: "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1)-(2). If no district would be proper pursuant to either option above, then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

Under a Rule 12(b)(3) analysis, a plaintiff's pleadings "need not be accepted as true" and the Court "may consider facts outside the pleadings." *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013). However, a court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the nonmoving party." *Id.*

If a case is brought in a district that is not the proper venue, then the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "These provisions . . . authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine*, 571 U.S. at 55 (2013); *see also In re Hall, Bayoutree Assocs.*, 939 F.2d 802, 804 (9th Cir. 1991) (determining that dismissal for improper venue must be without prejudice).

    B.  **28 U.S.C. § 1404(a)**

Under 28 U.S.C. § 1404(a), a district court may transfer a case "to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses [and] in the interest of justice." Thus, before a court can transfer an action pursuant to section 1404(a), it must find that the requested venue is one where the action could have been brought and that the

convenience of the parties and witnesses in the interest of justice favor the transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("As the district court noted, section 1404(a) requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." (internal quotation marks omitted)). To determine whether a transfer is in the convenience of the parties and witnesses and in the interests of justice, courts consider multiple factors including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

### C. Forum Non Conveniens

"The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224. Because of this harsh result, it is "an exceptional tool to be employed sparingly." *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011). At its core, the doctrine is concerned with fairness to the parties." *Id.* at 1030. To prevail, the defendant bears the burden of showing "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.*

The central focus of the first part of the inquiry—whether an adequate alternative forum exists—asks if "the *entire case* and *all the parties* can come within the jurisdiction of that forum." *Gutierrez*, 640 F.3d at 1029 (emphasis added). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Dismissal is not justified simply where a case involves conduct or parties from oversees. *Carijano*, 643 F.3d at 1224. "The burden of showing the existence of an adequate alternative forum is the defendant's." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th

Cir. 1983). While normally "a district court considering a § 1404(a) motion must evaluate both the private interests of the parties and public-interest considerations," a valid forum-selection clause "represents [the parties'] agreement as to the most proper forum, and should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 48, 51 (2013) (internal quotations and citations omitted).

## II. Discussion

Checkmate seeks to dismiss or transfer the case, contending that the venue is improper under Section 1391(b), that there is a valid and enforceable forum selection clause, and that the factors for discretionary transfer under Section 1404(a) are otherwise met. For the reasons discussed below, the Court finds that this district is a proper venue, and that neither the forum selection clause nor any other factors supporting discretionary transfer weigh in favor of transferring the case.

### A. The Court Finds that the Central District of California is a Proper Venue.

Checkmate contends that it does not reside in California[10]—hence, the first venue prong ("judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," *see* 28 U.S.C. § 1391(b)(1)) is not met. Checkmate next argues that the relevant acts alleged occurred in Texas and New York, not California—hence, the second prong ("a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," *see* 28 U.S.C. § 1391(b)(2)) is not met. However, Vasan's contention is that key claims arose in California. *See* Opposition at 5.[11] As explained next, the Court finds that a substantial part of the events giving rise to Vasan's claims, whether grounded in his employment-based claims or his contract-based claims, arose in California.

"In a tort action, the locus of the injury is a relevant factor" in determining whether Section 1391(b)(2) is met. *See Fiore v. Walden*, 688 F.3d 558, 587 (9th Cir. 2012), *rev'd on other grounds*,

---

[10] Vasan does not dispute that Checkmate is a Delaware corporation with its principal place of business in New York, nor that it does not have any physical offices in California. Agarwal Decl. ¶¶ 3–4.

[11] Although Vasan's argument with regards to improper venue focuses on the issue of personal jurisdiction over Checkmate, to the extent the Court finds that a substantial part of the events giving rise to the claims occurred in California, it need not reach the issue of personal jurisdiction under 28 U.S.C. § 1391(b).

