-1-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHECKMATE.COM, INC.,
                        Plaintiff                                   25-CV-3181 (JMF)

                                                                               LETTER ADDRESSING FINAL RULING
                -against-                                    **DENYING** CHECKMATE'S MOTION TO
                                                                               DISMISS OR TRANSFER VENUE IN THE
                                                                               CENTRAL DISTRICT OF CALIFORNIA

ARJUN VASAN,
                        Defendant
-------------------------------------------------------X

**Hon. Jesse M. Furman**
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

**Re:**  Checkmate.com Inc. v. Vasan — Letter Addressing Final Ruling in C.D. Cal.

Dear Judge Furman,

     I write to address the Hon. Judge Frimpong's final ruling in the Central District of California (CDCA), issued on June 24, 2025, and DENYING Checkmate (CM)'s Motion to Dismiss or Transfer Venue (CA_MTDT) in its Entirety. In addition, the Court **DENIED** CM's Motion to Strike as MOOT and GRANTED leave for *my* proposed sur-reply as an equitable remedy for being deprived of valuable time by CM's failure to comply with local rules.

     **I.**     **IMPACT OF CD Cal RULING ON THIS ACTION**

     The Order, now **FINAL**, means that that any ruling by this Court on the claims at issue in this case would risk immediate and direct contradiction with a sister Federal Court, in which the parties will now proceed to discovery. It is important to note that the Court not only established Jurisdiction over my employment related claims, but also over my own fraudulent inducement claims regarding misrepresentations and coercive tactics used during merger negotiations to impose the very agreements CM alleges I breached here in SDNY. Therefore, these claims

-1-

overlap directly with CM's breach and fraud claims in this case. Moreover, the Court held that Cal. Labor Code § 925 applies to the Merger and Non-Competition Agreements at issue here, as these agreements were held to be conditions of employment.  See ECF No. 49.

The two actions share a California ("CA") centric nature. Indeed, CM's claims are even more centered in CA—as Judge Frimpong notes, it is undisputed that I was present in CA the entire time relevant to CM's fraud and breach claims. The periods put at issue in its Amended Complaint ("AC") range from 2018 until 2025. I have never established domicile anywhere other than CA during this entire time period and have not visited New York ("NY") at all. Finally, CD Cal found that I was in CA at the time of my separation (when I sent the emails alleged as a non-compete breach from a CA medical facility). Therefore, the non-compete claim also has to do with events specific to CA, and witnesses (such as medical staff) located in CA. Finally, CM seeks Declaratory Relief to "disentitle" me from the compensation I seek recovery of in CD Cal. In other words, this lawsuit was filed second and was brought for the improper purpose of evading liability for torts and breaches under CA and Federal law.

The CD Cal Court ruled that *my* claims **did not** primarily arise from or relate to the merger agreement. CM will likely argue that the FSC is applicable at least to *its* claims here in SDNY. But by implicating time periods prior not just to close, but that predate negotiations and *even the formation of VoiceBite ("VB")*, CM has put at issue events that occurred well outside any reasonable understanding of "arising from and relating to" the merger agreement. Events that all occurred in CA, including: (1) the writing of every line of code; (2) my founding of and work for kea, CyborgOps ("CO") and VB; (3) CO's acquisition by and my employment with Presto; and (4) VB's merger and my employment with CM. To prove its claims, CM will have to show, *inter alia*, that VB did not have valid title to disputed parts of the codebase. As those parts were written years before the merger, CM's claims cannot arise solely from the merger agreement.

The CD Cal Court's most straightforward ruling was on the applicability of § 925 to this dispute. Judge Frimpong ruled that the *merger was a condition of employment* under § 925, and that I was not disqualified under § 925(e) as while VoiceBite had corporate counsel, I was not, in fact, *individually* represented by counsel during the negotiations. Her Honor further ruled that

there was *no evidence that I had substantial bargaining power*, and that I was more akin to a rank-and-file employee rather than a businessman with leverage. This is highly relevant not just to § 925, but also to CM's claim I *masterminded* an alleged scheme. I was one of three equal cofounders and became an employee—not even a true executive at CM post-merger.

Finally, this ruling comes after heavily contested motion practice, including CM's (denied) Motion to Strike and my (granted) Leave to file a Sur-Reply. Unlike in New York, CM did not rely exclusively on the FSC to establish jurisdiction—it sought to establish a now abandoned factual foundation: (1) I am and was a Texas resident; (2) CM has no contacts with California; (3) the merger was a commercial transaction in which I was paid "millions of dollars"; (4) I was personally represented by legal counsel while negotiating the merger and employment; and perhaps most egregiously (5) that I voluntarily resigned from CM. All five of these factual claims, despite being supported by sworn declarations, were fully contradicted by documentary evidence produced by me, and surprisingly CM itself.

The same lack of candor is on display here in New York as well. CM has quietly ended its fraudulent efforts to establish Texas residency. But it has not attempted to explain where the false Sugar Land, TX, address came from, what diligence was done to tie that address to me and why did it not retract the address when notified, prior to service. It has gone even further here in its claims of a merger worth "millions of dollars", seeking here to use this fabrication to establish damages. The contracts it has submitted show no transfer that could plausibly be construed as "millions of dollars". *No cash was transferred*, and the merger consideration of illiquid CM stock is (in total for all five VB founders), valued by CM itself at $131,899.

