UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHECKMATE.COM, INC.,

                         Plaintiff

            -against-

ARJUN VASAN,

                         Defendant
-------------------------------------------------------X

**25-CV-03181** (JMF)

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR POST-DISMISSAL SANCTIONS AND COST-SHIFTING; MEMORANDUM OF LAW; AND DECLARATIONS OF ARJUN VASAN AND ROBERT NESSLER

**TO THE HONORABLE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 11, Federal Rule of Civil Procedure 41(d), 28 U.S.C. § 1927, and this Court's inherent authority, Defendant Arjun Vasan ("AV") will move this Court, at a date and time to be determined by the Court, for an order:

1. Awarding AV his reasonable costs and fees[1] incurred in defending this action, in an amount proposed at $24,000, with $12,000 payable to the Court and $12,000 to AV, or such amount as the Court deems just;[2]

2. Issuing a formal admonishment of Plaintiff and its counsel for the conduct described in the accompanying motion and declarations;

3. Conditioning any future re-filing of the same or related claims by Checkmate.com, Inc. ("CM") on payment of such costs and fees;

---

[1] A monetary **penalty payable to the Court** under Rule 11(c)(4) and, under § 1927/inherent power, **expenses** caused by the violations—assessed **against counsel** consistent with Enmon.

[2] For the avoidance of doubt, Defendant's time as a founder and leading entrepreneur in the voice AI industry could reasonably command several multiples of this figure. If the compensation, bonuses, and equity that were contractually promised by Checkmate had been paid as agreed, his annualized compensation would have approached $1 million per year—consistent with his previous successful acquisitions and industry value. The fee request here is therefore both conservative and equitable under the circumstances.

-1-

4. Striking all pleadings infected by the misconduct described herein, including but not limited to FAC ¶¶ 33–34 and all derivative allegations in Plaintiff's Opposition;
5. Granting such further or different relief as the Court deems just and proper.

This motion is based on this Notice, the supporting Memorandum of Law, the Declaration of Robert Nessler and all other supporting declarations and exhibits, the record in this matter, and any argument that may be heard at oral argument or otherwise submitted to the Court.

## MEMORANDUM OF LAW

### I. PREAMBLE

AV submits this motion with respect for the Court's skepticism toward sanctions. **Defendant** does not seek sanctions as a matter of personal grievance; rather, the record—including the sworn **Nessler Declaration**—shows that Plaintiff and its counsel knowingly advanced misattributed statements and damages narratives that lack evidentiary support.

This is not a motion about minor error or zealous advocacy. Rather, it is about the continued misrepresentation of material facts to the Court, even after being put on notice of their falsity—not only in the initial Complaint, but through the Amended Complaint and opposition briefing. The persistence of these statements, despite documentary evidence and repeated correction, undermines the integrity of these proceedings and the core values of candor and good faith that define our justice system. See sources of authority in footnote. [3]

---

[3] **Procedural Posture & Sources of Authority.** Plaintiff noticed a voluntary dismissal before Defendant served a Rule 11 motion. Consistent with Second Circuit precedent, Defendant therefore **does not seek Rule 11 sanctions "on motion"** because the 21-day safe-harbor requirement was not and cannot now be satisfied. See *Star Mark Mgmt. v. Koon Chun*, 682 F.3d 170, 175–76 (2d Cir. 2012); *Hadges v. Yonkers Racing*, 48 F.3d 1320, 1327–29 (2d Cir. 1995); *Perpetual Sec. v. Tang*, 290 F.3d 132, 141–42 (2d Cir. 2002). The Court, however, **retains jurisdiction** after dismissal to impose appropriate sanctions. *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 395–98 (1990). Accordingly, Defendant seeks relief under **28 U.S.C. § 1927** (as to counsel) and the Court's **inherent power** (as to counsel and/or party). Any compensatory award is limited to fees or expenses **caused by** the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017); see also *Enmon v. Prospect Capital*, 675 F.3d 138, 143–45 (2d Cir. 2012). In the alternative, Defendant respectfully invites the Court, if it deems appropriate, to issue a **Rule 11(c)(3) order to show cause** and to consider a **penalty payable to the Court**, as Rule 11(c)(4) allows for court-initiated sanctions, but not fee-shifting to the movant absent safe-harbor compliance. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–91 (2d Cir. 2003); Fed. R. Civ. P. 11(c)(4).

