UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

CHECKMATE.COM, INC.,

                              Plaintiff                    **25-CV-03181** (JMF)

                                                    DEFENDANT'S REPLY/OPPOSITION TO
                                                    PLAINTIFF'S OPPOSITION/CROSS-
          -against-                                 MOTION FOR SANCTIONS;
                                                    MEMORANDUM OF LAW

ARJUN VASAN,

                              Defendant

----------------------------------------------------X

**TO THE HONORABLE COURT:**

       Pursuant to the Court's Order, Defendant Arjun Vasan ("AV") respectfully submits this Memorandum in Reply and Opposition to Plaintiff Checkmate.com, Inc. ("Checkmate")'s Opposition and Cross-Motion ("Opp/CM"). AV withdraws any request for personal monetary compensation and withdraws any request for preclusion/striking as mooted. Should monetary sanctions be deemed appropriate, AV submits they be made payable to the Clerk. AV proceeds under 28 U.S.C. § 1927 and the Court's inherent power; with Rule 11 relief solely as a guidepost and *sua sponte* option, as set forth in the [Proposed] Order filed herewith. Also herewith is the Declaration of Arjun Vasan—authenticating contracts integral to the AC but filed only in the Central District of California ("CDCA"), not here ("SDNY"), as well as emails and filings for context relevant to the cross-motion.

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................I

**TABLE OF AUTHORITIES** ....................................................................................... II

**TABLE OF REFERENCED EXHIBITS**...................................................................... V

**MEMORANDUM OF LAW** ........................................................................................................ 1

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND .............................................................................................................. 1

III.  ARGUMENT .................................................................................................................... 2

    *A.    Checkmate's Straw Man: § 1927/Inherent Power Not Rule 11* ............................... 2

    *B.    Checkmate Avoids Mr. Nessler's Integration of the Record* ............................ 3

    *C.    Checkmate's Millions of Dollars Allegation is Knowingly False* ................................. 3

    *D.    Checkmate's Misattribution in AC ¶¶ 33-34 is Knowingly False* ............................... 5

    *E.    Checkmate Continues to Persist These Allegations Despite the Record* ..................... 7

    *F.    Checkmate Could Have Easily Refuted AV's Motion if it Lacked Merit* ....................... 8

    *G.    Checkmate's Failure to Disclose Operative Contracts Reveals Bad Faith* .................. 9

    *H.    Checkmate's Belated Appeal to Comity is Unpersuasive* ................................. 10

    *I.    Checkmate's Cross-Motion Smacks of Overreach* ........................................ 11

    *J.    Checkmate's Rhetoric is Misdirection and Projection* ................................. 12

    *K.    AV's Sanctions Motion Serves a Proper and Necessary Purpose* ............................... 13

IV.   CONCLUSION ............................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

## CASES

*Allen v. Utley,*
    129 F.R.D. 1, 4–5 (D.D.C. 1990) ................................................................................... 4

*Aveta Inc. v. Bengoa,*
    C.A. No. 3598-VCL (Del. Ch. Aug. 13, 2010) ............................................................... 6

*Beech Aircraft Corp. v. Rainey,*
    488 U.S. 153, 171–72 (1988) ......................................................................................... 7

*Bellefonte Reins. Co. v. Argonaut Ins. Co.,*
    757 F.2d 523, 528–29 (2d Cir. 1985) ............................................................................. 6

*Brand Co. v. First State Ins. Co.,*

No. 00 Civ. 8179 (KMW) (RLE), 2003 U.S. Dist. LEXIS 11416, at *3–4 (S.D.N.Y. July 3, 2003) .................................................................................................................. 14

*Chambers v. NASCO, Inc.*,

    501 U.S. 32, 44–46, 50–51 (1991) ........................................................................ 2

*Cooter & Gell v. Hartmarx Corp.*,

    496 U.S. 384, 395–98 (1990) .......................................................................... 2, 9

*Curley v. Brignoli, Curley & Roberts Assocs.*,

    128 F.R.D. 613, 616–17 (S.D.N.Y. 1989) ............................................................ 14

*Eastway Constr. Corp. v. City of New York*,

    762 F.2d 243, 254 (2d Cir. 1985) ........................................................................ 9

*Enmon v. Prospect Cap. Corp.*,

    675 F.3d 138, 143–45 (2d Cir. 2012) .............................................................. 2, 14

*Fishoff v. Coty Inc.*,

    634 F.3d 647, 654 (2d Cir. 2011) ...................................................................... 14

*Fortis Advisors LLC v. Allergan W.C. Holding Inc.*,

    C.A. No. 2019-0159-MTZ, at 7 (Del. Ch. May 14, 2020) ...................................... 6

*Goodyear Tire & Rubber Co. v. Haeger*,

    581 U.S. 101, 108–12 (2017) .............................................................................. 2

*In re Pennie & Edmonds LLP*,

    323 F.3d 86, 90–92 (2d Cir. 2003) ...................................................................... 2

*Lacey v. State Farm Gen. Ins. Co.*,

    No. 2:24-cv-05205-FMO (C.D. Cal., May 5, 2025) ............................................ 12

*Margo v. Weiss*,

    213 F.3d 55, 65 (2d Cir. 2000) ........................................................................... 9

*McGhee v. Sanilac Cnty.*,

    934 F.2d 89, 93 (6th Cir. 1991) .......................................................................... 4

*Phoenix Assocs. III v. Stone*,

    60 F.3d 95, 103 (2d Cir. 1995) ........................................................................... 7

*Purgess v. Sharrock*,

    33 F.3d 134, 143–44 (2d Cir. 1994) .................................................................... 6

*Rankin v. City of Niagara Falls*,

569 F. App'x 25, 27–28 (2d Cir. 2014) ............................................................. 5

*Sassower v. Field*,

973 F.2d 75, 80–81 (2d Cir. 1992) ................................................................. 2

*Schlaifer Nance & Co. v. Estate of Warhol*,

194 F.3d 323, 336–37 (2d Cir. 1999) ......................................................... 2, 14

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–77

(2d Cir. 2012) ........................................................................................ 2, 5, 9

