**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHECKMATE.COM, INC. | |
| Plaintiff, | Case No.  1:25-CV-03181(JMF) |
| v. | |
| ARJUN VASAN | |
| Defendant. | |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SANCTIONS

## INTRODUCTION

No one disputes that a *pro se* litigant should typically be afforded greater latitude than represented parties. This latitude is important in some contexts such as summary judgment, in which *pro se* litigants might be unaware of the impact of failing to respond adequately.

But this latitude is not without bounds. Rather, "[t]he fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions because 'one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Malley v. New York City Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (citation omitted).

And that is where Defendant Arjun Vasan ("Defendant" or "Vasan")'s conduct has repeatedly crossed the line and entered squarely into the realm of sanctionable vexatiousness. Vasan's 14-page reply (which exceeds the Court's 10-page limit for reply briefs and is far lengthier than the "one page letter reply" that Vasan promised (*see* ECF 62)) provides no answer for this, nor explanation for the fact that his pursuit of this motion despite multiple warnings is, by his own words, harassing and meritless. It is clear that he does not believe the rules—whether of the judicial system or ordinary civility—apply to him. Rather, as Vasan has reiterated over and over, his "only goal" in pursuing this relief is to "destroy," "humiliate," and "eviscerate" Plaintiff and its counsel, all the while making litigation "exponentially costlier" for Checkmate. In doing so, he will "have no mercy. NONE whatsoever." (Vasan's Reply/Opposition, ECF 60, Ex. I). Thus, for the reasons explained in Plaintiff's cross-motion for sanctions (ECF 59), and as further addressed herein, Plaintiff respectfully requests that the court grant Plaintiff's cross-motion and award Plaintiff its attorneys' fees incurred defending against Vasan's meritless and vindictive motion.

## BACKGROUND

On July 11, 2025, after Checkmate had voluntarily dismissed this action in lieu of the proceedings pending in the Central District of California, Vasan requested a 14-day extension to file a motion for sanctions against Checkmate. (ECF 56). The court granted Vasan's request, though the Court noted it was "skeptical that there is a basis for fees or sanctions." (ECF 57). Vasan filed his motion anyway. (ECF 58). Checkmate opposed Vasan's motion and based on the motion's frivolousness and Vasan's repeated misconduct, cross-moved for sanctions, seeking the fees that it has been forced to expend in opposition. (ECF 59).

Checkmate's cross-motion explains why sanctions should be awarded against Vasan for his repeated harassing misconduct leading up to his meritless motion for sanctions. An improper motion for sanctions is itself sanctionable. Moreover, under Rule 11, a party may be sanctioned for filing a paper "for any improper purpose, such as to harass … or needlessly increase the cost of litigation." Checkmate demonstrated, based on irrefutable evidence in the form of Vasan's own words, that Vasan's motion for sanctions was made for improper purposes—to harass Checkmate, needlessly increase its litigation costs, and pressure Checkmate into surrendering legitimate claims. Notably, Checkmate specifically informed Vasan that compliance with the Rule 11 safe harbor is not required in opposing a motion for sanctions, and that the court may award Checkmate its expenses and fees incurred in defending against Vasan's motion. (ECF 59, at 12).

Undeterred, Vasan requested leave "to file a one-page letter reply" to Plaintiff's cross-motion, which the court granted. (ECF 62, 64). Vasan proceeded to file a 14-page brief, along with a 94-page declaration (including exhibits). (ECF 65, 66). The overwhelming majority of Vasan's "reply" is devoted to rehashing the arguments made in his motion for sanctions, which Checkmate has already responded to in its opposition and cross-motion. In short, Vasan disagrees with the

merits of Plaintiff's position in this case and argues that is a basis for sanctions against Checkmate. But Vasan's position is meritless, and his apparent vendetta against Checkmate and its counsel must be curbed.