9

571 U.S. 277 (2014); *see also Myers v. Bennett Law Offs.*, 238 F.3d 1068, 1078 (9th Cir. 2001) (finding venue proper in Nevada because "at least one of the 'harms' suffered" by the plaintiffs was "felt in Nevada").[12] Here, Vasan represents that although he temporarily moved to Texas for approximately 56 days after three months of employment with Checkmate, he returned to California on September 30, 2024, where he remained through his separation with the company. ECF No. 28 ("Vasan Decl.") ¶¶ 15, 19. Checkmate does not dispute that Vasan's alleged health issues and the claims arising from them took place after September of 2024. In particular, Vasan alleges that he requested medical leave on October 22, 2024 (Compl. ¶ 39) and that he was terminated on November 14, 2024 (*id.* ¶ 48). Checkmate appears to dispute that Vasan returned to California after he went to Texas, but does not provide any evidence that would contradict Vasan's declaration on this point. Motion at 12.[13]

"In a contract case, substantial events to be considered include where negotiations took place, where the contract was signed, or where performance or breach occurred." *See Lerman v. My Pillow, Inc.*, 2012 WL 12953662, at *7 (C.D. Cal. Oct. 1, 2012) (*citing Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986)). Checkmate does not dispute that the relevant contracts in this case were entered into before or around the time Vasan began working for Checkmate, and he continued to work in California for around three months before going to Texas. Vasan's fraudulent inducement claim would have arisen when the parties entered into the Merger Agreement in April of 2024, when he was undisputedly in California. Compl. ¶¶ 15–19, 111–116. His breach of contract claim, which is based on the Offer Letter[14] and Bonus Agreement entered into at the same time, is also alleged to have been breached during times when Vasan was in California. *See id.* ¶ 95 (alleging failure to pay bonus immediately upon Vasan's termination). And, a significant

---

[12] The Court therefore does not find where Checkmate made relevant decisions about Vasan's employment to be particularly relevant. *See* Motion at 12 (arguing that Vasan's claim was "rooted in conduct and decisions made by Checkmate personnel who were located outside California").

[13] Checkmate cites to a declaration from its Vice President of Human Resources to support its contention that Vasan remained in Texas, but the declaration merely states that Vasan moved to Texas in August of 2024, and provides nothing disputing that he returned in September of 2024. ECF No. 18-2 ("Brown Decl.") ¶¶ 4–6.

[14] The Court notes that the Offer Letter is explicitly governed by California law. *See* Offer Letter.

portion of Vasan's performance on his employment contracts would have occurred while he was working in California.

As Checkmate has not materially disputed that substantial key events relating to Vasan's claims occurred in California, the Court finds venue proper under 28 U.S.C. § 1391(b).

**B. The Court Does Not Find a Discretionary Transfer Warranted.**

    *i.    The Court does not find that there is a valid forum selection clause.*

Although the existence of a forum selection clause is irrelevant for purposes of determining improper venue under Rule 12(b)(3), it does provide grounds for discretionary transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co., Inc.*, 571 U.S. at 55 (2013); *see also Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) ("The appropriate way to enforce a forum-selection clause . . . is through the doctrine of forum non conveniens.").

A "contractually valid"[15] forum selection clause "should control except in unusual cases," because it "represents the parties' agreement as to the most proper forum." *Id.* at 1088. However, exceptional circumstances include where a plaintiff makes a strong showing that: "(1) the clause is invalid due to fraud or overreaching; (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Id.* (internal quotations omitted).

Checkmate points to the existence of forum-selection clauses in both the Merger Agreement and a Non-Competition Agreement. Agarwal Decl., Ex. B ("NCA"). The Merger Agreement provides as follows:

> Any legal action or other Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement will be brought or otherwise commenced exclusively in any state or federal court located in the County of New York, State of New York.

Merger Agreement, § 9.7(b). The NCA provides similarly. NCA ¶ 11(b). Vasan contends that the Merger Agreement explicitly carves out employment-related claims in its Release provision.