In my Motion to Dismiss (ECF No. 39) and Reply in Support thereof, I describe perhaps the most egregious example thus far: CM's deliberate misattribution to myself personally of a *joint response* to its own demand letter, drafted and sent by *shared* counsel on behalf of the VB shareholders in response to CM's own demand letter against them. Even if everything Plaintiff claims is true, which it absolutely is not, this action improperly seeks to target me personally for actions taken by three primary founders in the interest of the five-person founding team. CM's real goal is revealed by its own demand letter sent to the VB team. It seeks to litigate against one

founder to achieve an outcome—by settlement or ruling—to disabuse all five VB team members from their already earned compensation.

## II.   JUDICIAL ESTOPPEL BARS PLAINTIFF'S "UNRELATED" CASES ARGUMENT

Judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position previously taken by that party in a prior proceeding, especially if the prior court adopted the contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *In re Adelphia Recovery Trust*, 634 F.3d 678, 695–96 (2d Cir. 2011).

### A. Checkmate Affirmatively Represented the Cases as Related/Same

- **Request for Judicial Notice (ECF No. 18-1, filed 3/26/2025):**

*"Defendant Checkmate.com, Inc. requests that the Court take judicial notice of … Checkmate's Complaint filed on February 18, 2025, in the New York County Court…"*

[CD Cal Dkt. 18-1]

- **Notice of Pendency of Other Actions (ECF No. 23, filed 4/11/2025):**

Checkmate formally notifies the court that the New York case is "related."

[CD Cal Dkt. 23]

- **Updated Notice of Pendency (ECF No. 37, filed 4/18/2025):**

Checkmate again updates the court regarding the "related" New York action.

[CD Cal Dkt. 37]

### B. Checkmate Later Claims the Cases Are "Unrelated" When It Suits Them

- **Motion to Strike (ECF No. 57, filed 5/29/2025):**

Argues that your filings and RJNs relate to an "entirely separate" and "unrelated case."

[CD Cal Dkt. 57]

- **Request for Judicial Notice (ECF No. 60, filed 6/4/2025):**

In connection with its Motion to Strike, Checkmate again shifts position—asking the court to judicially notice materials from the SDNY docket, even while arguing the actions are "unrelated." [CD Cal Dkt. 60]

### C. The Judicial Estoppel Standard Is Met

1. **Clearly inconsistent positions:**
    - Checkmate argued the cases were "related" (ECF Nos. 18-1, 23, 37), then, for tactical advantage, called them "entirely separate" and "unrelated" (ECF No. 57), and yet again sought judicial notice of SDNY filings (ECF No. 60).

2. **Prior court acceptance:**
    - The California court accepted Checkmate's "related" position by taking judicial notice and considering the two actions in tandem (see, e.g., venue ruling [CD Cal Dkt. 67]).

3. **Unfair advantage:**
    - Allowing Checkmate to reverse course would let it benefit from coordination when convenient and avoid adverse consequences when not, precisely what judicial estoppel forbids.

### D. Remedy

This Court should bar Checkmate from denying the relatedness of these cases and should give full effect to the CD Cal ruling—including for purposes of comity, preclusion, or at minimum, a stay.

*See* [CD Cal Dkt. 18-1, 23, 37, 57, 60]; *New Hampshire v. Maine*, 532 U.S. at 749–51.

### III.    REPLY TO LETTER MOTION OPPOSITION AND RULING

Finally, I accept Your Honor's ruling denying the requested temporary stay and will comply with the provided instructions. I would respectfully like to state for the record, that I *did* attempt to confer with Plaintiff prior to filing the letter-motion, as exhibited in the email thread attached therewith. Upon Plaintiff's aggressive response, I updated the proposed filing to address its concerns, *which it concedes*. I copied counsel Ryan Q. Keech on my filing email with the *Pro Se* Intake out of courtesy. To my surprise, Mr. Keech responded directly to the administrative unit and demanded it reject my filing on its own accord, making the same AI misuse, rule violation and vexatious litigant allegations as in its letter response. See Exhibit A.

Mr. Keech has previously called me, in writing, "the generative AI program otherwise known as Mr. Vasan". Amusing as that was, I don't believe it is in accordance with this court's

-6-

standards. Moreover, given these allegations, I believe it is only fair to point out that Mr. Keech and several of his colleagues at K&L Gates LLP, were sanctioned just last month[1] for not just using AI but concealing this use upon questioning in federal court. When Plaintiff claims I "boast" about my use of AI, what is meant is that <u>I do not hide it</u>. Transparency is not a crime. I submit this reply to respectfully suggest that as the court is requiring me to confer with opposing counsel, that counsel be reminded to conduct itself in the manner expected of all litigants. I further respectfully suggest this court reserve judgment as to which party is "vexatious".

                                                                                   Respectfully Submitted,

DATED: June 20, 2025,

    In **Cerritos, California**                                          */s/* **Arjun Vasan**

                                                                                   Arjun Vasan
                                                                                   Defendant *Pro Se*
                                                                                   arjun.vasan@gmail.com
                                                                                  (562) 900-6541

---

[1] See Exhibit B – Sanctions Order Against K&L Gates LLP.