In bringing this motion, AV invites the Court to consider whether, in light of the now-complete record and sworn third-party evidence, this is a case where principled intervention is required to protect the fairness of judicial process—not simply for the parties here, but for all who rely on this Court to ensure the honest resolution of disputes.

## II. PROCEDURAL HISTORY

- **November 14, 2024**: Defendant (AV) was terminated by Checkmate while on medical leave. He sought only the compensation contractually owed to him; all such requests were ignored (Nessler Decl. ¶¶ 5–7).

- **January 28, 2025**: AV filed an action in the Central District of California ("CD Cal Action") for wrongful termination, retaliation, and related claims.

- **January 29, 2025**: AV served an ethics complaint on K&L Gates' General Counsel, reporting misconduct by attorney Keech. That same day, Keech served a Notice of Claim on Holder Representative Robert Nessler, asserting fraud and forfeiture of bonuses and equity for the VoiceBite team (Nessler Decl. ¶ 9).

- **Early February 2025**: The VoiceBite cofounders, represented by Grant Thomas, shareholder counsel, coordinated a collective response. At no time was AV's individual approval or engagement given for statements to be attributed solely to him (Nessler Decl. ¶¶ 11–13).

- **February 6, 2025**: Grant Thomas sent a response letter on behalf of all pre-closing shareholders. Plaintiff has possessed this letter and all covering correspondence at all relevant times (Nessler Decl. ¶ 12).

- **February 14, 2025**: Checkmate filed this action in New York Supreme Court. In ¶¶ 33–34 of the Complaint, Checkmate misattributed statements from the February 6, 2025, shareholder counsel letter as "admissions" by AV personally, converting a collective legal position into a supposed individual confession of wrongdoing (Nessler Decl. ¶ 13).

- **May 12, 2025**: Despite immediate notification of this misattribution, Checkmate filed an Amended Complaint, again expressly asserting that AV had made the statements individually (Nessler Decl. ¶ 13).

- **June 2, 2025**: AV's Motion to Dismiss, Transfer, or Stay (ECF No. 34) specifically identified and corrected these misattributions:
  > "The most egregious example appears in the FAC ¶ 33, where Plaintiff attributes to Defendant statements that were made by joint shareholder counsel … This demonstrates fundamental confusion— or deliberate deception—about who said what and when." (Mot. at 15.)

- **June 16, 2025**: Checkmate filed its Opposition (ECF No. 41), not only failing to retract but doubling down on these falsehoods:
  - Continuing to assert that AV "admitted" key facts in the shareholder counsel letter.
  - Repeatedly and without basis alleging that "Plaintiff was injured by paying millions of dollars for a company…that ended up being worthless" and that Defendant's "misrepresentations…were material and intended to induce [Plaintiff] into paying [Defendant] millions of dollars." (Opp. at 7, 22–23; Am. Compl. ¶¶ 33, 59.)
  - At no point does Plaintiff allege (or provide evidence) that AV personally received any "millions"—a claim the Nessler declaration categorically rebuts (Nessler Decl. ¶¶ 2–3, 5).

- **Throughout all motion practice**: These knowingly false statements remained central to Plaintiff's theory of the case, even after Defendant's objections, briefing, and the submission of the Nessler declaration establishing the true facts (Nessler Decl. ¶ 19).

### III. LEGAL STANDARD

A. **Rule 11 Imposes an Objective Duty of Candor**

By presenting papers to the Court, a party certifies, after an inquiry reasonable under the circumstances, that they are **not** filed for an improper purpose, that legal contentions are

**warranted by existing law or a non-frivolous argument**, and that **factual contentions have evidentiary support** (or will likely have such support after reasonable discovery). Fed. R. Civ. P. 11(b). In the Second Circuit, the test is **objective unreasonableness**; sanctions as to factual contentions are appropriate where an allegation is **utterly lacking in support**. *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387–88 (2d Cir. 2003) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)).