*Storey v. Cello Holdings, L.L.C.*,

347 F.3d 370, 388–89 (2d Cir. 2003) ......................................................... 9, 14

*StreetEasy, Inc. v. Chertok*,

752 F.3d 298, 307 (2d Cir. 2014) ............................................................... 10

*United States v. Coplan*,

703 F.3d 46, 84–85 (2d Cir. 2012) ............................................................... 7

*United States v. McKeon*,

738 F.2d 26, 31–33 (2d Cir. 1984) ............................................................... 6

*Weiss v. Weiss*,

984 F. Supp. 682, 686 (S.D.N.Y. 1997) ....................................................... 14

*Willy v. Coastal Corp.*,

503 U.S. 131 (1992) ..................................................................................... 2

## STATUTES

28 U.S.C. § 1654 ............................................................................................ 2

28 U.S.C. § 1927 ....................................................................................... 2, 14

## RULES

Fed. R. Evid. 106 ........................................................................................... 7

Fed. R. Evid. 801(d)(2)(B)–(D) ...................................................................... 6

Rule 11(c)(3) .................................................................................................. 2

## INDEX OF REFERENCES AND EXHIBITS

| | | |
|---|---|---|
| Central District of California [Action] | "**CDCA**"; Filed Jan 28, 2025, Amended Feb 21, 2025. | Case No. **25-cv-MEMF-JPR**; Plaintiff: Arjun Vasan ("**AV**"); Defendant: Checkmate.com, Inc. ("**Checkmate**") |
| Southern District of New York [Action] | "**SDNY**"; Filed Feb 14, 2025, Amended May 12, 2025. | Case No. **25-cv-03181-JMF**; Plaintiff: **Checkmate**; Defendant: **AV** |
| Merger Agreement ("MA") | "**MA**"; Warns Declaration, Ex. A (Dkt. 40-1) | Establishes Robert Nessler as Holder Representative; Defines "Merger Consideration" as 321,199 shares, valued at $0.41 per share. |
| Assignment of IP and Other Assets ("IPAA") | "**IPAA**"; Warns Declaration, Ex. B (Dkt. 40-2) | Alleged to be Breached in the Complaint; Consideration is $100.00; Agreement between VoiceBite and AV but purportedly executed "as part of the transaction". |
| IP Acknowledgment Letter ("IPAL") | "**IPAL**"; Warns Declaration, Ex. C. (Dkt. 40-3) | Alleged Breach – No Consideration; Reveals a substantive defect: "entered into between Christopher Lam [and Checkmate]", rendering it facially invalid absent reformation. |
| Non-Competition Agreement ("NCA") | "**NCA**"; Warns Declaration, Ex. D. (Dkt. 40-4) | Consideration is Employment itself, no separate monetary consideration. |
| Bonus Agreement | Agarwal Declaration (CDCA ECF 18-4); Vasan Declaration, Ex. A-1 | In Consideration of Employment, $450,000 vested at 3 Months of Employment and payable upon Qualified Fundraising - $500,000 total (minus adjustments) for AV. |
| Offer Letter | Agarwal Declaration (CDCA ECF 18-4); Vasan Declaration, Ex. A-2 | Salary/Severance/Benefits Terms. Contingent on Continued Employment. |
| Jan 29, 2025, Notice of Direct Claim ("Jan 29 Notice") | "**Jan 29 Notice**"; AV's Reply (ECF 48, Ex B); Vasan Declaration, Ex. B-2. | Confirms Value of Merger Equity as $131,815, in total for all shareholders. Asserts non-payment/forfeiture of $1.5 million in team bonuses (including the $500,00 apportioned to AV); Served on & addressed solely to Robert Nessler as Holder Representative. |

| Feb 7, 2025, Shareholder Response ("Feb 7 Response") | "**Feb 7 Response**"; AV's Reply (ECF 48, Ex B); Vasan Declaration Ex. B-3 | From Grant Thomas on Behalf of Robert Nessler, Holder Representative; In response to the Jan 29 Notice; Distinguishes VoiceBite IP from Exhibited Code – not that *all the code* is not IP. |
|---|---|---|
| Vexatious AI Litigant Compilation Exhibit | Vasan Declaration, Exhibits C-1 to C-5 | Compilation from Checkmate's filings and emails, evidencing improper and repeated use of rhetoric to intimidate a *pro se* litigant and prejudice the courts; starting prior to the vast majority of emails cited by Checkmate, and continuing thereafter. (C-1 to C-5) |
| Ethics Complaint (Includes Jan 29 draft bar complaint; thread with Charles Tea III and Feb 21 Formal Response) | Vasan Declaration, Exhibits E-1 to E-3; (Previously filed as Exhibit G.1-G.3 with AV's Motion to Dismiss, Transfer or Stay) | Shows notice of undisclosed documents, including the IP papers (E-2), misrepresentation by counsel regarding the nature of these papers; failure to disclose the contracts despite notice or to disclose the lawsuit filed in New York state court (later removed here) (E-1) |
| Early settlement outreach, Dec 6, 2024, and Jan 22, 2025, Notices of Claim; Dec 15, 21 request for withheld documents. | Vasan Declaration, Exhibits D-1 to D-4. | Early settlement outreach by AV (D-1); Immediate escalation to threats of criminal referral by Checkmate's counsel at the outset of this dispute (D-2, D-4); Ignored requests for withheld documents (D-3) |
| August 29, 2025, email from Checkmate counsel re: damages disclosure | Vasan Declaration, Exhibit F | Recent email regarding discovery in CDCA, with counsel Makitalo for Checkmate declining to provide a computation of damages. |
| AV's Motion to Dismiss, Transfer or Stay; | "**NyMDT**", Dkt. 34 | Opposition: "**NyMDT Opp.**", Dkt. 41 |
| Checkmate's Motion to Dismiss or Transfer (CDCA); | "**CaMDT**", CDCA ECF 18 | Opposition: "**CaMDT Opp.**", CDCA ECF 27 |
| AV's Sanctions Motion | "**Sanctions Mot.**"; Dkt. 58; | Opposition/Cross-Motion: "**Opp/CM**"; Dkt. 59 |

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Opp/CM sidesteps the record by stitching together off-docket emails to label AV "vexatious". In context, these emails show *frustration* with litigation tactics, not vexatiousness. This docket reflects only AV's timeliness, candor, and adherence to court orders. Sanctions are not a vehicle to punish a substantive, authorized filing. The cross-motion should be denied.

AV asks for narrow findings on two key assertions used to prop up Checkmate's fraud theory: (1) that it "*paid* millions" for "the code", and (2) that AV *personally* (or "his lawyer") made the "not intellectual property" statement at AC ¶¶ 33–34. The Nessler Declaration (Dkt. 58-1) integrates evidence on record to categorically refute these assertions.

Checkmate, through counsel, set forth these and other knowing falsehoods in its original complaint, failed to correct on amendment and advanced them through briefing despite repeated notice. They now appear, *verbatim,* in CDCA. Targeted, corrective, relief is warranted.