## ARGUMENT

### I.    Vasan Should be Sanctioned for his Stated Goals of Destroying and Humiliating Plaintiff and its Counsel

Checkmate's cross-motion for sanctions demonstrated, simply by citing to Vasan's own words, his goals in pursuing this meritless motion: harassing Checkmate and its counsel and unjustifiably increasing Checkmate's litigation costs. (ECF 59, at 3-4, 6-7). In response, Vasan fails to seriously address the repeated examples of his misconduct leading up to his frivolous motion for sanctions—*e.g.*, his threats that Checkmate and its counsel would be "completely crushed," that counsels' "careers will be ruined," and that his "only goal" was to "completely destroy and humiliate" Plaintiff. Instead, he merely asserts that his repeated misconduct in email communications with Checkmate and counsel during this litigation cannot form the basis for sanctions, arguing that his emails are not a "paper" subject to Rule 11. (Vasan's Reply/Opposition, ECF 66, at 14 n.28; *id.* at 2 n.4 ("***Rule 11 governs papers, not private emails***.")).

But Vassan misses the point: Checkmate does not seek sanctions merely based on Vasan sending harassing and improper emails. Rather, Vasan's emails prove that he filed his motion for sanctions for an improper purpose—in furtherance of his goal to harass, "destroy," and "humiliate" Plaintiff and its counsel, as well as to make Checkmate's litigation expenses "exponentially costlier." (ECF 59, at 3). It is for Vasan's filing, which undoubtedly constitutes a "paper" under Rule 11, that Checkmate seeks sanctions. *See* Fed. R. Civ. P. 11(b)(1) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: [that] it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) ("[W]here a party's motion for Rule 11 sanctions is … filed for an improper purpose, a court may find itself in the position of imposing Rule 11 sanctions on the moving party…." (citation omitted)).

Vasan's harassing emails unequivocally demonstrate that he filed his motion for sanctions for improper purposes: to harass Checkmate and increase its litigation expenses. For instance, on July 1, Vasan wrote to Checkmate and its counsel, setting forth his "final offer" to purportedly settle the proceedings—by Checkmate, the plaintiff, paying him. Specifically, Vasan outrageously demanded payment "of all amounts indisputably owed," statutory interest and "waiting-time penalties," and attorneys'-fees "equivalents," calculated at $1,000 for 40 hours per week—despite the fact that he is proceeding *pro se*. Vasan continued that, if he did not receive written acceptance of his proposal within 3 days, he would "raise the stakes <u>substantially</u>, including motions for sanctions," and add Checkmate's outside counsel as defendants. (ECF 60, Ex. E). Vasan guaranteed that, if Checkmate did not accede to his demands, the "next phase will be exponentially costlier." (*Id.*) The next day, Vasan wrote that, if he did not get a "positive response," his "only goal after that will be to **completely destroy and humiliate** Checkmate.**" (*Id.* Ex. H) (emphasis in original). Ten minutes later, he wrote that Checkmate's counsel "will also be humiliated, destroyed and eviscerated on a personal level. I will have no mercy. NONE whatsoever. NONE." (*Id.* Ex. I). A week later, although Plaintiff had voluntarily dismissed these proceedings, Vasan requested a 14-day extension to file a motion for sanctions. (ECF 56).

It is clear that Vasan's "settlement offer" was not a real proposal—it was instead an attempt to extort Checkmate into paying Vasan an amount of money that he would never be entitled to. Indeed, Vasan must have recognized as much, requesting in his motion for sanctions (ECF 58 at 7) attorneys' fees totaling $24,000—a far cry from the hundreds of thousands of dollars of "fees" he sought in his "offer."

It is equally clear that Vasan is knowingly attempting to hide his harassment from the Court. Specifically, Vasan asserts that the emails "were settlement outreach" and are inadmissible under Federal Rule of Evidence 408. (Vasan's Reply/Opposition, ECF 66, at 14 n.29). But that is wrong. Even assuming Vasan could unilaterally deem a communication with Checkmate and its counsel a "settlement communication" for purposes of Rule 408[1], Vasan's contention is baseless. Checkmate does not use Vasan's emails to prove the amount or validity of the underling claims in this litigation—rather, Mr. Vasan's communications are being used to demonstrate harassment and the improper purpose of his motion for sanctions.