---

[15] *See Atl. Marine Const. Co., Inc.*, 571 U.S. at 62, n.5 (2013) ("Our analysis presupposes a contractually valid forum-selection clause.").

Merger Agreement, § 7.4(a) ("Each Stockholder [including Vasan] . . . hereby releases . . . Purchaser [Checkmate] . . . from any and all obligations . . . other than . . . any right . . . to receive accrued but unpaid wages . . ."). However, the Court finds that the release provision contemplates the release of rights existing at the time of the merger and merely excludes the release of rights accrued as an employee prior to that. On its own, it provides no indication of how or where such claims must be brought.[16] Nevertheless, the Court does not find the forum selection clause to cover the majority of Vasan's claims, and regardless finds it invalid under California law.

While a portion of Vasan's claims are related to the formation of the Merger Agreement and/or NCA,[17] the Court notes that the majority of them are more properly characterized as arising from his employment with Checkmate, not the merger. Significantly, none of Vasan's claims appear to explicitly rely on the interpretation or enforcement of any provision of the Merger Agreement or NCA—even his two fraud claims are based on fraud related to the *formation* of the merger and applicable contracts. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum-selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."); *see, e.g.,* Compl. ¶¶ 113 (noting that agreements are void under duress), 124 (alleging "the entire merger was fraudulent"). Even if the fraud claims could be considered as having a "significant relationship to" or have their "origin or genesis" in the Merger Agreement (*see Seagal v. Vorderwuhlbecke*, 162 Fed. App'x. 746, 748 (9th Cir. 2006)), the Court finds that Vasan's remaining claims fall outside the scope of the forum-selection clause.[18] Thus, at a minimum, the forum-selection clause does not support a transfer of *all* of Vasan's claims.

---

[16] The parties also dispute whether the Merger Agreement or the Offer Letter is the more "primary" agreement (and thus which agreement should otherwise control), but the Court does not find this issue relevant given that there is no indication the two agreements are in conflict—the Offer Letter does not have a forum selection clause. *See* Opposition at 12; Reply at 4.

[17] Beyond Vasan's promissory fraud and fraud in the inducement claims that are based at least in part on the circumstances of the merger, Vasan's wrongful termination claim is supported by an allegation of violation of the NCA's non-disparagement clause. Compl. ¶ 78.

[18] The Court does not find it necessary to reach the issue of whether some of the claims fall under the scope of the forum selection clause.

In any event, the Court finds that the forum selection clause in this case is not valid under California Labor Code section 925. *See DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 (9th Cir. 2022) (holding that state law, and in particular Section 925(b), "determines the threshold question of whether [a] contract contains a valid forum-selection clause"). California law forbids an employer from requiring "an employee, who primarily resides and works in California, as a condition of employment, to agree to a provision" that "[r]equire[s] the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a)(1). Checkmate contends that Vasan does not qualify as an employee who "primarily" resided and worked in California. Motion at 21. However, Vasan has provided unrebutted evidence that he resided and worked in California for the first three months of his employment as well as from September 30, 2024, until his termination. Vasan Decl. ¶¶ 15, 19. The Court finds this sufficient to determine that Vasan "primarily" resided and worked in California, when compared to the two months Vasan was in Texas.[19]

Checkmate further contends that the Merger Agreement[20] was not imposed as a condition of employment. While it is true that the language of the Recitals affirmatively reflects that the employment arrangements were a condition of the merger (Merger Agreement ¶ D), this does not preclude the reverse from being true. Rather, to the extent that Checkmate would not have entered the merger without the employment of the Founders, it is just as likely that Checkmate would not have employed the Founders without the merger taking place. The merger of VoiceBite and Checkmate and Vasan's employment occurred simultaneously, implying they were both necessary

---

[19] Checkmate contends that Vasan cannot "disavow" the same representations he used to avoid California taxes. Reply at 7. But Checkmate has not shown affirmative misrepresentations—telling Checkmate to update his address when Vasan *did* move to Texas is not a misrepresentation, nor is he attempting to retract those representations now. Checkmate fails to show how Vasan's failure to provide an update that he returned to California is grounds to ignore the evidence that he did in fact return for purposes of this analysis. The Court also notes that the terms of Vasan's employment anticipated that Vasan would work remotely (*see* Offer Letter). It is therefore unclear what significance there was to Checkmate where he worked from at any time.