B. **28 U.S.C. § 1927 and Inherent Authority Address Vexatious Multiplication and Bad Faith**

Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Sanctions are warranted where a party persists in meritless or knowingly false positions after notice. See *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) ("bad faith is the touchstone of § 1927 sanctions").

Additionally, federal courts retain inherent authority to sanction parties and counsel for fraud, bad faith, or conduct that abuses the judicial process. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991).[4]

IV. **ARGUMENT**

Let these facts be submitted to a candid Court as but a sample of the conduct now at issue; the full record, if the Court so requires, contains further evidence in abundance

**A. Plaintiff's Misattribution of the February 6, 2025, Shareholder-Counsel Letter Squarely Violates Rule 11(b)(3) and § 1927**

1. **What Was Alleged**

Plaintiff's Amended Complaint (¶¶ 33–34) quotes the passage that "the software … was not, in fact, intellectual property," and asserts that "Vasan admitted" this point, positioning it as a personal admission of fraud.

---

[4] The Court's sanctioning authority **survives voluntary dismissal**. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). Any compensatory award must be limited to fees and expenses **caused by** the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).

2. **What Really Happened**

This quotation comes from a February 6, 2025, response sent by attorney Grant Thomas on behalf of all five VoiceBite pre-closing shareholders, acting solely through the Holder-Representative—not by Defendant individually. (**Nessler Decl. ¶¶ 11–13**)

3. **Why No Reasonable Inquiry Could Miss the Error**

Plaintiff has possessed the shareholder-counsel letter, the covering emails, and its own January 29 Notice of Claim (addressed to Nessler as Holder-Representative, not to Defendant) at all times. Any reasonable review would confirm these were collective legal arguments, never attributed to Vasan. (**Nessler Decl. ¶¶ 12–13**)

4. **Plaintiff Persisted After Being Notified**

Defendant immediately pointed out the misattribution, both in formal correspondence and in briefing. Nevertheless, Plaintiff repeated the allegation verbatim in its May 12, 2025, Amended Complaint, and then, in opposition briefing (ECF No. 41), again doubled down—failing to retract or address the error, despite direct notice and evidence. Continuing to press a fact "known to be false" after receiving a Rule 11(c)(2) safe-harbor notice is an independent violation. *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003); see also *Nessler Decl.* ¶ 19 (detailing the persistence of categorical falsehoods).

5. **The Misattribution Is Material**

Plaintiff features the supposed "admission" as a central lynchpin of its fraud narrative and damages theory; striking ¶¶ 33–34 would have undermined several counts. Where a party amplifies liability using a false factual predicate, sanctions are warranted. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). Accordingly, ¶¶ 33–34 violate Rule 11(b)(3) and § 1927.

**B. Plaintiff's "Millions of Dollars" Damages Allegations Are Knowingly False and Sanctionable**

Plaintiff repeatedly alleges in the Amended Complaint and opposition briefing that "millions of dollars" were paid for VoiceBite's code, and that Defendant "induced Plaintiff to

pay millions of dollars" (see FAC ¶¶ 33, 59; Opp. at 7, 22–23). The Nessler declaration categorically rebuts these claims: no such consideration was paid to Defendant individually or to any founder, and no "windfall" was ever received. (**Nessler Decl. ¶¶ 2–3, 5**) Plaintiff's persistence in these allegations, despite explicit contradiction by firsthand testimony and the documentary record, constitutes a knowing misrepresentation of fact after notice—squarely within the scope of sanctionable conduct under both Rule 11(b)(3) and § 1927.

**C. Plaintiff and Counsel Violated Rule 11(b)(1) by Using These False Allegations for Retaliatory, Harassing, and Tactical Purposes**

The timeline is undisputed: the misattribution arose mere hours after AV filed an ethics complaint against K&L Gates and sued CM in California; it was then wielded to assert forfeiture of all founders' bonuses and to justify duplicative, harassing litigation. This chronology demonstrates an "improper purpose"—retaliation and pressure—not a good faith search for truth. *Schlaifer Nance*, 194 F.3d at 336–37.