### II.    BACKGROUND

AV hereby incorporates the procedural history set forth in his initial Motion (ECF No. 58) and adds the following selection of events as context to address the cross-motion:[1]

- **Dec 2024-Jan 2025**: Checkmate responds to AV's post-termination request for unpaid compensation with implied threats of criminal referral in pre-suit notices while demanding he "submit to a recorded interview". See Vasan Decl. ¶ 8, Ex. D.

- **May 28, 2025**: Checkmate demands AV withdraw his CaMDT Opp. and answer here; mocks him as "the generative AI program posing as Mr. Vasan". *Id*. ¶ 7, Ex. C-5.

- **June 15, 2025**: AV seeks a temporary stay to avoid conflicts with the pending CaMDT ruling; Checkmate emails SDNY Pro Se Intake *ex parte* to request they reject this filing using the same "vexatious litigant" and "AI" themes expressed here. *Id*. Ex. C-1, 2.

- **June 17, 2025**: Checkmate repeats the "vexatious" rhetoric in a Notice in CDCA accusing AV of violating court orders "in spirit", admitting no real violation. *Id*. Ex C-3.

---

[1] See Exhibit C ("Vexatious Comp.") to the Vasan Decl. ("VD"). Most of the emails cited postdate the events here. The May 6 "crush" email was unequivocally retracted within 48 hours. See concession in AC ¶ 37.

- **June 20, 2025**: Checkmate opposes AV's temporary stay, using the same rhetoric to argue the CaMDT ruling would have no bearing on its pursuing its claims here. *Id*. Ex. C-4.

- **July 9, 2025**: After the CaMDT is comprehensively denied on June 24, Checkmate dismisses its AC here and copies it, *verbatim*, as its counterclaims there. See Dkt. 53.

- **August 8, 2025**: The Opp/CM pivots the court's attention back to "vexatiousness" while declining to address the merits of AV's motion or the Nessler Declaration. See Dkt. 59.

AV respectfully submits that this cross-jurisdictional campaign to smear a <u>first-time</u> *pro se* litigant as "vexatious" itself satisfies the criteria for *improper purpose*: to divert the courts from the merits and undermine his civil right to self-representation under 28 U.S.C. § 1654.

## III.    ARGUMENT

### A.    Checkmate's Straw Man: § 1927/Inherent Power Not Rule 11

AV moved under § 1927[2] and the Court's inherent power[3], raising Rule 11 as a guidepost and *sua sponte* option.[4] AV seeks findings on two specific contentions that were objectively unreasonable when made and persisted through briefing despite contrary evidence on docket— not on genuine factual disputes. Such relief is within the court's powers[5] and warranted here: as the Nessler Declaration confirms these allegations were made with full knowledge of falsity and draw a strong inference of bad faith. The cross-motion, by contrast, improperly seeks "prevailing party" fees without safe-harbor notice; and *sua sponte* relief is deterrent and typically payable to the Clerk. Rhetoric aside, AV has charted a viable path to relief here—Checkmate has not.

---

[2] **28 U.S.C. § 1927** authorizes fees for unreasonably and vexatiously multiplying proceedings. The statute reaches only qualified counsel — not a *pro se* party.; *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336–37 (2d Cir. 1999) (bad-faith/ "without color" + improper-purpose test); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–45 (2d Cir. 2012); *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) (§ 1927 inapplicable to non-lawyer pro se).

[3] Under its **inherent authority**, the Court may sanction bad-faith conduct undertaken <u>without color</u> and for an <u>improper purpose</u>. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46, 50–51 (1991) (inherent power; rule-based remedies when adequate); *Schlaifer Nance*, 194 F.3d at 336–37 (Second Circuit standard); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–12 (2017) (but-for causation for fee awards); *Willy v. Coastal Corp.*, 503 U.S. 131 (1992) (sanctions survive dismissal).

[4] Court may issue a **Rule 11(c)(3)** *sua sponte* order to show cause; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990); Fed. R. Civ. P. 11(c)(2)–(4); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–77 (2d Cir. 2012) (safe harbor strictly applied); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90–92 (2d Cir. 2003) (sua sponte Rule 11 requires subjective bad faith; limitations on monetary relief). Rule 11 turns on an objective "snapshot" at the time a paper is signed; <u>the inquiry is collateral to the merits</u> and asks whether factual contentions had evidentiary support (or were likely to be supported after a reasonable inquiry). ***Rule 11 governs papers, not private emails***.

[5] A court's authority to impose sanctions is collateral to the merits. *Cooter & Gell*; *Schlaifer Nance*; *Willy*; *Chambers*.

**B.     Checkmate Avoids Mr. Nessler's Integration of the Record**

Checkmate dismisses the Nessler Declaration as "self-serving and uncorroborated", but Mr. Nessler's role as Holder Representative is established by its own sworn Warns Declaration:

> The parties agree that it is desirable to designate a representative to act on behalf of the Pre-Closing Holders with respect to all matters arising under this Agreement. ==The Pre-Closing Holders have designated Robert Nessler as the initial Holder Representative==…
>
> (MA § 9.1(a), Warns Decl., Ex. A, Dkt. 40-1 at 34):

Mr. Nessler has the *authority*, *and duty*, to act on behalf of the VoiceBite shareholders, including AV, and did so in their collective interest. Further, contrary to Checkmate's assertions, Mr. Nessler's sworn statements are *strongly corroborated* by the record before this Court:

1.  The only "millions" at stake were $1.5 million in *retention bonuses*, *in consideration of employment, for the team*, not personal transfer of code by AV. Vasan Decl. ¶ 5, Ex. A-2.

2.  The Jan 29, 2025, Notice of Direct Claim was addressed to and served on Mr. Nessler alone and confirms the retention bonuses *have not been paid*. Vasan Decl. ¶ 6, Ex. B-2.

3.  The Feb 7, 2025, Shareholder Response was sent by Grant Thomas, on Mr. Nessler's behalf, as Holder Rep. for the VoiceBite shareholders. Vasan Decl. ¶ 6, Ex. B-3.

The contracts filed by Checkmate, between here and CDCA, confirm the employment-linked payment structure. The Jan 29 Notice confirms non-payment, and the selectively quoted Feb 7 Response contains the "not IP" statement and was authored by counsel for Mr. Nessler.

Beyond mere corroboration, Mr. Nessler's declaration integrates Checkmate's selective filings of the underlying contracts into a coherent account that explains how the "paid millions" and "not IP" themes were *manufactured* by the Notice → Response → Filing sequence.