Next, Vasan attempts to invoke the doctrine of "puffery," apparently wanting the Court to construe his repeated threats as nothing more than heat-of-the-moment bursts of passion. (Vasan's Reply/Opposition, ECF 66, at 14, n.29). But the doctrine of puffery obviously has no relevance to Vasan's threats made during this litigation and immediately preceding his motion for sanctions. Then, even more audaciously, Vasan claims that the Court should pay no attention to his threats because, he asserts without any support, that his own words somehow constitute "unfair prejudice and confusion" under Rule 403. (*Id.*). Simply put, Vasan's efforts to shield his misconduct from the court is both meritless and telling.

---

[1] To be clear, Vasan unilateral threats to Checkmate and its counsel were not "settlement negotiations."

The calculated nature of Vasan's actions—threatening Checkmate and its lawyers, while trying to shield his words from judicial scrutiny by hiding behind several irrelevant legal doctrines and concepts (FRE 403, FRE 408, puffery, etc.)—is troubling. Vasan has "shown an ability to find the law and to make legal arguments," as demonstrated by his briefing throughout these proceedings; as such, he should "be held to a somewhat higher standard than other *pro se* parties," making an award of sanctions against him even more appropriate. *See Cornett v. Bank of New York*, 1992 WL 88197, at *6 (S.D.N.Y. Apr. 17, 1992). Indeed, it is apparent that Vasan will stop at nothing until he makes good on his threats: first, as he has done, by filing his meritless motion for sanctions and forcing Checkmate to expend resources to respond; next, if left unchecked, by suing Checkmate's outside counsel. Vasan must not be allowed to continue unabated.

## II.    Plaintiff Should be Awarded its Expenses and Attorneys' Fees from Defending Against Vasan's Meritless Sanctions Motion

In addition to sanctioning Vasan for his obvious—and stated—goal of filing his motion for sanctions to harass, humiliate, and destroy Checkmate and its counsel and to increase Checkmate's litigation costs, the Court can also sanction Vasan and award Checkmate its reasonable fees incurred in defending against Vasan's motion.

It cannot be disputed that Vasan's motion for sanctions is baseless under any theory of requested relief. As previously explained in Plaintiff's cross-motion (ECF 59), a motion for sanctions pursuant to 28 U.S.C. § 1927 must demonstrate that the offending party unreasonably and vexatiously multiplied the proceedings. But Checkmate initiated these proceedings in New York based on the forum selection clauses in the parties' agreements; such clauses are "presumptively valid," and parties "seeking to avoid enforcement of a forum selection clause bear the heavy burden of making a 'strong showing' in order to overcome the presumption of validity." *Zurich Ins. Co. v. Prime, Inc.*, 419 F. Supp. 2d 384, 386-87 (S.D.N.Y. 2005). Vasan presents no

argument, much less a remotely compelling one, that Checkmate, abiding by the forum selection clauses, was unreasonable or vexatious.

Vasan's request for sanctions pursuant to Rule 11 is equally baseless. A motion for sanctions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position…." Fed. R. Civ. P. 11 committee note; *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1336.3 (Rule 11 motions "should not be used to raise issues as to the legal sufficiency of a claim or defense"). Vasan obviously disagrees with Checkmate about the merits of this case, including, *inter alia*, the amount of claimed damages and whether the statements of his lawyer can be attributed to him. Indeed, these disagreements are the bases for why he (wrongly) filed his motion for sanctions. (*See* Vasan's Reply/Opposition, ECF 66, at 1 ("AV asks for narrow findings on two key assertions used to prop up Checkmate's fraud theory.")). But clearly, Vasan's disagreement alone does not demonstrate that Checkmate's claims are meritless or that they have been advanced in bad faith. *See, e.g.*, *Doe v. Martucci*, 2024 WL 5118505, at *12 (S.D.N.Y. Dec. 16, 2024) (holding that it is "simply not sanctionable conduct" for parties to "advance[] a view of the case that [is] inconsistent with [the opposing party's] theories").[2]

What is clear, though, is that the relief that Vasan seeks in *his* motion is meritless: Vasan asks that this Court make "narrow" factual findings, without the benefit of any discovery, that Plaintiff's allegations lack "evidentiary support." (Vasan's Reply/Opposition, ECF 66, at 1, 14). But given courts consistently reject motions for sanctions that require the court to determine the