[20] There is no dispute that the NCA was imposed as a condition of employment based on its plain language. NCA ¶ E ("This Agreement is necessary to protect [Checkmate's] legitimate interests" and "is a material inducement of the willingness of [Checkmate] to offer [Vasan] employment by [Checkmate] and is a condition of such employment . . .").

conditions for the other. Taken from this perspective, the Court finds that it is logical to construe the Merger Agreement as a "condition of employment."

Checkmate emphasized at the hearing, citing a non-binding case, its position that the Court must focus on an employee's ability to negotiate the terms of the contract. *See* Reply at 5 (citing *Kem v. Strike Adv., LLC*, 2023 WL 7021172 at *4 (C.D. Cal. Oct. 23, 2023).[21] While an employee's ability to negotiate the terms of an employment contract may be relevant, Checkmate cites no authority for the proposition that it is the only thing the Court should consider. Rather, the Court finds it proper to consider that, unlike in *Kem*, Vasan was closer to a rank-and-file employee than an executive officer. *Cf. id.* (finding that the plaintiff was "not a mere employee," but rather the company's "co-founder and vice president," who "later became president of the company"). Regardless of what Vasan's prior role at VoiceBite was, he did not have power comparable to an executive in his role at Checkmate.

More importantly, Vasan disputes that he had the ability to contest the forum-selection clause specifically, characterizing Checkmate's acquisition of VoiceBite as an "acquihire."[22] Opposition at 13 (contending that "[w]hile purportedly a 'merger,' the true substance of the transaction was that of an acquihire, where Checkmate's primary goal was to hire the VoiceBite team as employees"); 17 (representing that the "clause was never discussed or explained—let alone negotiated"). Here, the Court notes that although it is unclear what exact evidentiary standard the Court should apply to resolve factual disputes on the analysis under § 1404, in a Rule 12(b)(3) motion to transfer, a court must "resolve all factual conflicts in favor of the nonmoving party." *Petersen*, 715 F.3d at 280 (applying this standard in determining enforceability of forum selection clause). Thus, as none of the evidence submitted Checkmate shows that the forum-selection clause was not mandatory to the merger, the Court finds that this factual dispute must be resolved in favor of Vasan's allegations.

---

[21] The court in *Kem* reasoned that "[g]iven plaintiff's powerful position in the company *and* his ability to negotiate terms in his contract," the forum selection clause at issue could not be found to be a condition of employment. *Id.* (emphasis added).

[22] An "acquihire" is defined as the acquiring or buying of "a company in order to use its employees' skills or knowledge, rather than for its products or services." Acqui-hire, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/acqui-hire (last visited June 9, 2025).

In any event, "[i]n interpreting statutes, our primary goal is to give effect to the Legislature's intent in enacting the law." *See Ryze Claim Solutions LLC v. Superior Court*, 33 Cal. App. 5th 1066, 1072 (2019). Here, Section 925 "establishes a policy prohibiting employers from requiring California employees from agreeing to litigate in a different forum as a prerequisite to employment . . ." *Id.* Regardless of the factual dispute as to Vasan's ability to negotiate the terms of the merger, given that the thrust of Vasan's claims here are based on his employment with Checkmate, the Court finds the proper question to focus on in this context to be whether the Merger Agreement, in its final form, was a prerequisite to his employment. The Court finds that it was.