**D. The Court Should Impose the Requested Sanctions**

- **Issue a formal admonishment of Plaintiff and its counsel** for the conduct described herein, to reaffirm the duty of candor and deter similar misconduct in the future.
- **Award Defendant his reasonable fees and costs incurred in defending this action**—including time spent as a *pro se* litigant forced into this position by Plaintiff's duplicative and vexatious tactics—in a conservative amount of $24,000 (or such other amount as the Court deems just), as detailed in the Notice of Motion. This figure is far less than the market value of Defendant's time as an accomplished founder in the industry, and less than what was contractually owed to him.
- **Condition any future re-filing of the same or related claims by Plaintiff on payment of all fees and costs**, to prevent the abuse of serial litigation and to restore equity.
- **Bar Plaintiff from re-pleading the same allegations unless all necessary parties—including other shareholders and their counsel—are properly joined**, ensuring factual and legal integrity of any future filings.

- Grant such further or different relief as the Court deems just and proper under the circumstances.[5]

**E. Proportionality**

Sanctions "must be limited to what suffices to deter repetition." Fed. R. Civ. P. 11(c)(4). Here, the requested relief is narrow: it corrects the record, compensates the aggrieved party, and deters further misuse of collective statements to manufacture individual liability.

V.     **CONCLUSION**

The abuses detailed herein—and established by sworn declarations and documentary evidence—are not mere procedural failings, but violations of the fundamental duties owed to this Court and to the integrity of our legal system. If permitted, such conduct would erode the foundations of candor and fairness that every litigant and every citizen must be able to trust.

While courts often decline to award fees to *pro se* litigants, this case is exceptional. Defendant did not choose to proceed without counsel as a matter of strategy but was *forced* to do so by Plaintiff's deliberate multiplication of proceedings—thereby having to deal with simultaneous federal actions on opposite coasts. Plaintiff's own conduct was calculated to drive up costs and tilt the ordinary case-benefit analysis unfairly in its favor. Had Defendant not defended himself, the truth would have been silenced by sheer financial attrition.

Moreover, Defendant is not a layperson, but an established expert and entrepreneur in the field of voice AI, with a proven record of founding and building successful companies. At the time of his termination, Defendant was earning $24,000 per month at Checkmate. The Court may take notice that his time—compelled to litigate in response to knowingly false and retaliatory claims—carries real value, both to himself and to the industry in which he contributes.

---

[5] *Forward-looking deterrence.* **Rule 41(d)** authorizes a court in a **later** action to order the plaintiff to pay the costs of a previously dismissed action and to **stay** the new action until payment. **Fed. R. Civ. P. 41(d).** If repetitive filings persist, courts in this Circuit may consider the **Safir** factors in determining whether narrowly tailored gatekeeping measures are warranted, including the litigant's filing history, motive, representation status, the burden on courts and parties, and whether other sanctions would suffice. *Safir v. U.S. Lines, Inc.*, **792 F.2d 19, 24** (2d Cir. 1986). **Defendant does not seek any pre-filing injunction here**; this note simply underscores that cost-shifting and measured gatekeeping may be appropriate if substantially identical claims are re-asserted.

Defendant therefore respectfully proposes a modest and conservative fee award: $24,000 for the period in question, apportioned equally between the Court ($12,000) and Defendant ($12,000), as a balanced remedy. This is not a windfall, but a measured response given that Plaintiff's own conduct was aimed at denying Defendant what was already contractually owed.

In addition, Defendant respectfully requests that the Court issue a formal admonishment of Plaintiff and its counsel for the conduct described herein and grant such further relief as the Court deems just and appropriate under the circumstances.

Defendant brings this motion not to punish, but to protect the integrity of the Court, the legal process, and the rights of those who must defend themselves. Defendant respectfully requests that the Court grant this motion and impose appropriate sanctions—not simply to remedy the wrongs done here, but to reaffirm the core values that define our system of justice.

Dated **Friday, July 25, 2025,**    Respectfully Submitted,

In **Laguna Hills, California**

*/s/ Arjun Vasan*

_____

**Arjun Vasan**
Defendant *Pro Se*
12615 193rd Street,
Cerritos, CA 90703
(562) 900-6541
arjun.vasan@gmail.com