**C.     Checkmate's *Millions of Dollars* Allegation is Knowingly False**

Checkmate's compound "millions of dollars" misrepresentation is instructive. It alleged variously that these millions were (1) payable to AV individually; (2) specifically for "the code"; and, most egregiously, (3) actually paid. Critically, the AC was careful to caveat this language, never directly alleging *completed* payment ("Vasan sought to convince Checkmate to pay millions of dollars to acquire VoiceBite", AC ¶ 2; "… worth the potential for millions of dollars

and an executive role at Checkmate.", AC ¶ 17; "intended to induce Checkmate into paying Vasan millions of dollars.", AC ¶ 59). The NyMDT Opp., however, upon challenge by AV, went a step further and even misrepresented what the AC had initially alleged:

> Finally, the amended complaint alleges that Plaintiff was injured by paying millions of dollars for a company — more specifically, for what Plaintiff believed to be the company's proprietary code… (NyMDT Opp., Dkt. 41 at 18-19)

> Plaintiff "had been duped into acquiring a valueless non-asset," and paid millions of dollars for it. AC ¶¶ 33, 59. While the exact amount of damages will be proved at trial, at this stage, Plaintiff has met its pleading obligations. (Id. at 22)

Mr. Nessler categorically refutes these claims: no such "windfall" was even on offer. (Nessler Decl. ¶¶ 2–3, 5). Furthermore, Checkmate's own filed contracts[6] show no *IP related monetary consideration* beyond a nominal $100, let alone "millions" to AV for "the code".[7]

The MA defines "merger consideration" as 321,199 shares of Checkmate stock, valued at $0.41 per share (MA § 1.1, Dkt. 40-1 at 7, 8). This value is confirmed by the Notice, listing $131,815 as the total value of equity consideration[8], alongside the $1.5 million *team* bonuses it deemed forfeited. Neither the IPAL nor the NCA specify any monetary compensation. The IPAA recites a nominal "aggregate" consideration of $100, in exchange for any pre-VoiceBite IP:

> (a) Company hereby purchases the Assets for an aggregate purchase price ("Purchase Price") equal to $100.00, payable in immediately available funds. Assignor hereby acknowledges receipt of the Purchase Price. (Assignment of IP and Other Assets ("IPAA"), Dkt. 40-2).

The only agreements with actual "dollars" promised were exhibited not here, but in CDCA, with Checkmate's CaMDT, underscoring that the VoiceBite merger was not an IP sale, but rather an "acquihire"—*the primary asset purchased was the team*. The Bonus Agreement and Offer Letter were both expressly contingent on employment by each founder, and in the case of the former, upon the earlier of qualified fundraising or the one-year anniversary of the merger.

---

[6] The Table of Exhibits lists every agreement signed "as part of the transaction" with ECF cites.

[7] Sanctions are proper where counsel alleges payment without consulting basic account or contract documents. ***Allen v. Utley***, 129 F.R.D. 1, 4–5 (D.D.C. 1990) (filed contract claim 'without first reading the contract'); ***McGhee v. Sanilac Cnty.***, 934 F.2d 89, 93 (6th Cir. 1991) (reasonable pre-filing inquiry would have revealed the truth).

[8] Multiplying 321,199 shares * $0.41 per share = $131,691.59, while the Notice lists $131,815 as the aggregate value of shares for all five founders (without a calculation). The Notice was sent 10 months after the MA was signed.

Checkmate's own complaint serves a stark contrast to the dismissive statement it makes about AV's unpaid employment compensation claims in its Opp/CM at 2:

> he is supposedly "contractually owed compensation" for having purportedly been "terminated by Checkmate while on medical leave"

Compare with AC ¶ 71 and §Prayer ¶ 2: (Dkt. 21)

> AC ¶ 71. … and disentitling Plaintiff to further compensation under any relevant agreements.

> §Prayer ¶ 2. On the Sixth Claim for Relief, that a declaratory judgment issue that Plaintiff is disentitled to further compensation under the parties' agreements and relevant law[9] …

In sum, the Nessler Declaration, the Jan 29 Notice and Feb 7 Response simply confirm what Checkmate's own exhibits, authenticated by its own sworn testimony, and its own pleading and briefs have shown all along—the only real monetary compensation was employment based and remains unpaid—and if payment is not compelled, *will never be paid*.

Checkmate's persistence in these allegations constitutes a knowing misrepresentation of fact after notice—squarely within the scope of sanctionable conduct under both Rule 11(b)(3)[10] and § 1927. The Nessler Declaration also indicates an improper purpose—leverage and pressure on the VoiceBite founders to negotiate down or relinquish their bonus payments.

**D.      Checkmate's Misattribution in AC ¶¶ 33-34 is Knowingly False**

Checkmate's AC in ¶¶ 33-34 attributes to AV statements that he did not make, nor could they possibly have derived from any statements he made, as AV did not communicate with Checkmate or its counsel in February 2025 regarding this matter:

> AC ¶ 33. In February 2025, Plaintiff's excuses shifted yet again. This time, he claimed that the software, the code – the heart of VoiceBite – was not, in fact, intellectual property – emphasizing the stark and troubling reality that Checkmate had been duped … into acquiring a valueless non-asset.

> AC ¶ 34. Of course, Checkmate would not have agreed to acquire VoiceBite if its core technology was not, in fact "intellectual property."

---

[9] Remarkably, the AC appears to ask for relief not just from contractual obligations, *but legal ones as well*. One would hope this is a "typographical error", as Checkmate calls its mis-partying of the IPAL. See Warns Decl. ¶ 5.

[10] The Second Circuit imposes sanctions where factual assertions are knowingly false or made with reckless disregard for truth; standard is objective reasonableness at filing. *Rankin v. City of Niagara Falls*, 569 F. App'x 25, 27–28 (2d Cir. 2014) (affirming Rule 11 for knowingly false factual statement); *Star Mark*, 682 F.3d 170, 177 (objective reasonableness)

> Plaintiff's misrepresentations regarding the originality and ownership
> of the code were knowing falsehoods that he told with full awareness
> of their materiality to Checkmate's decision …

After several filings by AV in both this court and CDCA, Checkmate's Opp/CM finally

conceded that <u>his identified source was *correct*</u>, but only *compounded* its misattribution by

instead calling Mr. Thomas "*his [AV's] lawyer*" — yet another *knowingly false statement*:[11]

> "[a]t no time" was his approval given for unspecified "statements to
> be attributed solely to him" by his lawyer and that he cannot be bound
> by statements made by his lawyer (*id.*); (Opp/CM at 2)

The sequence is telling: (1) Checkmate's Jan 29 Notice was addressed to and served only

on Mr. Nessler; salutation "<u>*Dear Holder Representative*</u>,"; (2) Mr. Thomas's Feb 7 response is

addressed "<u>*From Grant Thomas: on Behalf of Robert Nessler, Holder Representative for the*</u>

<u>*VoiceBite Corporation Shareholders*</u>"; and (3) Checkmate's NY State complaint was filed with

these allegations on Feb 14, mere days later—underscoring time-of-filing knowledge.

AV does not disavow the actual response.[12] What he objects to is distorting that response

and misattributing that distortion to himself *personally*. AV has no formal engagement with Mr.

Thomas — who is not "*his lawyer*". Mr. Thomas is *Mr. Nessler's attorney*, in his Holder Rep.

capacity. Checkmate sent the <u>Notice</u>, *addressing Mr. Nessler*, then received the <u>Response</u>, *from*

*counsel, on behalf of Mr. Nessler*. The Court may draw a strong inference that this exchange was

not just misrepresented but *engineered*. Aware of Mr. Nessler's duty to retain counsel and act on

behalf of the shareholders[13], Checkmate created a situation where a response was inevitable.

---

[11] Checkmate cannot claim the right to sue AV individually and also bind AV to the words of *Mr. Nessler's* counsel, writing on behalf of the shareholders. See Fed. R. Evid. 801(d)(2)(B)–(D) (adoptive admission requires a party's own manifestation; authorized-speaker and agency prongs require actual authorization/agency and within-scope conduct); *United States v. McKeon*, 738 F.2d 26, 31–33 (2d Cir. 1984) (statements by counsel are usable against a party only within narrow, clearly attributable bounds); *Bellefonte Reins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985) (binding judicial admissions typically arise from a party's own pleadings); *Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir. 1994). See also *Macolor v. Libiran*, No. 14-CV-4555 (JMF), 2015 WL 1267337, at *4 (S.D.N.Y. Mar. 19, 2015) (making a false statement with the intent to mislead the Court certainly meets [the] definition of bad faith).

[12] **Fed. R. Evid. 801(d)(2)(B)** demands a clear manifestation that *this* party adopted the statement's truth. Contrast *United States v. Safavian*, 435 F. Supp. 2d 36, 43–44 (D.D.C. 2006) (email forwards with affirmative endorsement treated as adoptive admissions). Here, AV's brief, process-oriented sign-off on an explicitly **joint** Holder-Rep letter is not a personal adoption. In any case, Checkmate was not privy to the sign-off at time of filing.

[13] See *Fortis Advisors LLC v. Allergan W.C. Holding Inc.*, C.A. No. 2019-0159-MTZ, at 7 (Del. Ch. May 14, 2020) (contractual appointment of a shareholder representative makes that representative the **real party in interest**; the rep litigates in the stockholders' stead and cannot compel individuals to act); see also *Aveta Inc. v. Bengoa*, C.A. No. 3598-VCL (Del. Ch. Aug. 13, 2010) (recognizing the shareholder representative's separate authority under the merger agreement).

The actual text of the Feb 7 Response (V Exhibit B) refers to *the specific code* exhibited in Checkmate's complaint, distinguishing it from VoiceBite's Intellectual Property, and never names AV as the source, or that he was even involved in the response:

> VoiceBite owned all intellectual property identified in the VoiceBite Merger Agreement. VoiceBite's intellectual property was and is free of licenses, including at the time of transfer. VoiceBite is the author of all intellectual property … transferred …
>
> After discussions with VoiceBite personnel, the code at issue was not owned, licensed, or transferred to any third party. Further, this code … is not capable of being "intellectual property" … The code at issue is merely scènes à faire or API integrations not subject to copyright or intellectual property protection. As the code … is merely elements dictated by functionality, and therefore cannot be subject to protection and thus are not subject to claims for …
>
> (Grant Thomas, Feb 7 Response, Vasan Decl. ¶ 6, Ex. B-3)[14]

Checkmate asks the court to believe its claims respond to AV's *individual* acts, and have _nothing to do with_ the Holder Rep., or the other shareholders—whose bonuses, *incidentally*, are also being withheld on account of a "legal dispute" (i.e. this dispute). This is unpersuasive.

> Whether Plaintiff sent a pre-suit letter to the Holder Representative, on behalf of all shareholders, is entirely irrelevant to, and has no bearing on, whether Plaintiff can pursue claims in this litigation against only the Defendant individually. Clearly, Plaintiff can. … The Amended Complaint seeks to hold Defendant accountable for his, and only his, actions leading up to, during, and after the Transaction.
>
> (NyMDT Opposition, Dkt. 41 at 26)

Clearly, the AC seeks to hold AV accountable for more than *just* his own actions. Here, *the Notice was bait*—aimed to provoke a *group* response, strip out a useful snippet and recast as AV's own words. This is advocacy without candor and this Court should not humor or excuse it.

### E.    Checkmate Continues to Persist These Allegations Despite the Record

These allegations first surfaced in Checkmate's Feb 14 filing in New York state court and have persisted ever since. AV directly challenged the "millions of dollars" narrative throughout the contentious briefing over Checkmate's CaMDT (filed Mar 26), where it sought to portray the

---

[14] **Fed. R. Evid. 106** (as amended) (see Advisory Committee Note (2023) (fairness requires admitting otherwise hearsay portions to correct misimpressions); *United States v. Coplan*, 703 F.3d 46, 84–85 (2d Cir. 2012); *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995). *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72 (1988) (notes rule of completeness to prevent jury from being misled by out-of-context statements).

VoiceBite merger as a "multimillion dollar commercial transaction" to support transfer to New York — including with sworn testimony. *See* Agarwal Decl. ¶ 6 (CDCA ECF 18-4; Vasan Decl. ¶ 5, Ex. A-1): "The transaction involved the multimillion-dollar acquisition of VoiceBite".

Checkmate amended here on May 12, three months post-removal (Dkt. 1, 21) but failed to correct or even caveat the allegations at issue. AV's June 2 NyMDT provided express notice of both issues on this docket (Dkt. 34), but Checkmate declined to address them in Opposition (Dkt. 41), despite concurrently filing contracts that contradicted its own narrative (Dkt. 40).

To the contrary, its NyMDT Opp. *doubled down* on both. In countering AV's argument that it had failed to sufficiently allege damages, it explicitly alleged *completed* payment of the "millions". Checkmate failed entirely to address the misattribution in AC ¶¶ 33-34, claiming that its Jan 29 Notice was *entirely irrelevant*, and that it sought to hold AV accountable *for only his individual actions.* Checkmate neglected to provide any evidence to support either assertion.

Only after Checkmate voluntarily dismissed its complaint here and was confronted with an evidence-backed refutation in AV's sanctions motion, did its concede that the AC ¶¶ 33-34 quotations did not come *directly* from AV himself. It failed to attach the source or to counter the "millions of dollars" allegations, insisting that damages were sufficiently alleged for the pleading stage. These allegations are now transferred, *verbatim*, to CDCA as its counterclaims there.

Notably, in CDCA, Checkmate declined to compute damages per Rule 26(a)(1)(A)(iii), writing on <u>Aug 29, 2025</u>,[15] it needs "additional information" to supplement "in good faith" once a calculation "can be made". This court is not required to referee discovery in CDCA to infer this admission confirms the *paid millions* statements in its <u>*June 16* NyMDT Opposition</u> lacked evidentiary support <u>then</u>; and that its invocation of "good faith" <u>now</u> reveals the opposite.

To quote the Opp/CM at page 2: <u>*enough is enough*</u>.[16]

**F.    Checkmate Could Have Easily Refuted AV's Motion if it Lacked Merit**

Checkmate's assertion that AV's motion relies on "subjective beliefs" is disingenuous. If the *paid millions for code* theme and "not IP" personal attribution were colorable, competent

---

[15] See Vasan Decl. ¶ 10, Ex. F (August 29, 2025, Makitalo Email) (declining to disclose damages computation)

[16] Curiously, Checkmate has yet to oppose AV's Mot. to Dismiss its counterclaims as of this filing, now overdue.

evidence was readily available at the time of filing.[17] If Checkmate actually *paid millions,* it could have attached a payment confirmation, bank statement or a sworn declaration identifying the amounts, dates, and instruments. If AV *personally* made the "not IP" statement in Feb 2025, it could have attached the message, authenticated it, and shown context. **It did neither**.

Setting aside 12(b)(6) and 9(b) sufficiency—merits questions now before CDCA—*this* Court can, and should, address a narrower issue: whether specific factual assertions advanced here violated the express requirements of Fed. R. Civ. P. 11(b)(3).[18,19]

### G.    Checkmate's Failure to Disclose Operative Contracts Reveals Bad Faith

Checkmate withheld the IP papers until its NyMDT Opp., forcing AV to defend against alleged breaches of contracts he did not possess. When disclosed, they revealed substantive defects and terms that directly undermine its fraud theories: the IPAL is mis-partied, offers no consideration,[20] and the IPAA recites a nominal $100.00[21] in aggregate paid for "the code". Checkmate seeks to "disentitle" AV from "further compensation" (AC ¶ 70), without naming the Bonus Agreement and Offer Letter at issue. These were filed only in CDCA, leaving *this* court in the dark as to what rights it was being asked to cancel, which include, *inter alia,* the following:

> In consideration of you remaining employed with Checkmate, and to further motivate you to devote the exceptional service and performance necessary to maximize Checkmate's performance and value, Checkmate wishes to provide with the below bonus …
>
> (Bonus Agreement, Vasan Decl. ¶ 5, Ex. A-2)

---

[17] Fed. R. Civ. P. 11(b)(3) requires that "factual contentions have evidentiary support **or** will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.". It is judged by a snapshot at filing and does not permit pleading on speculation that discovery will later supply a foundation. See, e.g., *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) (objective reasonableness); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388–89 (2d Cir. 2003) (sanctions appropriate where allegations lack evidentiary basis after reasonable inquiry).

[18] See Fed. R. Civ. P. 11(b); *Star Mark*, 682 F.3d at 170, 175–76 (2d Cir. 2012).

[19] See *Cooter & Gell*, 496 U.S. 384, 395–96, 404 (Rule 11 is an objective, snapshot inquiry judged at the time of filing; sanctions determinations are collateral to the merits); *Storey*, 347 F.3d at 370, 388 (bar is objective unreasonableness; no need to resolve ultimate factual disputes); *Margo v. Weiss*, 213 F.3d at 55, 65 (2d Cir. 2000) (same).

[20] The Warns Declaration makes a startling admission in ¶ 5: "Attached hereto as Exhibit C is a true and correct copy of the Intellectual Property Acknowledgement signed by Arjun Vasan and dated April 30, 2024. As a result of a typographical error, the document is described as between Christopher Lam and Checkmate.com, Inc..." But naming a different party is not a "typo" — it's a material defect that would require equitable reformation to enforce, which Checkmate does not plead. Concealment of material defects such as this are a further indicator of bad faith.

[21] It is important to note the agreement merely recites that AV has accepted the $100.00, there is no proof that even this nominal amount was actually exchanged.

Once the full set of executed contracts filed across both courts is read alongside the Nessler Declaration, the picture becomes clear: Checkmate brought this action for the improper purpose of relieving itself of unpaid *employment* obligations to all five VoiceBite founders—not as redress for any alleged IP related misrepresentations or to recoup actual damages suffered.

The concealment of these contracts was raised in AV's "similarly baseless" ethics complaint, sent to K&L Gates' General Counsel's office. In response, Mr. Tea stated:

> We have no way of knowing what you were provided or not provided by counsel for VoiceBite prior to closing, or whether or to what extent they match the agreements that form the basis for our client's claims against you. But to be clear, any suggestion by you that our Firm or Mr. Keech intentionally manipulated or misrepresented any documents is totally false and baseless.
>
> (Charles Tea re Ethics Allegations, Vasan Decl. ¶ 9, Ex. E-3)

Mr. Tea, and Checkmate, possessed the documents, yet still refused to disclose them, with notice that AV lacked the executed versions despite numerous requests. See *Id*. Equity does not reward a party that withholds the best evidence while pressing fact-free fraud rhetoric; such conduct confirms improper purpose. Neither did Mr. Tea disclose the just filed state lawsuit.

### H.    Checkmate's Belated Appeal to Comity is Unpersuasive

Checkmate's belated appeal to respect CDCA's jurisdiction is disrespectful of both courts. Granting a *fresh start* would only reward the use of *this court* as a tactical staging ground for *that one*—where it yet declines to disclose any computation of the purported "millions". Comity is not served by permitting it to escape "paid millions" *here* only to later repeat *there*. This Court can—and should—hold it to account for statements made here, in SDNY.

Further, the "prematurity" cases Checkmate cites—*Safe-Strap*, *Kingvision*, and *Baski*—hold only that Rule 11 is not a summary-judgment proxy when a merits record is required. Here, no such adjudication is necessary as AV does not seek summary judgment. If Checkmate's position in CDCA is undermined, it has only itself to blame for disregarding repeated notice. In any case, this not a reason to avoid such a ruling; but a reason to issue it if the record warrants.[22]

---

[22] *See Star Mark* (later advocating); *StreetEasy, Inc. v. Chertok,* 752 F.3d 298, 307 (2d Cir. 2014), *Storey* (objective unreasonableness/utterly lacking in support); *Cooter & Gell/Willy/Chambers* (sanctions are collateral).

## I.    Checkmate's Cross-Motion Smacks of Overreach

The Opp/CM begins at p.1 with supposed court "warnings", e.g., "[t]hough granting Vasan's request for additional time, the Court expressed its skepticism regarding the basis for any sanctions.". Skepticism is not a warning, and AV proceeded here only with permission.

Checkmate's own cases show what a real warning looks like.

In *Baasch v. Reyer*, the court told the pro se plaintiff to "*stop making unsubstantiated and far-fetched allegations of conspiracies*", noting it had warned him in "clear and unmistakable terms" that his action lacked merit and sanctioned him for yet proceeding to file a frivolous Rule 59 motion. In *Ferguson v Comm. of Tax & Fin.*, the pro se plaintiff was a *serial filer* of frivolous lawsuits, and "numerous judges had informed [him] that his claims were without merit". In *Malley v. NYC Bd. of Educ.*, the pro se plaintiff was sanctioned after violating multiple orders barring him from filings lawsuits in federal court. There is nothing comparable here.[23]

In *Mata v. Avianca, Inc.,* Judge Castel sanctioned lawyers who "continued to stand by the fake opinions after judicial orders" (*Mata* at 448). These lawyers **doubled down**, listing three of the AI fabricated cases in response to an order to show cause.[24] The Opp/CM finds no such fake opinions, nor has this court issued such orders, but concludes AV's filing is sanctionable.

These are cases cited by *Checkmate — here the plaintiff*. By contrast, AV has complied with every court order here and timely briefed more than seventy pages as a **first-time** pro se defendant, while concurrently prosecuting his employment case in CDCA. He sought and received authorization before filing the sanctions motion and this reply/opposition.

The issue here is not tone in private emails, but **candor** before this court: instead of rebutting the motion with its purported "documentary evidence", Checkmate chose to construct a "vexatious litigant" narrative with twelve frustrated emails.[25] By doing so, it conceded that it does not *actually* possess any evidentiary basis for the statements at issue—AV's motion and the Nessler Declaration remain substantive, corroborated and now *unrebutted*. See Dkt. 58.

---

[23] Baasch was ultimately sanctioned a token $1000 for deterrence, despite the opposition's request for $44,000 in fees.

[24] In *Mata*, sanctions were limited to $5000 payable to the Clerk, **no fees for the opposition were awarded**.

[25] If the court were to consider email tone, a more apt target for sanctions would be Checkmate's *ex parte* attempt to persuade SDNY *Pro Se* Intake to reject AV's temporary stay filing, using the same "vexatious litigant" "AI-generated" seen here.

### J.     Checkmate's Rhetoric is Misdirection and Projection

The cross-motion fails to identify any frivolous filing in this Court while dismissing AV's arguments as "AI Generated"[26] "subjective beliefs" backed only by Mr. Nessler's "self-serving and uncorroborated affidavit[s]". Concurrently, it accuses AV of improper pressure to drop what it calls its legitimate claims. But if those pejoratives are inaccurate, any claim to legitimacy is substantially undermined—and filing served a proper and necessary purpose.

From the outset, it is *Checkmate* that has vexatiously multiplied proceedings. Its pre-suit notices escalated straight to extortionate tactics: alleging "criminal misconduct" (Dec 6, 2024) and "criminal liability" (Jan 22, 2025), while demanding AV "submit" to a recorded interview.[27] Its Jan 29 Notice claimed unsubstantiated damages exceeding $5 million, accounting for $1.68 million by asserting forfeiture of the team's bonuses and merger equity. (Vasan Decl. ¶ 6, 8)

Its Mar 6 CaMDT boldly and falsely claimed, *inter alia*, that AV was a "Texas Resident" who resigned voluntarily, and that the merger was a "multimillion dollar" transaction. CDCA saw through these and other objectively unreasonable allegations, properly applying Cal. Lab. Code § 925 to preserve venue in a California employment dispute. (CDCA ECF 18, 67)

The stay episode here is especially revealing: on June 15, 2025, AV sought a short stay to avoid conflicting rulings. Checkmate declined to stipulate and opposed on June 17, insisting the CDCA venue ruling had no bearing here—thereby inducing denial. Concurrently, Checkmate emailed SDNY *Pro Se* Intake asking the unit to reject the filing and branded AV "vexatious"—an improper *ex parte* attempt to influence administrative staff and undermine their purpose.

When the CDCA denied the CaMDT on June 24, 2025, AV properly filed notice of that final order here. Checkmate had until then vociferously objected to AV's *mention* that a tentative ruling had been issued at all. Yet on July 2, 2025, in an about-face, Checkmate told Judge Furman it would voluntarily dismiss this SDNY action and proceed in CDCA. See Dkt. 51.

---

[26] The "AI generated" label is an unsupported *ad hominem* epithet designed to bias this court against a *pro se* party. Counsel's fixation on AV's alleged AI use is projection: in a case similar to *Mata*, K&L Gates attorneys, including Mr. Keech here, were subject to a federal OSC for not just "using AI," but for failing to disclose such use upon questioning, with sanctions for the firm on *May 5, 2025*. See *Lacey v. State Farm Gen. Ins. Co.*, No. 2:24-cv-05205-FMO (C.D. Cal., May 5, 2025).

[27] See Vasan Decl. ¶ 8, Ex. D (escalation to extortionate threats); *Id.* ¶ 6, Ex. B (Jan 29 Notice → Feb 7 Response)

AV does not seek sanctions for any of this conduct, but holds the only *clear evidence* of bad faith arises from Checkmate, not AV. The Court may disregard its rhetoric as a prejudicial and improper diversion and evaluate the motion on its initial premise: that Checkmate set forth and persisted in specific factual assertions without evidentiary basis at time-of-filing.

### K.    AV's Sanctions Motion Serves a Proper and Necessary Purpose

Four of five VoiceBite founders still work for Checkmate. Even a prompt merits win for AV in California would not pay them; absent a change in posture, each would be forced to sue their own employer to recover unpaid compensation. That practical trap is precisely why a clear, narrow sanctions ruling here serves a *proper purpose*: it deters the continued use of fact-free narratives justify nonpayment, and it clarifies the record to minimize future litigation.

A ruling that pushes Checkmate to pare back false allegations, or pay the founders, does not turn a sanctions motion into a merits shortcut. AV did not file his complaint in this district as he has no personal or business nexus here, but *here* is where the statements at issue arose—and where *this court* can sink them. By doing so, the court will correct the record and deter such future misuse of its docket—the proper and necessary purpose of its inherent authority.

## IV.    CONCLUSION

Checkmate's fraud theory is this: AV sold it a "valueless non-asset" for "millions of dollars" and personally confessed as much. The operative contracts it withheld point the other way. Mr. Nessler's *strongly corroborated* testimony, in his formal duty, integrates the record into a coherent telling: this lawsuit is not just unsupported, it appears *manufactured*. It was intended to, and does, serve as leverage to evade paying not just AV, but four others.

But AV does not ask the Court to rule on these merits, which are now before CDCA. Checkmate's detour is a straw man. These larger stakes are raised solely to guide the Court to a strong inference of improper purpose. AV's ask *here* is much simpler: the Court may rule if *specific* factual predicates of this theory were warranted on the record before it.

Checkmate's cross-motion is tethered to AV's motion, which posed two verifiable questions: can it (1) produce competent evidence—such as authenticated business records—

showing it in fact paid the "millions" it asserts, and (2) authenticate the "not-IP" statement as personally made by AV? Persisting in such material contentions without *producing* its purported "documentary evidence" in rebuttal is *objectively unreasonable*. If Checkmate fails to answer in reply, the motion is colorable and thus the cross-motion moot: the Court need not reach it.

Accordingly, *here*, AV seeks narrow relief, as set forth in the [Proposed] Order filed herewith: (1) a finding that these allegations lacked evidentiary support when made and later advocated post-notice; (2) an admonition to Checkmate and its counsel for advancing them without color and for an improper purpose; (3) a requirement that Checkmate file notice of such order in CDCA; and (4) and such other and further relief as deemed just and proper.

Finally, AV's cited emails were, at most, puffery[28] sent in *frustration*[29] with the tactics at issue—often in regard to CDCA matters. They are not reflected on this court's docket. No cases cited by Checkmate support sanctions for emails pressuring counsel to settle, as it demands here. Its own conduct in this dispute was clearly intended to provoke and intimidate an ex-employee.[30] Therefore, AV respectfully asks the Court to deny the cross-motion, if it does reach it.

These limited measures remedy misconduct, deter repetition and affirm that this court moves forward on the actual record—without intruding on merits questions elsewhere. With AV's withdrawal of any preclusive or compensatory request, the path is straightforward: grant AV's targeted relief and deny Checkmate's unwarranted cross-request for sanctions or fees.

---

[28] See Fed. R. Civ. P. 11(b); *Curley v. Brignoli, Curley & Roberts Assocs.*, 128 F.R.D. 613, 616–17 (S.D.N.Y. 1989) (Rule 11 applies to papers served or filed; letters to the court are not "other papers"); *Brand Co. v. First State Ins. Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2003 U.S. Dist. LEXIS 11416, at *3–4 (S.D.N.Y. July 3, 2003) (Rule 11 does not apply to counsel's letters or conference statements unless presented with an offending filing); *Weiss v. Weiss*, 984 F. Supp. 682, 686 (S.D.N.Y. 1997) (declining Rule 11 sanctions for sending materials to third parties); *Storey v. Cello*, 347 F.3d at 370, 391 (sanctions imposed "with restraint"); *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable."); *Schlaifer Nance*, 194 F.3d at 323, 336–38 (inherent-power/§ 1927 sanctions require clear evidence of bad faith and a claim lacking color); *Enmon*, 675 F.3d at 138, 143–47 (same).

[29] The Opp/CM omits that the quoted "crush" email predating its "vexatious litigant" campaign was retracted within 48 hours as a "heat-of-the-moment" response — the AC itself (¶ 37) concedes this. Many others (including a commonplace von Clausewitz quote) are puffery; to the extent any were settlement outreach, they are inadmissible under FRE 408 and, in any event, excludable under FRE 403 for unfair prejudice and confusion. AV has not asked the Court to referee tone; he challenges the allegations that he admitted he "duped" Checkmate into "paying millions" for a "valueless non-asset" — as lacking in evidentiary support and reflecting improper purpose. Those statements are Checkmate's, not AV's.

[30] Notably, most of the "vexatious" emails Checkmate exhibits were sent shortly after the temporary stay episode, and its repeated accusations of "vexatious AI driven litigant" — not *just* in off-docket emails, but in actual court filings. Several were sent to Checkmate's counsel in CDCA., not here. Vasan Decl. ¶ 7, Ex. C-1-5. Moreover, at the outset, Checkmate escalated immediately: *Id.* ¶ 6, Ex. D-1-4 (alleging "criminal" liability while demanding submission to a recorded interview).

Dated **September 1ˢᵗ, 2025,**

In **Cerritos, California**

**Respectfully Submitted**,

/s/ *Arjun Vasan*

_____

**Arjun Vasan**
Defendant *Pro Se*
12615 193ʳᵈ Street,
Cerritos, CA 90703
(562) 900-6541
arjun.vasan@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Your Honor's Individual Rules and Practices in Civil Pro Se Cases and Local Civil Rule 7.1(c), Defendant Arjun Vasan certifies that this memorandum of law was prepared with a computer and, relying on the word-processing program's count, contains 6,386 words, including headings, quotations, and footnotes, but excluding the caption, tables of contents and authorities, signature blocks, and this certificate.

Pursuant to the Court's August 18, 2025, Order (ECF No. 64) authorizing a single memorandum in opposition with an integrated reply, this filing is submitted as one integrated brief; it complies with the applicable word-count limitations of Local Civil Rule 7.1(c).

Dated **September 1st, 2025,**                    */s/ Arjun Vasan*

In **Cerritos, California**

_____

**Arjun Vasan**
Defendant *Pro Se*
12615 193rd Street,
Cerritos, CA 90703
(562) 900-6541
arjun.vasan@gmail.com