---

[2] Additionally, as explained in Checkmate's cross-motion, Vasan failed to comply with the procedural requirements of Rule 11. (ECF 59, at 8-9). Vasan's reply does not even attempt to justify the infirmities, demonstrating his continued disdain for the rules.

merits of a claim before summary judgment or trial, Vasan's motion for sanctions is entirely baseless. *See Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 337 (S.D.N.Y. 2025) (holding that it "is far too early to make a sanctions determination" based on plaintiff's argument that the counterclaims are futile); *see also* Plaintiff's cross-motion, ECF 59, at 9 (discussing cases). In addition, it appears that Vasan is now (improperly) seeking additional relief in his reply to the cross-motion that he hopes will help his position in the California Action. (*See* ECF 66 (seeking the following relief: "(1) a finding that these allegations lacked evidentiary support when made and later advocated post-notice; (2) an admonition to Checkmate and its counsel for advancing them without color and for an improper purpose; (3) **a requirement that Checkmate file notice of such order in CDCA…**") (emphasis added)).

As such, because Vasan's motion for sanctions is meritless under Rule 11 and was filed for the purposes of harassing Checkmate, the Court should award Plaintiff its expenses and attorneys' fees incurred in defending against the motion. Indeed, Rule 11 explicitly allows the Court to "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1)(A); *see also Koar*, 1997 WL 1038181, at *2 n.2 (holding that "the making of a frivolous Rule 11 motion can itself result in sanctions against the movant"); *Safe-Strap Co.*, 270 F. Supp. 2d at 421 ("In short, 'the filing of a motion for sanctions is itself subject to the requirements of Rule 11 and can lead to sanctions.'" (quoting Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments))). For this independent reason, the Court can and, Checkmate respectfully submits, should sanction Vasan.[3]

---

[3] Vasan's claim that he was not warned about the consequences of his frivolous motion for sanctions is disingenuous at best. He *was* warned. But it is of no moment, as a party "defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Safe-Strap*, 270 F. Supp. 2d at 421 (citations omitted).

**<u>CONCLUSION</u>**

The "primary motivation" for Vasan's motion for sanctions "appears to be that [Checkmate] has not rolled over and played dead." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 361 (S.D.N.Y. 2003). But whether based on the indisputable fact that Vasan filed his sanctions motion to harass Checkmate and increase its litigation costs, or because Vasan's motion is undoubtedly meritless, it is appropriate that Checkmate be compensated for its reasonable expenses and attorneys' fees incurred in opposing the motion. And, frankly, if Vasan is not sanctioned, it is clear that he will grow even more emboldened and will continue his campaign to "completely destroy and humiliate" Checkmate and its counsel.

For all of the reasons set forth above and in Plaintiff's cross-motion for sanctions, Plaintiff respectfully requests that Vasan's motion for sanctions be denied in its entirety, Plaintiff's cross-motion for sanctions be granted, and attorneys' fees be awarded to Plaintiff for opposing Vasan's motion.

Dated:  September 8, 2025                    Respectfully submitted,

                                            K&L GATES LLP


                                            By: */s/ Thomas A. Warns*
                                                Thomas A. Warns
                                                tom.warns@klgates.com
                                                599 Lexington Avenue
                                                New York, NY 10022
                                                Telephone: 212-536-3900


                                                Ryan Q. Keech (admitted *pro hac vice*)
                                                Rebecca I. Makitalo (admitted *pro hac vice*)
                                                10100 Santa Monica Blvd., 8th Fl.
                                                Los Angeles, CA 90067
                                                Telephone: 310-552-5000

                                                *Attorneys for Plaintiff*

10

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Checkmate.com, Inc., in accordance with your Honor's Individual Rules and Practices in Civil *Pro Se* Cases Rule 4(b), certifies that this Memorandum of Law contains 2,620 words, including headings, footnotes, and quotations but excluding the caption, signature blocks, and this certificate.

<u>*/s/ Thomas A. Warns*</u>
Thomas A. Warns