Checkmate also relies on Section 925(e), which provides that the statute "shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate" the venue. Cal. Lab. Code § 925(e). Vasan notes that while *VoiceBite* had representation during the merger, his position is that *he* was never "individually" represented—a fact disputed by Checkmate. Vasan Decl. ¶ 40; ECF No. 32-7 at 16; Agarwal Decl. ¶ 7 (representing that "Vasan was represented by legal counsel, including employment counsel, during the negotiation and execution of the Merger Agreement and related documents"). The Court finds that the evidence raised by Checkmate does not specifically contradict Vasan's representation that while VoiceBite had corporate counsel to represent the company, he was not ever individually represented. Here, given that the plain language of the statute only excludes application to employees who are "individually" represented, the Court finds the fact of individual representation as opposed to corporate representation significant. *See La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court*, 121 Cal. App. 4th 773, 784 (2004) ("In representing a corporation, an attorney's client is the *corporate entity*, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests."). If the legislature intended the statute to require only that Vasan have *separate* counsel from Checkmate, which is Checkmate argues is all that is necessary, the statute could have simply read "separate" representation. It does not, and uses the term "individual." Thus, the Court does not find the exception to Section 925 applies.

Accordingly, the Court does not find that a valid forum selection clause applies in this case.

*ii.    The Court does not find any other factors justifying a discretionary transfer.*

The Court finds that the traditional Section 1404 factors do not weigh in favor of transfer either. First, the Court notes that the majority of the factors undisputedly weigh against transfer[23]—the location where the relevant agreements were negotiated and executed, the state most familiar with the governing law, the plaintiff's choice of forum, the presence of a forum selection clause,[24] and the relevant public policy of the forum state. The Court does not find that the remaining factors—the parties' contacts with the forum, the contacts relating to the claims with the forum, costs of litigation, ability to compel attendance of unwilling third parties, and ease of access to sources of proof—ultimately weigh in favor of transfer either.

While Checkmate contends that the "overwhelming majority" of relevant witnesses are located in New York, it fails to identify who these witnesses are apart from Agarwal. Motion at 24. At this point, the record reflects that while Agarwal resides in New York, no other "key actor" identified in the Complaint is in New York. Compl. ¶ 13 (identifying Bell, Agarwal, and Brown as key actors). Rather, Brown resides in Kansas (Brown Decl. ¶ 3), and Bell resides in California (Vasan Decl. ¶ 5).[25] Moreover, given Vasan's representations that he is also now located in California, convenience towards the parties and witnesses, as well as general conservation of resources, actually support the litigation proceeding in this district.[26] Finally, given the Court's observations above with regards to where the claims arose, the Court finds that both Vasan's contacts with California (as primarily a California resident), as well as the contacts raised by his claims, weigh in favor of having the case be litigated here.

---

[23] To the extent that Checkmate does not raise a factor under the Section 1404 analysis in its Motion, the Court considers it conceded that it does not weigh in favor of transfer.

[24] As the Court determined above, there is no valid forum selection clause at issue. Thus, this factor does not weigh in favor of transfer, and the Court disregards Checkmate's arguments on reply relying on the existence of a valid forum selection clause to outweigh any public interest factors. Reply at 10–11.

[25] The Court understands that Checkmate objects to Vasan's foundation on this point, but at a minimum, Vasan has established that Bell has some residence in California, and appears to in fact concede that Bell is located in California. Motion at 24.

[26] Checkmate also raises a New York case between the parties, but that case was filed by Checkmate after the inception of this litigation. *See* Checkmate RJN. Thus, to the extent that coordination weighs in favor of transfer, it is not apparent why this case should be transferred as opposed to the later-filed one.

Accordingly, the Court does not find any factor under Section 1404 to weigh in favor of transfer.

## CONCLUSION

For the reasons discussed herein, the Court DENIES Checkmate's Motion to Dismiss or Transfer. ECF No. 18.

IT IS SO ORDERED.

Dated: June 24, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge